VERNON HORN,
    *Plaintiff*,

v.

CITY OF NEW HAVEN, *et al.*,
    *Defendants*.

No. 3:18-cv-1502 (JAM)

**ORDER DENYING DEFENDANT JAMES STEPHENSON'S MOTION TO DISMISS**

    Plaintiff Vernon Horn spent more than 17 years in prison following a jury trial and his conviction in Connecticut state court on charges stemming from a robbery and murder at a convenience store in 1999. After an intensive post-conviction investigation exposed exculpatory evidence, a Connecticut state court vacated his convictions last year. Horn in turn has filed this federal civil rights lawsuit against the City of New Haven and various law enforcement officials. He alleges that they all took actions that led to his wrongful conviction and imprisonment.

    Now before me is a motion to dismiss by one of the defendants—James Stephenson—who testified as a ballistics expert at Horn's criminal trial. Horn alleges that Stephenson violated his constitutional right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963), when he failed to disclose two reports that related to his examination of the evidence. For the reasons stated below, I conclude that Horn has alleged a plausible *Brady* claim against Stephenson and that Stephenson is not entitled at the present time and on the present record to a grant of absolute or qualified immunity from Horn's claim. Accordingly, I will deny Stephenson's motion to dismiss.[1]

---

[1] Horn was jointly tried and convicted with a co-defendant Marquis Jackson. Doc. #1 at 31 (¶ 176). Jackson has filed a similar but separate federal civil rights action against the same defendants as Horn has named in this action, and

**BACKGROUND**

The following facts are set forth as alleged in the complaint. In the early morning hours of January 24, 1999, three armed men robbed a convenience store in New Haven, Connecticut. Doc. #1 at 8-9 (¶¶ 41-50). One of the robbers shot and killed a store customer, and the store's co-owner was also shot but survived. *Id.* at 7-8 (¶¶ 37-42).

The complaint goes on to detail how three New Haven detectives wrongly focused their investigation on Horn as a suspect and how they induced witnesses to wrongly implicate Horn as a participant in the crime while also concealing exculpatory evidence. The complaint additionally names Stephenson as a defendant, alleging that he was a firearms examiner employed by the Connecticut State Police Forensic Science Laboratory. *Id.* at 3 (¶ 12). Because only Stephenson has filed a motion to dismiss, I will focus my discussion on facts that relate to Horn's claim against Stephenson.[1]

The Connecticut State Police Laboratory's primary function is to examine physical evidence to determine if a crime was committed or was connected to a particular person. *Id.* at 28 (¶ 158). Soon after the robbery, the New Haven police sent shell casings and bullet fragments from the crime scene to the laboratory where Stephenson examined them and produced a report on February 4, 1999. *Id.* at 28 (¶ 159); *see also* Doc. #40-3. This initial report stated that the bullets and fragments were consistent with the use of a nine millimeter firearm and then listed seriatim the names of eight different companies, stating that the bullets "may have been fired but not limited to" a firearm manufactured by one of these companies. *Id.* at 28 (¶ 160); Doc. #40-3 at 3 (¶ 14). This non-exhaustive list of possible company manufacturers did not include Beretta, notwithstanding the fact that the prosecution's key cooperating witness—Steve Brown—would

---

[1] Stephenson has filed a similar pending motion to dismiss in that separate action that I will deny for the same reasons stated in this ruling. *See Marquis Jackson v. New Haven*, No. 3:19-cv-00388-JAM (D. Conn. 2019).

eventually tell the police and then allegedly falsely testify at trial that Horn used a Beretta to shoot his victims during the robbery. Doc. #1 at 27-28 (¶¶ 155, 160).

Stephenson's initial report was disclosed to the defense. *Id.* at 28 (¶ 161). But it was based in part on a more detailed General Rifling Characteristics report (GRC report) that Stephenson generated and failed to give to the prosecution or the defense. *Id.* at 28-29 (¶¶ 161-164); Doc. #40-5. The GRC report contained the same list of possible manufacturers as Stephenson's initial report and also reflected a margin of error with respect to the rifling characteristics of +/- 2. Doc. #1 at 28 (¶ 163); Doc. #40-5 at 3.[2]

According to the complaint, the prosecutor realized about a year later as he was preparing for trial in early 2000 that he had a problem: "His star witness said the murder weapon was a Beretta. But his forensic examiner's report did not list a Beretta as even as possible murder weapon." *Id.* at 29 (¶ 165). So the prosecutor called Stephenson "shortly before the start of jury selection," and he asked "whether it was possible the murder weapon could have been a Beretta." *Id.* at 29 (¶ 166).

Following this conversation, Stephenson generated a new GRC report on February 15, 2000, by "manipulating the report to increase the margin of error to +/- 4." *Ibid.* (¶ 167); Doc. #40-6. With this larger margin of error, three models of 9mm firearms manufactured by Beretta were now added to the list as a potential match for the shell casings and bullet fragments from the crime scene. Doc. #1 at 29 ( ¶ 168); Doc. #40-6 at 2.

---

[2] Because the reports at issue are referenced in the complaint and attached as exhibits to Stephenson's motion to dismiss (Docs. #40-3, #40-5, and #40-6), it is proper to evaluate the content of these reports in ruling on the motion to dismiss. *See, e.g., Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Moreover, in view of the complaint's repeated references to the content of Stephenson's trial testimony, it is equally appropriate at this pleading stage to consider the transcript of his testimony (Doc. #40-3) to the extent that it has proper bearing on Horn's claim that the testimony was false or that the testimony bears on the *Brady* issue of whether the GRC reports that were not disclosed had material exculpatory or impeachment value. On the other hand, Stephenson has established no proper basis for the Court to consider at the pleadings stage the additional documents attached to his motion to dismiss, including the FBI's General Rifling Characteristics Files (Docs. #40-4 and #40-7).

According to the complaint, Stephenson "manipulated his findings by changing the margin of error," and "[t]his manipulation allowed the report to include a make of murder weapon not supported by his findings, and thereby made those findings fit the testimony of the State's key witness." *Id.* at 30 (¶ 171). Moreover, as with the first GRC report, Stephenson did not give the second GRC report to the prosecution, and the report was not disclosed to the defense before trial. *Ibid.* (¶ 169).

Horn alleges that Stephenson eventually testified at trial that, "based upon 'new information' he got from" the prosecutor, "he had concluded that the murder weapon could have been a Beretta." *Ibid.* (¶ 170). The defense did not know how or why Stephenson had changed his conclusion, because the defense had not received the two GRC reports. *Ibid.* (¶ 172). Moreover, Stephenson falsely testified that he had not created any new reports when he got the new information from the prosecutor. *Ibid.* (¶ 173).

Horn claimed all throughout that he was innocent but was convicted at trial and sentenced to a term of 70 years in prison. *Id.* at 33-34 (¶¶ 184-85). Not until February 2018 did Horn learn of the two non-disclosed GRC reports when they were produced in response to a subpoena. *Id.* at 30 (¶ 175). Following an intensive re-investigation of the case by Horn's counsel, his convictions were vacated in April 2018 after he had served more than 17 years in prison. *Id.* at 2 (¶¶ 3-4), 42-42 (¶¶ 235-37).

In this lawsuit, Horn alleges that Stephenson failed to disclose the two GRC reports and that these reports were materially exculpatory and withheld by Stephenson in violation of Horn's constitutional due process rights under *Brady v. Maryland*. Stephenson has responded by moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Stephenson argues

4

that Horn has failed to state a claim for relief and that Stephenson is otherwise entitled to absolute or qualified immunity.

## DISCUSSION

The background principles governing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Charles v. Orange Cty.*, 925 F.3d 73, 81 (2d Cir. 2019) (same). In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (applying same standard to Rule 12(b)(1) motion). In short, my role in reviewing a motion to dismiss is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

**Brady** *claim*

Stephenson argues that the complaint fails to state a *Brady* claim. Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87; *see also Giglio v. United States*, 405 U.S. 150 (1972) (extending *Brady* to disclosure of material impeachment information); *United States v.*

*Certified Envtl. Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014) (discussing requisites of a *Brady* claim).

Stephenson argues that the GRC reports were not "suppressed" within the meaning of *Brady*. He relies on the principle that "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (internal quotations and citation omitted). I do not agree with Stephenson's argument. Stephenson's reference during cross-examination to having "notes that I kept for myself," Doc. #40-2 at 32, was no substitute for actually disclosing the GRC reports. Moreover, Stephenson's disclosure that he had such "notes" was not sufficiently in advance of his testimony to allow Horn to be prepared to respond to the substance of the GRC reports. *See United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (evidence is "suppressed" within the meaning of *Brady* if not disclosed in time for its effective use at trial). The GRC reports were plainly "suppressed" within the meaning of *Brady*.

Stephenson next argues that he was a mere "witness" who did not have an obligation like prosecutors and the police to comply with *Brady*'s disclosure requirements. I do not agree. The disclosure requirements of *Brady* apply not only to prosecutors but to the police in general who have a duty to disclose material exculpatory and impeachment evidence to prosecutors. *See Bellamy v. City of New York,* 914 F.3d 727, 751 (2d Cir. 2019) ("When police officers withhold exculpatory or impeaching evidence from prosecutors, they may be held liable under § 1983 for violating the disclosure requirements of *Brady v. Maryland*"). As one federal appeals court has explained, "because the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to

6

disclose material exculpatory information." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009). Here, the complaint adequately alleges that Stephenson acted in a professional law enforcement capacity—not merely as a lay witness—in connection with the investigation. Doc. #1 at 48 (¶ 276) (alleging that Stephenson was working "on behalf of law enforcement and as an arm of the prosecution team").

In short, I conclude that the complaint alleges on its face a plausible *Brady* claim. The complaint adequately alleges that Stephenson acted in a law enforcement capacity and that he suppressed disclosure of materially exculpatory documents to the prosecution as required for a *Brady* claim.

### *Absolute immunity*

Stephenson argues that he has absolute immunity for two reasons. First, he claims that he has absolute immunity with respect to any liability that may be based on his trial testimony. I agree. Although the complaint alleges that Stephenson lied during his trial testimony (Doc. #1 at 48 (¶ 277)), the law is clear that Stephenson has absolute immunity for his trial testimony. *See Rehberg v. Paulk,* 566 U.S. 356, 366-68 (2012). Therefore, Horn's claim against Stephenson may not rest on Stephenson's trial testimony. Instead, I understand Horn's claim to be solely a *Brady* claim that rests on Stephenson's pre-trial failure to disclose the two GRC reports to the prosecutor. *See Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) (allowing § 1983 claim to proceed to the extent that "the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony").

Second, Stephenson argues that he has absolute immunity that is derivative of the prosecutor's absolute immunity. It is true that prosecutorial immunity may extend to those acting at the direction of the prosecutor, including "individual employees who assist such an official

7

and who act under that official's direction in performing functions closely tied to the judicial process," such as "evaluating and organizing evidence for presentation at trial." *Hill v. City of New York*, 45 F.3d 653, 660, 661 (2d Cir. 1995). Still, neither a prosecutor nor his or her agents are entitled to absolute immunity in connection with the performance of administrative or investigative functions, as distinct from advocacy functions. *Id.* at 661; *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 69-72 (2d Cir. 2019) (discussing fact-intensive requirements to establish absolute prosecutorial immunity).

Stephenson relies on *O'Neal v. Morales*, 679 F. App'x 16 (2d Cir.), *cert. denied*, 138 S. Ct. 559 (2017), a case in which a police detective was determined to have absolute prosecutorial immunity with respect to his investigative actions that were taken at the specific behest of the prosecutor shortly before trial. According to the Second Circuit, the complaint's "allegations admit[ted] of no other inference than that the [prosecutor] asked [the detective] to determine what could be discerned from the 10th-floor window [of an apartment] for purposes of 'evaluating and organizing' direct identification evidence by the victim and her mother," such that the detective "was carrying out activity intimately associated with the judicial phase of the criminal process, *at the specific direction of the prosecutor*." *Id.* at 18 (emphasis added) (internal citations omitted).

Here, by contrast, although the complaint alleges that Stephenson generated the second GRC report only after the prosecutor asked if the firearm could have been a Beretta (Doc. #1 at 29 (¶¶ 166-67)) and "in response to an inquiry from the prosecutor" (*id.* at 48 (¶ 276)), it is not clear from the face of the complaint that the prosecutor specifically directed Stephenson's

8

subsequent investigation, much less that he instructed Stephenson to generate an additional investigative report that would not be disclosed to the prosecutor.[3]

*O'Neal* is distinguishable as well because it did not involve a *Brady* claim against the detective but a claim that the detective lied to the prosecutor when he told the prosecutor that he was able to discern faces on the street below from a 10th floor window. *See O'Neal v. City of New York*, 196 F. Supp. 3d 421, 428 (S.D.N.Y. 2016), *aff'd sub nom. O'Neal v. Morales*, 679 F. App'x 16 (2d Cir. 2017). Accordingly, *O'Neal* involved an effort to hold a police officer liable for what he told the prosecutor in response to the prosecutor's specific request. Here, by contrast, Horn seeks to hold Stephenson liable for what he *failed* to disclose to the prosecutor. Although discovery may reveal more about the nature of the interchange between Stephenson and the prosecutor, the fact that the second GRC report was not disclosed to the prosecutor weakens any inference that the report was generated at the prosecutor's request.

In addition, the *O'Neal* decision is an unpublished decision that does not have precedential force. Law enforcement officials are not at liberty to fabricate evidence or conceal material exculpatory evidence. It would be concerning if *O'Neal* were read for the proposition that law enforcement officials may do so without fear of liability if they wait until the eve of trial when they are in communication with the prosecutor about the presentation of the case.

In short, the facts as alleged do not allow me to determine at this time whether Stephenson's actions were part-and-parcel of the prosecutor's advocacy function rather than independently investigative in nature. Accordingly, I cannot conclude at this initial pleading

---

[3] Nor am I persuaded that the trial transcript *conclusively* shows that Stephenson conducted his additional investigation under instructions from the prosecutor. The transcript reflects an exchange between the prosecutor and Stephenson in which the prosecutor asked Stephenson whether he had "ma[d]e a request for you to check some additional information" and whether "based upon that request" he "c[a]me up with any other manufacturers that also fit within the parameters of this ballistics evidence." Doc. #40-2 at 14. Horn should have an opportunity in discovery to probe the degree to which Stephenson was acting under the prosecutor's direction.

stage and without further development of a fact record that Stephenson is entitled to the benefit of absolute prosecutorial immunity.

*Qualified immunity*

Stephenson further argues that he is entitled to the benefit of qualified immunity, claiming that the law was not clearly established that *Brady* applies to ballistics experts or forensic firearms examiners. "Qualified immunity shields government officials from claims for money damages unless a plaintiff adduces facts showing that '(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct.'" *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate." *Ibid.* More specifically, "the law must be so clearly established with respect to the *particular* conduct and the specific context at issue that every reasonable official would have understood that his conduct was unlawful." *Id.* at 68-69 (internal quotations and citation omitted) (emphasis in original).

Notwithstanding Stephenson's errant argument that only the U.S. Supreme Court has the authority to define "clearly established" law, the Second Circuit has stated that its own case law and precedent from other federal appeals courts may also be consulted when a district court is evaluating if the law is "clearly established" for qualified immunity purposes. "To determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). The law may be clearly established if the decisions of the Supreme

Court or the "decisions from this or other circuits clearly foreshadow a particular ruling on the issue." *Ibid.* (internal quotations omitted); *but see Brown v. City of New York*, 862 F.3d 182, 191 (2017) (noting "some tension in this Court's case law concerning whether out-of-circuit precedent can ever clearly establish law in this Circuit").

Here, I need look no further than the law of the Second Circuit. In *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), the Second Circuit made clear that *Brady* applies to police officers: "the police satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors." *Id.* at 299. The decision in *Walker* came down seven years before the investigation and trial in this case and, in my view, it puts to rest any legitimate doubt whether *Brady* applies to police officers in general.

Although the facts of *Walker* did not happen to involve a ballistics expert or forensic firearms examiner, the *Walker* decision clearly foreshadowed that *Brady* applies to any law enforcement member of the prosecution team. Indeed, Stephenson himself was no mere lay witness but was an employee of the Connecticut State Police who was enlisted to generate evidence for use in the prosecution of a robbery and murder.

Why should ballistics experts and forensic firearms examiners be free to hide exculpatory evidence from prosecutors while other police officials may not? Stephenson has no answer to this question that makes any sense. The fact that no particular case happens to involve a police firearms examiner is no more significant than the fact that no particular case may involve the violation of someone's constitutional rights on a Tuesday in a Leap Year or by a police officer born in North Dakota. In light of the Second Circuit's decision in *Walker*, no objectively reasonable police officer in 1999 and 2000 would have concluded that police ballistics experts and forensic firearms examiners are exempt from the *Brady* disclosure rule.

11

Decisions from other federal circuit courts are of little assistance to Stephenson. To the contrary, a number of other circuits have ruled that it was clearly established as of 1999 or earlier that government employees such as lab technicians and forensic experts had disclosure obligations under *Brady*. *See, e.g.*, *Moldowan v. City of Warren*, 578 F.3d 351, 397 (6th Cir. 2009) (noting that, "at least as early as April or May of 1990," it was clearly established that "a forensic expert may be subject to suit under § 1983 for deliberately withholding the existence of exculpatory forensic evidence or fabricating forensic evidence"); *Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008) (upholding district court's denial of qualified immunity to lab technician on the grounds that "the law was sufficiently clear in 1984 that a state crime lab technician would have known that suppression of exculpatory blood test results would violate a defendant's rights"); *cf. Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004) (finding that a forensic chemist in 1986 would have "had fair warning that the deliberate or reckless falsification or omission of evidence was a constitutional violation") (internal quotations omitted); *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) (affirming jury's finding that police laboratory technician was not entitled to qualified immunity for withholding exculpatory evidence in 1988).

True enough, the Fifth and Eighth Circuit both declined to apply *Brady* to lab technicians as of 1999 and 2000. *See Villasana v. Wilhoit*, 368 F.3d 976, 978-79 (8th Cir. 2004); *Mowbray v. Cameron County,* 274 F.3d 269, 278 (5th Cir. 2001). But the Eighth Circuit's ruling as to lab technicians was part of a broader holding that *Brady* does not apply at all to police officers, *see* 368 F.3d at 979-80, and this is plainly at odds with the Second Circuit's decision in *Walker*. And the Fifth Circuit's ruling is inapposite because it addressed only whether *Brady* requires the police to disclose exculpatory evidence to defense counsel, as distinct from disclosure to the prosecution, *see* 274 F.3d at 278, a result which is fully consistent with the Second Circuit's

12

decision in *Walker* recognizing that police officers must disclose material exculpatory evidence to prosecutors but not directly to defense counsel. *See* 974 F.2d at 299.

All in all, I cannot agree with Stephenson's argument that he is entitled to qualified immunity for lack of clearly established law that *Brady* applies to law enforcement officers who are employed as ballistic experts or forensic firearms experts. Accordingly, I will deny Stephenson's claim to qualified immunity at this time.[4]

## CONCLUSION

For the reasons set forth above, the motion to dismiss (Doc. #40) Horn's *Brady* claim against Stephenson is DENIED. In light of Horn's voluntary dismissal of all other claims against Stephenson (Doc. #52), the motion to dismiss the remaining state law claims is DENIED as moot, and all remaining claims against Stephenson except for the *Brady* claim are dismissed.

It is so ordered.

Dated at New Haven this 9th day of July 2019.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge

---

[4] Even if a particular rule of law is clearly established, qualified immunity may also apply if an objectively reasonable officer would not necessarily have understood that his conduct amounted to a violation of the clearly established law. "A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, *or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act*." *United States v. Simpson*, 793 F.3d 259, 268 (2d Cir. 2015) (emphasis added). So, for example, if the facts here showed that an objectively reasonable officer could arguably have believed that the GRC reports did not have material exculpatory or impeachment value, then Stephenson may be entitled to qualified immunity. "For if a reasonable officer would not know that the exculpatory and impeachment evidence was material, he would not know that 'what he is doing' violates federal law in the circumstances." *McMillian v. Johnson*, 88 F.3d 1554, 1569 (11th Cir.), *as amended on reh'g*, 101 F.3d 1363 (11th Cir. 1996). Nevertheless, because Stephenson has limited his qualified immunity argument solely to a claim that the law was not clearly established that he was subject to the *Brady* rule at all (as distinct from arguing that an objectively reasonable police officer in Stephenson's position would not necessarily have understood the GRC reports to have material exculpatory or impeachment value), there is no cause at this time for me to consider the application of this alternative prong of any qualified immunity defense.