UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERNON HORN, | : | |
| | : | |
| *Plaintiff,* | : | CASE NO. 3:18-CV-1502 (JAM) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NEW HAVEN, *et al.*, | : | |
| | : | |
| *Defendants.* | : | AUGUST 23, 2019 |

## ORDER ON DISCOVERY DISPUTE

The plaintiff, Vernon Horn, and defendants Leroy Dease, Petisia Adger, and Daryle Breland (collectively, "Detective Defendants"), have sought the Court's assistance in resolving a discovery dispute. On June 18, 2019, the Court ordered the parties to submit letter briefs explaining the nature of their dispute (Doc. No. 83) and, on July 1, 2019, the parties submitted their letter briefs (Doc. Nos. 85 & 86).[1] This dispute revolves around documents that the plaintiff has withheld from the Detective Defendants on the basis of the attorney-client privilege and the work-product doctrine. (*See* Doc. No. 85 at 1; Doc. No. 86 at 1).

The Court held a telephonic discovery dispute conference on July 11, 2019, and directed the parties to meet and confer in an attempt to narrow the number of documents at issue. (Doc. Nos. 88 & 89). On July 23, 2019, counsel for the Detective Defendants sent the Court a letter, which explained that the parties' meet and confer session left at issue "any documents that contain certain communications and work product related to Plaintiff's investigation that occurred prior to

---

[1] Attached to the Detective Defendants' Letter Brief were two exhibits: the first was a copy of the plaintiff's privilege log containing the withheld documents (Doc. No. 85 at 6–20); the second was a partial transcript from the plaintiff's State Court habeas corpus proceeding on March 19, 2013 (Doc. No. 85 at 21–24). The plaintiff also attached two exhibits to his Letter Brief: the first was a letter to the plaintiff's counsel from the Detective Defendants' counsel explaining the objection to the plaintiff's privilege log (Doc. No. 86-1); the second was a response from the plaintiff's counsel to the Detective Defendants' counsel (Doc. No. 86-2).

and during his criminal trial (if such documents exist), as well as the subsequent investigation while Plaintiff was incarcerated, which moreover, includes investigative steps, notes, and statements secured by Plaintiff's investigators." (Doc. No. 91).

The Court then held a second telephonic discovery dispute conference on July 23, 2019. (Doc. No. 92). During this conference, the plaintiff's counsel reiterated that, as counsel agreed during the meet and confer sessions, the plaintiff would produce the first two documents on the plaintiff's privilege log. Also during the call, counsel for the Detective Defendants confirmed that the defendants would forgo their request for work product documents that contained mental impressions and/or legal conclusions. (*See also* Doc. No. 91). Counsel agreed that the documents remaining in dispute were those that contained factual information rather than mental impressions and legal conclusions.

## DISCUSSION

The resolution of this dispute rests on whether the plaintiff has impliedly waived the protections of the attorney-client privilege and work product doctrine. The Detective Defendants maintain that the "[p]laintiff has impliedly waived his claimed privileges by asserting causes of action that put his attorney-client communications and investigations at issue." (Doc. No. 85 at 4). The Detective Defendants focus on the plaintiff's claim pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), arguing specifically that the plaintiff has put "at issue what he knew or should have known through his investigation and communications with witnesses about the allegedly exculpatory evidence." (Doc. No. 85 at 5). The plaintiff responds that he has not put the privileged documents at issue, as his "claims in this case do not rely on the attorney work product doctrine as a sword[,]" nor is he "selectively disclosing privileged material or invoking his counsel's advice or investigative efforts to prove his case." (Doc. No. 86 at 4).

The plaintiff adds, "Were the Court to find that Mr. Horn's *Brady* claim impliedly waived the work product privilege, the scope of that waiver would be limited to the very narrow question [of] whether Mr. Horn and his counsel had prior knowledge of the exculpatory evidence that forms the basis of that claim." (Doc. No. 86 at 4).

"Both attorney-client privilege and work-product immunity 'may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications.'" *DeAngels v. Corzine*, No. 11 Civ. 7866 (VM)(JCF), 2015 WL 585628, at *6 (S.D.N.Y. Feb. 9, 2015) (quoting *United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see also John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) ("It is well established doctrine that in certain circumstances, a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." (citing *United States v. Nobles*, 422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)). In other words, the attorney-client privilege and work-product protection "cannot at once be used as a shield and a sword." *Blizerian*, 926 F.3d at 1292; *see also DeAngels*, 2015 WL 585628 at *6 (noting that "[t]he 'fairness doctrine' analysis applies to waiver of work-product protection just as it does to waiver of attorney-client privilege."). "Generally, '[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense. . . .'" *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). "The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *Id.* (emphasis

original). "The assertion of an 'advice-of-counsel' defense has been properly described as a "quintessential example" of an implied waiver of the privilege." *Id.*

"The unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party's advancing a claim . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." *John Doe Co.*, 350 F.3d at 303. The Second Circuit has "made it clear that '[w]hether fairness requires disclosure has been decided . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.'" *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000)).

Here, the plaintiff impliedly waived the work-product protection with respect to the claimed *Brady* material; namely, the 137 pages of phone records that were discovered in Detective Adger's basement. To prove his *Brady* claim, the plaintiff will have to establish, *inter alia*, that he and his criminal trial counsel did not know or have reason to know of the allegedly exculpatory phone records at the time of his criminal trial. If there exists evidence establishing the plaintiff's or his criminal trial counsel's knowledge of the phone records at the time of the criminal trial, the defendants would likely seek to use that information to defend against the *Brady* claim. Therefore, to the extent that the plaintiff has withheld any work-product materials that concern his or his trial counsel's knowledge of the allegedly exculpatory phone records, such materials shall be disclosed to the Detective Defendants.

Outside of the narrow category of materials described in the preceding paragraph, the undersigned concludes that the plaintiff has not impliedly waived the protections of the attorney-client privilege or the work-product doctrine. The other claims that the plaintiff is asserting—specifically, fabrication of evidence—do not put at issue his or his counsel's knowledge of the

4

fabrication and, therefore, "[a]ssertions of fabrication do not give rise to waiver of the attorney-client privilege or work-product protection . . . ." *Truman v. City of Orem*, 362 F. Supp. 3d 1121, 1128 (D. Utah 2019). Although the plaintiff's counsel may have learned relevant information through his investigator's conversations with witnesses, that is not sufficient to put the protected materials "at issue." Moreover, there is nothing preventing the Detective Defendants from deposing the witnesses with whom the plaintiff's counsel and investigators spoke regarding the allegedly withheld and/or fabricated evidence. Accordingly, the plaintiff's claims of fabrication of evidence do not put any work-product materials at issue.

## CONCLUSION

For the reasons stated above, the plaintiff shall produce to the Detective Defendants any withheld documents that contain information regarding the plaintiff's or the plaintiff's criminal trial counsel's knowledge of the allegedly exculpatory phone records, as the plaintiff impliedly waived the work-product protection with respect to these documents. The plaintiff shall produce these documents to the Detective Defendants on or before **September 13, 2019**. If none of the withheld documents contain information regarding the plaintiff's or the plaintiff's criminal trial counsel's knowledge of the allegedly exculpatory phone records, then, on or before **September 13, 2019**, the plaintiff's counsel shall file a notice certifying that the withheld documents do not contain the information subject to the waiver. The plaintiff need not produce any other documents contained on the privilege log.

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 23rd day of August 2019.

/s/ *Robert M. Spector*, USMJ
Robert M. Spector
United States Magistrate Judge