IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
VERNON HORN                                   :        3:18 CV 1502 (RNC)
:
v.                                            :
:
CITY OF NEW HAVEN                             :        DATE: MARCH 2, 2021
:
---------------------------------------------------------x

RULING ON THE PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 170)

I.  INTRODUCTION AND PROCEDURAL HISTORY

Pending before the Court is a discovery dispute in which the plaintiff, Vernon Horn, seeks an order compelling the defendant, City of New Haven, to respond to his Requests for Admission and Interrogatories dated September 14, 2020. (Doc. No. 170). Specifically, the plaintiff served upon the defendant six Requests for Admission ("RFAs") and twelve related interrogatories (collectively "the requests") that require the defendant to admit or deny that the individually named defendant officers[1] acted (1) in accordance with the defendant's policies and practices and (2) within the scope of their employment with the defendant. (*Id.* at 4). On November 12, 2020, the defendant filed an objection to the plaintiff's Motion to Compel, arguing *inter alia*, that the plaintiff's requests exceeded the scope of Rule 36 of the Federal Rules of Civil Procedure insofar as they sought "impermissible legal conclusions rather than admission of facts." (Doc. No. 177).

---

[1] In addition to the claims asserted against the City of New Haven, the plaintiff brought claims against former New Haven Police Department Detectives Leroy Dease, Petisia Adger, and Daryle Breland, and firearms examiner James Stephenson in their individual capacities, alleging that the officers "hid exculpatory evidence, coerced and threatened witnesses, fabricated and destroyed evidence, and failed to investigate evidence that would have exonerated" the plaintiff. (Doc. No. 170 at 4.).

1

On October 27, 2020, United States District Judge Robert N. Chatigny referred the plaintiff's Motion to the undersigned for resolution. (Doc. No. 172). On November 9, 2020, the undersigned scheduled a video hearing on the plaintiff's Motion to Compel for November 20, 2020. (Doc. No. 174). After considering argument from both sides, the Court determined that the RFAs, as drafted, were too broad. Accordingly, the Court scheduled another video hearing for December 10, 2020, requested that the parties meet and confer to narrow the scope of the RFAs, and ordered the parties to detail their efforts in a Joint Status Report to be filed on or before December 8, 2020. (Doc. No. 179). In accordance with the Court's instructions, the parties filed a Joint Status Report on December 8, 2020, indicating that the plaintiff had broken up the six RFAs at issue into 103 new, targeted requests for admission ("revised RFAs"). (Doc. No. 180). The parties requested that the Court adjourn the December 10, 2020 hearing and allow them until December 15, 2020 to work through the revised RFAs and file an updated status report. (*Id.*). The Court granted the parties' request and scheduled a telephonic status conference for December 16, 2020. (Doc. No. 181).

On December 16, 2020, following the status conference, the Court issued a Memorandum of Status Conference ordering (1) the defendant to provide responses to the plaintiff's revised RFAs on or before January 8, 2021 and (2) the parties to file a Joint Status Report informing the Court of their progress as to the production at issue on or before January 19, 2021. (Doc. No. 186). Additionally, the Court scheduled an on-the-record video Status Conference to be held on January 22, 2021 unless the parties indicated in their January 19, 2021 Status Report that they had resolved fully the discovery dispute. (*Id.*). Accordingly, the Court denied without prejudice the plaintiff's Motion to Compel. (Doc. No. 187).

On January 19, 2021, the parties indicated in their Joint Status Report that they remained at an impasse in resolving the dispute. (Doc. No. 191). Consequently, the Court held the on-the-record video status conference on January 22, 2021 to hear argument on the discovery dispute. At the conclusion of that hearing, the Court determined that, because the parties had been unsuccessful in their attempts to resolve the original discovery dispute by meeting and conferring and attempting to modify the RFAs at issue, it would consider and resolve the defendant's original October 22, 2020 Motion to Compel on its merits. Though the plaintiff requested that the Court consider the motion to compel as it related to the revised RFAs, the Court indicated that those revised RFAs had been drafted in an attempt to allow the parties to resolve the discovery dispute by working together to address the defendant's original objections and to narrowly tailor the requests for admission to accomplish that goal. As the parties were unable to meet and confer to resolve the discovery dispute, the Court indicated it would take up the original motion to compel on its merits.[2]

For the reasons detailed below, the plaintiff's Motion to Compel (Doc. No. 170) is DENIED.

## II.   BACKGROUND

The pending Motion to Compel arises out of the plaintiff's claims against the defendant, City of New Haven, and the individually named officers of the New Haven Police Department, Leroy Dease, Petisia Adger, and Daryle Breland, as well as the firearms examiner who formerly

---

[2] At the January 22, 2021 oral argument, the plaintiff asked the Court to compel the defendant to respond to the 103 revised RFAs, and the defendant objected because the revised RFAs were only permitted as part of the Court's direction to the parties to meet and confer and narrow the scope of the original RFAs and related interrogatories that were the subject of the plaintiff's October 22, 2020 motion to compel. The Court agreed and determined that its original order denying the October 22, 2020 motion to compel without prejudice was issued solely to give the parties a chance to work cooperatively to resolve the discovery dispute. When it became clear that the parties were unable to resolve the dispute, the Court determined that the original motion to compel must be resolved on its merits and that the issue to be addressed in this ruling was whether to order the defendant to respond to the original RFAs and related interrogatories referenced in the October 22, 2020 motion to compel.

was employed by the Connecticut State Police Forensic Science Laboratory, James Stephenson. (Doc. No. 1 at 2-3). In his Complaint, the plaintiff asserted that he spent 17 years in prison for a murder that he did not commit because the "New Haven Police Department hid 137 pages of exculpatory phone records in a [d]etective's basement for nearly two decades. . . . coerced and threatened witnesses. . . . fabricated evidence. . . . destroyed evidence. . . . [and] failed to investigate evidence that would have exonerated an innocent man." (Doc. No. 153 at 1).

The Complaint consists of 13 separate counts, eight of which were directed against some or all of the individually named officers,[3] all based on 42 U.S.C. § 1983 and Conn. Gen. Stat. §§ 7-465 and 52-577n. (Doc. No. 153 at 45-58). The plaintiff maintains that detectives Dease, Adger, and Breland were negligent, failed to intervene, unreasonably prolonged the plaintiff's detention, fabricated evidence, and violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding material exculpatory evidence. (Doc. No. 153 at 45-51, 53-55). With respect to the plaintiff's claim against the defendant for municipal liability under § 1983, the plaintiff asserts that the defendant had a "policy or custom of unconstitutional investigative techniques, including coercion of witnesses, the fabrication of inculpatory evidence, the destruction of evidence, and the suppression of exculpatory evidence." (Doc. No. 153 at 50). To the extent that the individual officers acted in accordance with the defendant's policy or custom, and the defendant was aware of and deliberately indifferent to the conduct of its officers, the plaintiff maintains that the defendant is liable for the damages arising out of the individual officers' conduct by way of indemnification pursuant to Conn. Gen. Stat. §§ 7-465 and 52-577n. (Doc. No. 153 at 52, 55-58).

---

[3] The plaintiff brought only one count against Stephenson under 42 U.S.C. § 1983, alleging that Stephenson withheld material exculpatory evidence in violation of his constitutional rights as established in *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. No. 153 at 49-50).

4

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36, the plaintiff crafted the requests at issue, which consisted of six RFAs and twelve related interrogatories. (Doc. No. 171 at 9-10). The RFAs named separately each of the individual officers, requesting that they admit or deny whether, at all relevant times, they "acted in accordance with the policy, procedure, custom, and practice of the City of New Haven" and "acted within the scope of [their] employment as an employee of the City of New Haven." (Doc. No. 171 at 9). Similarly, the first six interrogatories, each of which referenced a specific RFA, asked for a detailed description of "every act [detective Adger, Dease, or Breland] took that was not in accordance with the policy, procedure, custom, or practice of the City of New Haven." (*Id.*). Additionally, the remaining interrogatories sought citations to any previously produced document that supported the defendant's responses to the first six interrogatories. (*Id.* at 10).

Notwithstanding their objections to the RFAs and interrogatories based on overbreadth, ambiguity, and undue burden, detectives Adger, Dease, and Breland each admitted that, at all relevant times, their conduct was "in accordance with the policies, procedures, custom, and practice of the New Haven Police Department," and that they "acted within the scope of [their] employment as an employee of the City of New Haven." (Doc. No. 171 at 26-27; 34-35; 43).

The defendant, faced with the same requests, objected to each RFA, stating that it could neither admit nor deny the RFAs because the individual officers were co-defendants in this matter and, therefore, the defendant was not privy to their theory of liability or trial strategy. (Doc. No. 171 at 15-18). Additionally, the defendant maintained that the RFAs were "beyond the scope of permissible discovery in that [they] improperly [sought] the admission of central facts in dispute and/or otherwise [sought] an acknowledgement of the plaintiff's interpretation of the legal significance of central facts which are in dispute." (*Id.*).

5

At the November 20, 2020 hearing on the plaintiff's Motion to Compel, the Court agreed with the defendant's contention that the RFAs were too broad and, accordingly, ordered the parties to meet and confer in an effort to narrow the scope of the requests. The Court noted that the plaintiff could draft more specific RFAs that posed hypotheticals relevant to the central facts in dispute, which would allow the defendant to admit or deny those RFAs without being bound to a set of facts that had not yet been determined by the fact-finder.[4]

In accordance with the Court's instructions, the plaintiff redrafted its RFAs, but now sought answers to 103 revised RFAs. (*See* Doc. No. 192). The defendant contended that the plaintiff's revised RFAs remained overly broad and required the defendant to take a position on disputed facts. (Doc. No. 191). Notably, several of the plaintiff's revised RFAs requested the same material information sought in the original RFAs, with the addition of particular dates, presumably in an effort to narrow the timeline of the requests. For example, the first of the revised RFAs reads "[a]t all times while conducting his investigation of the Dixwell Deli homicide from January 24 to March 22, 1999, Detective Dease acted in accordance with the policy, procedure, custom, and practice of the City of New Haven." (Doc. No. 193 at 3). In its responses, the defendant continued to object because the requests did "not seek the admission of facts but, rather, seek[] speculation and/or ask[] for a legal conclusion as to the plaintiff's theory of liability." (*Id.*). Notwithstanding its objection, the defendant did, in fact, admit that "it is not the policy, procedure, custom and/or practice of the New Haven Police Department to utilize unconstitutional investigative techniques, coerce witnesses, threaten witnesses, fabricate evidence, destroy evidence, or to suppress or otherwise withhold exculpatory evidence." (Doc. No. 193 at 9).

---

[4] One example the Court offered the plaintiff was whether the defendant could admit or deny that a detective who maintained exculpatory evidence in his basement for years engaged in conduct that was in accordance with the polices and custom of the City of New Haven.

III.     LEGAL STANDARD

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). When a party or deponent "fails to answer a question [or] produce documents . . . as requested," Federal Rule of Civil Procedure 37 permits "[the] party seeking discovery . . . [to] move for an order compelling an answer [or]. . . production[.]" FED. R. CIV. P. 37(a)(3)(B).

Federal Rule of Civil Procedure 36 governs the scope and procedure for serving and answering requests for admission. Specifically, a party may serve on any other party "a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). Additionally, with respect to answering a request for admission, a responding party "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." FED. R. CIV. P. 36(a)(4).

"[T]he purpose of a request for admission is not to discover information, but rather, to facilitate resolution on the merits by *narrowing the issues at trial where the parties unambiguously agree*." *S.C. Johnson & Son, Inc. v. Henkel Corp.*, No. 3:19cv00805 (AVC), 2020 WL 56400528, at *11 (D. Conn. Sep. 22, 2020) (citation omitted) (emphasis added) (internal quotation marks omitted). "Unlike interrogatories, depositions and document demands, requests for admission are neither 'discovery device[s]' nor substitutions for such devices." *Rodriguez v. NNR Global Logistics USA Inc.*, CV14-1766 (JFB) (AKT), 2017 WL 11510163, at *2 (D. Conn. Mar. 31, 2017) (citation omitted). "The sole purpose of requests for admission under Rule 36 is to streamline the

presentation of evidence at trial." *El-Massri v. New Haven Correctional Center*, No. 3:18cv1249 (CSH), 2021 WL 164909, at *3 (D. Conn. Jan. 18, 2021) (citation omitted) (internal quotation marks omitted).

IV. <u>DISCUSSION</u>

In the parties' January 19, 2021 Joint Status Report, the plaintiff stated that the defendant, despite the narrowed focus of the revised RFA's, refused to admit or deny directly the plaintiff's requests and, instead, provided only "lengthy objections and 'admissions' to requests" that the plaintiff did not make. (Doc. No. 191 at 1). Conversely, the defendant maintained that, given the factual circumstances of the case, it could not answer fully the plaintiff's requests because any such admissions would require it to make determinations as to facts that are in dispute and central to the litigation. (*Id.*). In support of its argument, the defendant relies on the holding in *City of Hartford v. Edwards*, 946 F.3d 631 (2d Cir. 2020).

In *Edwards*, the plaintiff brought an excessive force claim under 42 U.S.C. § 1983, alleging civil rights violations against the defendant City of Hartford ("City") stemming from injuries he sustained after a confrontation with Hartford Police Officer Christopher May. *Id.* at 632. In his complaint, the plaintiff alleged that May willfully or wantonly used excessive force when arresting him in violation of his Fourth Amendment rights, and that the City—pursuant to Conn. Gen. Stat. § 7-465—was liable to pay any compensatory damages for his injuries arising therefrom. *Id.* Following a jury trial, the jury found for the plaintiff on the excessive force claim and awarded him both compensatory and punitive damages. *Id.* The City filed a motion for judgment as a matter of law, arguing that, because the jury determined that May's actions were willful or wanton, it was insulated from liability. *Id.* The district court granted the City's motion but only with respect to the award of punitive damages, concluding that "a municipality is required to indemnify an officer

for compensatory damages in an excessive force case when a jury also awards punitive damages." *Id.* at 633. The City then appealed from the district court's bifurcated damages award. *Id.*

On appeal, the United States Court of Appeals for the Second Circuit reversed the district court's judgment, concluding that the jury's determination that May's tortious conduct was willful or wanton triggered "an exception to section 7-465's assumption of liability requirement for all damages attributable to Officer May's conduct." *Id.* at 632-33. In reaching that conclusion, the court relied on the plain meaning of the statute, reasoning that section 7-465 "draws no distinction between compensatory and punitive damages. It cabins a municipality's liability to injuries and damages caused by employees (1) in the performance of their duties, (2) within the scope of their employment, and (3) that do not arise from willful or wanton acts." *Id.* at 634. In other words, the court determined that a plaintiff cannot maintain a claim against a municipality under section 7-465 for injuries arising out of a municipal officer's conduct when that conduct was wanton or willful. *Id.*

The Second Circuit's holding in *Edwards* provides this Court with significant guidance in resolving the present discovery dispute. Notably, the plaintiff's claim against the defendant in the present case centers around the conduct of the individually named officers insofar as he alleges that the officers—by coercing and threatening witnesses, and withholding, fabricating, and destroying evidence—acted in accordance with the defendant's policies and procedures in violation of his constitutional rights. (*See* Doc. No. 170 at 4). To that end, the plaintiff maintains that the defendant is liable for the damages arising out of the individual officers' conduct to the extent that it was aware of, permitted, endorsed, or was deliberately indifferent to such conduct. (Doc. No. 177 at 2). Thus, the central issue for the trier of fact in determining whether the defendant

is liable for the plaintiff's injuries is whether the individual officers acted in accordance with the defendant's policies and procedures or, instead, whether they acted willfully or wantonly.

The plaintiff, through his RFAs, seeks admissions from the defendant that speak directly to the conduct of the individual officers. At the January 22, 2021 status conference, counsel for the plaintiff reiterated the appropriateness of the RFAs, noting generally that requests for admission are meant to narrow issues for trial. To that end, the plaintiff's counsel argued that he was entitled to know the defendant's interpretation of the facts and its position on the individual officers' conduct in order to avoid being "sandbagged" at trial. The fatal flaw in the plaintiff's reasoning, however, is that the facts in question are disputed and central to the issue of liability. Were the defendant required to admit or deny that the individual officers acted in accordance with its policies, it would then be bound by an interpretation of the facts that should be left for the jury's determination. In fact, as defense counsel pointed out during oral argument, the RFAs at issue ask for the defendant to take a position as to whether each individual officer acted within the scope of his or her duties without the benefit of trial testimony on the key disputed factual issues in the case.

The plaintiff's position is particularly unavailing when read in light of the Second Circuit's holding in *Edwards*. *Edwards* stands for the proposition that a municipality cannot be held liable for the damages arising out of the conduct of its officer when the officer's acts are willful and wanton. *Edwards*, 946 F.3d at 634. To the extent that the defendant's admission that the individual officers acted in accordance with policy—and, therefore, did not act wantonly—would serve as an assumption of liability, the plaintiff's RFAs are the functional equivalent of asking the defendant to admit that it is liable for the plaintiff's injuries. Contrary to the plaintiff's contention, this is not the intended purpose of requests for admission. *See Napolitano v. Synthes USA, LLC*, 297 F.R.D.

194, 198 (D. Conn. 2014) ("[R]equests for admission are used to establish admission of facts about which there is no real dispute.").

The deficiencies in the plaintiff's requests are more apparent when considering the claims asserted in his Complaint. The plaintiff's § 1983 claim against the defendant is predicated on the notion that the defendant had a policy or custom that encouraged the use of unconstitutional investigative techniques. (Doc. No. 153 at 50). To the extent that those policies or customs existed, the plaintiff's theory of liability against the defendant hinges on whether the individual officers acted in accordance with those policies or customs. As the defendant has noted over the course of this dispute, the individual officers are co-defendants in this matter and, as such, they have separate counsel representing their interests—interests that are inherently at odds with the defendant's. (*See* Doc. No. 193 at 11-12). The defendant has maintained that it will not indemnify the individual officers for their conduct if they are found to have acted outside the scope of their duties, against policy or custom, or with wanton malice. (Doc. No 191). This position conforms with the holding in *Edwards*, which further underscores why the subject of this dispute cannot be resolved through requests for admission under Rule 36.

The plaintiff relies on the case of *Russo v. City of Bridgeport*, No. 3:03cv1972 (RNC), 2008 WL 2167881 (D. Conn. May 21, 2008), in support of his contention that the RFAs and related interrogatories are proper. (*See* Doc. No. 170 at 9). Specifically, the plaintiff analogizes the facts in *Russo* to those in this case, noting that the Court in *Russo* denied the City's motion for summary judgment in part because it had admitted to a virtually identical request for admission as the RFAs at issue here. (*Id.*). Despite the factual similarities between both cases, the plaintiff's reliance on *Russo* does little to advance his argument. In fact, *Russo* serves as a cautionary tale for municipal defendants for the precise reasons that the defendant has maintained throughout this dispute. At

no point in its analysis did the Court in *Russo* evaluate the merits of the requests for admission, nor did the City of Bridgeport object to the requests. To the contrary, the City of Bridgeport unequivocally admitted that its officers acted in accordance with municipal policy and custom. *Id.* Consequently, the Court determined that any evidence regarding the City's training and supervision of its officers was rendered "unnecessary at [the summary judgment] stage." *Id.*

Although the plaintiff interprets *Russo* to stand for the proposition that a request for admission as to whether a particular officer acted within the scope of a municipality's policies and customs is proper, the Court never addressed that specific issue. Instead, the Court's focus was on whether the plaintiff's *Monell* claim could survive the City's motion for summary judgment. *Id.* The Court determined that it could survive such a motion due in large part to the exact admission that the defendant in the present case declines to make. Indeed, the decision in *Russo* underscores the binding effect of requests for admission at the summary judgment stage; it does not speak to whether a defendant should be compelled to answer the RFAs at issue here.

Accordingly, the plaintiff's Motion to Compel the defendant to respond to the six RFAs and twelve interrogatories set forth in the October 22, 2020 filing (Doc. No. 170) is denied.

V.      CONCLUSION

For the reasons set forth above, the plaintiff's Motion to Compel (Doc. No. 170) is DENIED.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 2nd day of March, 2021.

>__/s/ Robert M. Spector_____
>Robert M. Spector
>United States Magistrate Judge