UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERNON HORN,<br>               Plaintiff,<br><br>  -against-<br><br>CITY OF NEW HAVEN; and LEROY DEASE, PETISIA ADGER, DARYLE BRELAND, and JAMES STEPHENSON, in their individual capacities,<br><br>               Defendants. | No. 3:18 Civ. 1502 (RNC) |

**PLAINTIFF VERNON HORN'S LOCAL RULE 56(a)(1) STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56(a)(1), Plaintiff Vernon Horn, by and through his undersigned counsel, submits the following statement of undisputed material facts in support of Plaintiff's Partial Cross-Motion for Summary Judgment:

***Breland and Dease's February 3, 1999 Interrogation of Pearson***

       1.      During their investigation of the Dixwell Deli robbery/homicide, Defendants Detective Daryle Breland and Detective Leroy Dease (the "Detectives") interviewed Marcus Pearson on January 26, January 28, February 3, and February 5, 1999. Ex. 4 (Breland Dep.) at 205:11-209:15, 211:7-214:14, 218:21-219:4, 302:5-303:10.

      2.      During Breland and Dease's third interview of Pearson on February 3, 1999, Breland took Pearson "down to the police station" and "[i]nto the interrogation room." *Id.* at 219:5-8.

      3.      Dease was also present in the interrogation room with Breland and Pearson on February 3, 1999. *Id.* at 220:6-10, 223:14-18.

1

4. The interrogation room was approximately ten by twelve feet in size. *Id.* at 220:1-5.

5. In the interrogation room on February 3, 1999, Breland and Dease conducted a pre-interview of Pearson. *Id.* at 220:14-16.

6. Breland and Dease's pre-interview of Pearson on February 3, 1999 was not tape-recorded. *Id.* at 221:10-13, 282:16-21.

7. Neither Breland nor Dease took notes during their pre-interview of Pearson on February 3, 1999. *Id.* at 221:14-17, 223:21-23.

8. On February 3, 1999, the Detectives already considered Vernon Horn and Marquis Jackson suspects in the Dixwell Deli robbery/homicide investigation. *Id.* at 224:20-23.

9. During their February 3, 1999 pre-interview of Pearson, Breland and Dease told Pearson they believed he had used a cell phone stolen from the Dixwell Deli to call Crystal Sykes. *Id.* at 227:2-17.

10. In response, Pearson denied that he had used the stolen cell phone to call Sykes. *Id.*

11. Following the pre-interview, Breland and Dease took Pearson's tape-recorded statement. *Id.* at 226:12-16.

12. According to his February 3, 1999 statement, Pearson told the Detectives that, while in New Haven on January 26, 1999, he used a cell phone provided by Horn to call Sykes. Ex. 37 (Tr. of Pearson Feb. 3, 1999 Statement) at 4-5; Ex. 4 at 226:17-19.

13. The phone call between Pearson and Sykes never happened. Ex. 4 at 193:3-5; Ex. 27 (Moledor Dep.) at 16:23-17:1 (Detectives' expert); Ex. 28 (Wines Dep.) at 31:24-32:3 (FBI analyst).

*Pearson Was the Crucial Link Between Horn and the Stolen Cell Phone*

14. No forensic evidence tied Horn or Jackson to the crime: no DNA, fingerprint, hair, footprint, video, audio, nothing. Ex. 4 at 85:21-86:23, 391:10-12, 399:6-400:9; Ex. 3 (Adger Dep.) at 28:21-30:13; Ex. 25 (Stine Dep). at 103:11-18; Ex. 26 (Spector Dep.) at 122:9-19.

15. Before Breland and Dease interrogated Pearson and obtained a statement from him on February 3, 1999, the Detectives had no evidence connecting Horn to the cell phone stolen from the Dixwell Deli. Id. at 294:10-21.

16. State's Attorney Patrick Griffin made the decision to dismiss the case after Horn's conviction was vacated. Ex. 22 (Griffin Dep.) at 56:2-58:25, 90:16-91:8.

17. Griffin based his decision to dismiss the case against Horn "in large measure" on the FBI's finding that it was impossible for Pearson to have made the call to Sykes with the stolen cell phone. *Id.* at 119:7-13. The proof that the call from the stolen cell phone came from Bridgeport, not from Pearson, who was in New Haven, "broke the tangible . . . link between Vernon Horn and the stolen cell phone." *Id.* at 97:9-15.

18. At Horn's criminal trial, the prosecutor repeatedly argued during summation that Pearson's testimony connecting the stolen cell phone to Horn was critical evidence of Horn's guilt. *See* Ex. 31 (Nicholson Closing Argument) at 140:4-141:12 (describing the stolen cell phone as "[p]robably the most glaring" evidence in the case and asking the jury: "What are the chances, ladies and gentlemen, of . . . Mr. Horn having a piece of incriminating evidence that was stolen from the deli that night?"); *id.* at 120:9-16 (describing Pearson as "the one that puts the stolen cell phone in Mr. Horn's hands"); *id.* (noting that the Detectives repeatedly interviewed Pearson because they wanted to "make certain, one hundred percent

3

certain, that Mr. Pearson was certain that he got that stolen cell phone from Mr. Horn"); *id.* at 140:17-24, 141:8-12 (arguing that "Mr. Horn gave [Pearson] that phone," "Mr. Horn ha[d] a piece of incriminating evidence that was stolen from the deli that night," and "a day after" the homicide, "Mr. Horn has that stolen cell phone . . . And he's giving it to Marcus Pearson. And Marcus Pearson identified Mr. Horn as being the source of that phone. What a coincidence.")

***Breland and Dease Suppress Pearson's Denial***

19. The tape recording of Pearson's February 3, 1999 statement later disappeared. Ex. 4 at 299:11-14, 301:1-2 (Breland "couldn't find it" and it "went missing").

20. Back in 1999, Breland never told anyone the tape recording of Pearson's February 3, 1999 statement went missing because he "forgot" to do so. *Id.* at 418:19-420:7.

21. Breland never spoke with the State's Attorney's Office about the Dixwell Deli case at all. *Id.* at 350:3-14.

22. Breland never told anyone at the State's Attorney's Office about what "happened in [his] pre-interviews" of witnesses during the Dixwell Deli robbery/homicide investigation. *Id.* at 351:10-13.

23. Breland did not document Pearson's denial that he called Crystal Sykes with the stolen cell phone in any police report or other document. Ex. 26 at 138:5-9.

24. Neither Breland nor Dease ever disclosed to the prosecutor, Gary Nicholson, that Pearson denied using the stolen cell phone to call Sykes. *Id.* at 120:2-7 ("Q: Did Dease or Breland ever tell you that Pearson told them that Vernon Horn never gave him the cell phone? A: No. Q: Did Detective Adger ever tell you that? A: Nobody ever told me that."); *id.* at 118:12-18 (same).

25. The first time Nicholson heard of Pearson's denial was at Nicholson's deposition in this case in 2020. *Id.* at 118:12-18.

***The Detectives Interrogate and Threaten Thompson, Who Repeatedly Tells the Detectives He Could Not Identify the Dixwell Deli Robbers***

26. Kendell Thompson was in the Dixwell Deli when three people robbed the store. Ex. 7 (Thompson Dep.) at 9:10-11, 15:1-18:13.

27. The Dixwell Deli robbers wore masks "covering their whole face." *Id.* at 22:17-24.

28. The Dixwell Deli robbery took three to four minutes. *Id.* at 24:15-18.

29. Thompson did not know who any of the robbers were. *Id.* at 46:4-48:9, 71:2-10.

30. On January 26, 1999, Breland and Dease went to Thompson's home. Ex. 4 at 121:1-25.

31. When the Detectives arrived at Thompson's home, Thompson "didn't want to talk at first . . . . He didn't want to have nothing to do with it." *Id.* at 121:19-24.

32. Breland and Dease put Thompson in the back of their police car and drove him to the police station to interview him. *Id.* at 123:7-15.

33. The Detectives decided to interview Thompson at the police station instead of at his home because it "[m]ade things a lot easier." *Id.* at 123:16-124:19.

34. After they arrived at the police station, the Detectives took Thompson to a room on the third floor, closed the door, and told him to "have a seat." *Id.* at 128:17-131:13.

35. Only Breland, Dease, and Thompson were present in the room. *Id.* at 130:22-131:7.

36. Breland and Dease proceeded to conduct a pre-interview of Thompson. *Id.* at 132:7-9.

37. Breland had a tape recorder with him during the pre-interview of Thompson. *Id.* at 131:16-19.

38. The Detectives did not tape record their pre-interview of Thompson. *Id.* at 133:4-10.

39. Breland did not take any notes during the Detectives' pre-interview of Thompson. *Id.* at 132:15-17.

40. Dease did take notes in his notebook during the Detectives' pre-interview of Thompson but their whereabouts are unknown. *Id.* at 132:20-133:17.

41. The Detectives showed photos of Horn and Jackson to Thompson during the pre-interview to see if Thompson could identify them. *Id.* at 135:9-15.

42. During the Detectives' pre-interview of Thompson, Dease told Thompson that he would "notify Mr. Thompson's probation officer if he didn't cooperate." *Id.* at 157:21-24.

43. During the pre-interview, Thompson told the Detectives that he could not identify the Dixwell Deli robbers through their face masks. *Id.* at 159:13-160:9.

44. During the pre-interview, Thompson told the Detectives "[m]aybe twice" that he could not identify Horn or Jackson as the Dixwell Deli robbers. *Id.*

45. In response to Thompson's statements that he could not identify Horn or Jackson as the Dixwell Deli robbers, Breland and Dease did not say anything because "[t]here is nothing you can say. [Thompson] couldn't identify them." *Id.* at 160:5-9.

46. Breland then proceeded to take Thompson's tape recorded witness statement. *Id.* at 140:1-3; Ex. 38 (Tr. of Thompson Jan. 26, 1999 Statement).

***Thompson is the Only Eyewitness at the Scene of the Crime Who Identified Horn and Jackson***

47. Thompson was "the only witness in the [Dixwell] [D]eli who identified Horn and Jackson" at trial. Ex. 25 at 141:18-23; Ex. 26 at 117:20-22 (same).

48. During his closing argument at Horn's criminal trial, the prosecutor, Nicholson, argued that even though the Dixwell Deli robbers "had masks on," Thompson's identification was key evidence of Horn and Jackson's guilt because Thompson "knew these people," (Horn and Jackson). Ex. 31 at 141:21-23.

***Breland and Dease Suppress Thompson's Statements and Dease's Threat***

49. Thompson's statements that he could not identify the Dixwell Deli robbers were not recorded in his tape-recorded witness statement. *See* Ex. 38.

50. The tape recording of Thompson's witness statement is missing today. *See* Ex. 4 at 140:4-14 (Breland: "I don't know where it is.").

51. In his tape-recorded witness statement, Thompson identified Horn and Jackson as the Dixwell Deli robbers. Ex. 38 at DET00166.

52. In his tape-recorded witness statement, Thompson identified Horn based on his eyes and mouth and Jackson based on his complexion. *Id.*

53. The Detectives never disclosed to the prosecutor Thompson's statements that he could not identify the Dixwell Deli robbers. Ex. 21 at 136:17-138:18.

54. The Detectives never disclosed to the prosecutor that Dease threatened to call Thompson's probation officer if Thompson did not cooperate with the Detectives. *Id.* at 138:19-24; Ex. 25 at 146:15-147:14.

7

Dated: September 27, 2021
      New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

             /s/
Ilann M. Maazel
Nick Bourland

600 Fifth Avenue, 10th Floor
New York, N.Y. 10020
(212) 763-5000
imaazel@ecbawm.com
nbourland@ecbawm.com

PARRETT, PORTO, PARESE
& COLWELL, P.C.

Tamar R. Birckhead
2139 Whitney Avenue, Suite 1-D
Hamden, Connecticut 06518
(203) 281-2700

KAUFMAN LIEB LEBOWITZ
& FRICK LLP

Douglas E. Lieb
10 East 40th Street, Suite 3307
New York, NY 10016
(212) 660-2332
dlieb@kllf-law.com

*Attorneys for Plaintiff Vernon Horn*