UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VERNON HORN,

      Plaintiff,

V.                                            No. 3:18-cv-1502(RNC)

CITY OF NEW HAVEN, ET AL.,

      Defendants.
_____

MARQUIS JACKSON,

      Plaintiff,

V.                                            No. 3:19-cv-388(RNC)

CITY OF NEW HAVEN, ET AL.,

      Defendants.


<u>RULING AND ORDER</u>

    Plaintiffs Vernon Horn and Marquis Jackson bring these consolidated actions under 42 U.S.C. § 1983 and state law against the City of New Haven, former New Haven Police Department Detectives Leroy Dease, Petisia Adger and Daryle Breland, and State of Connecticut firearms examiner James Stephenson.  The actions arise

1

from the Detectives' investigation of a murder that
occurred during a robbery at the Dixwell Deli in New
Haven in 1999 committed by three masked gunmen.  The
plaintiffs were convicted of the murder and other
offenses after a jury trial based primarily on the
testimony of Steven Brown, who pleaded guilty and
testified that the plaintiffs were primarily
responsible for the robbery-murder.  The convictions
were vacated in 2018 in light of newly discovered
evidence, including exculpatory telephone records that
had been obtained by Detective Adger prior to the
criminal trial.  The charges were then dismissed.

The plaintiffs seek damages for harms caused by
various alleged acts and omissions of the Detectives
beginning in 1999 and continuing until the exculpatory
telephone records were disclosed in 2018.  The
Detectives have moved for summary judgment on all the
claims.  For reasons discussed in prior rulings, the
motion has been granted in part and denied in part as
to the claims under § 1983.  See Horn v. City of New

Haven, No. 18-cv-1502, 2024 WL 1261421 (Mar. 19, 2024).
This memorandum addresses the Detectives' motion for
summary judgment on the state law claims.  For reasons
that follow, the motion is granted in part and denied
in part.[1]

I.

The amended complaint includes claims for
negligence (counts 7 and 11) and violation of the
Connecticut constitution (count 8).  The negligence
claims allege that the Detectives breached duties of
reasonable care that were owed to the plaintiffs
beginning with the investigation.  These included
duties of reasonable care in the "investigation and
arrests" of the plaintiffs, in the "investigation,

---

[1] If the jury finds for the plaintiffs on the § 1983 claims, the
state law claims will be of no practical significance.  The
state law claims will have practical significance only if the
plaintiffs' § 1983 claims fail on the basis of qualified
immunity.  It is difficult to imagine a scenario in which the
Detectives' alleged acts and omissions would be objectively
reasonable and thus protected by qualified immunity under §
1983, yet within an exception to discretionary act immunity
under state law.  For present purposes, however, I analyze the
state law claims without regard to the availability of an
alternative remedy under § 1983.

analysis, reporting, and disclosure of evidence"
relating to the charges against the plaintiffs, and in
the "disclosure of exculpatory evidence."  The
Detectives breached these duties in circumstances where
"it was or should have been apparent to them that their
negligent misconduct was likely to subject the
plaintiffs, who were specifically identifiable victims
of their misconduct, to severe and imminent harm."

In addition, the amended complaint alleges that
Detectives Dease and Adger "knew or should have known
of the exculpatory significance of the phone record
evidence" and "should have communicated their knowledge
of that evidence and its exculpatory contents" to the
prosecutor, the City, and the plaintiffs or their
counsel.  But they "failed to do so on a continuing
basis for more than 19 years."  They "should not have
continually maintained the phone record evidence and
their written analysis thereof in their personal
possession and outside the official NHPD files and
records, as they did for over 19 years."  Rather, they

should have complied with the mandate of Conn. Gen. Stat. § 54-86c(c), which requires an officer to "disclose in writing any exculpatory information or material which he may have with respect to any criminal investigation to the prosecutorial official in charge of such case."  In addition, they should have complied with Conn. Gen. Stat. § 54-36a(b)(1), which provides that "[w]henever" property is seized pursuant to a search warrant without an arrest, the law enforcement agency seizing the property "shall file, on forms provided for this purpose by the Office of the Chief Court Administrator, an inventory of the property seized," which "shall be attached to the warrant."[2]

The state constitutional claims allege that the Detectives caused the plaintiffs "to be wrongfully arrested, charged, prosecuted, convicted and

---

[2] The telephone records were obtained by Detective Adger in 1999 pursuant to a search warrant.  They were not retained in NHPD files.  In 2018, Adger was asked if she had any records relating to the Dixwell Deli case.  She responded by turning over her working copy of the records.  The plaintiffs were then released. The exculpatory value of the records is discussed in the prior ruling cited in the text.

incarcerated." Continuing, this count states: "[b]y their conduct as set forth [earlier in the Amended Complaint], they coerced witnesses, fabricated evidence, withheld exculpatory evidence, and failed to conduct an adequate investigation."

## II.

The Detectives contend that the state law claims are barred by the applicable statutes of limitations. They further contend that the negligence claims in counts 7 and 11 are barred by governmental immunity. The plaintiffs respond that none of the claims is time-barred and that the defendants have not met their burden of establishing that they are immune from negligence liability as a matter of law.

I conclude that none of the claims is time-barred; the only cause of action against the Detectives permitted by state law for wrongful conduct causing the plaintiffs' prosecution is a claim for malicious prosecution; and whether the defendants are immune from liability for the other negligent conduct alleged in

counts 7 and 11 is an issue best left for determination following the presentation of evidence at trial.

A.

The statute of limitations that applies to the negligence claims, Conn. Gen. Stat. § 52-584, has both a discovery provision and a repose provision: it requires that a claim be brought within two years of the date the injury is discovered or should have been discovered with reasonable diligence, and not more than three years from the relevant act or omission.  The term "injury" means "actionable harm."  Actionable harm occurs when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury and a causal connection between the injury and a wrongful act or omission of the defendant.  Lagassey v. State, 268 Conn. 723, 743 (2004).  The statute of limitations that applies to the constitutional claims, Conn. Gen. Stat. § 52-577, requires that suit be brought within three years of the wrongful act or omission.

The Detectives argue that, accepting the plaintiffs' allegations as true, the limitation periods in both statutes began to run in 2000 when the plaintiffs were convicted despite their actual innocence.  The plaintiffs contend that whether they had knowledge of facts providing notice of a causal connection between the convictions and the Detectives' alleged misconduct cannot be determined as a matter of law.

In opposing the Detectives' motion for summary judgment on the § 1983 claims, the plaintiffs have argued that because they never met Steven Brown prior to their arrests in the Dixwell Deli case, it is inconceivable that he could have identified them as perpetrators unless improperly coached to do so by Detective Dease in the presence of Detective Adger.  If that argument is sound, it follows that the falsity of Brown's identification put them on notice of the Detectives' use of improper methods in their post-arrest interview of Brown.

The plaintiffs contend that, in any event, the state law claims are not time-barred because, under the accrual rule of Heck v. Humphrey, 512 U.S. 477, 484-85 (1994), which has been followed by Connecticut courts, the statutes of limitations were tolled until the convictions were vacated in 2018.  See Taylor v. Wallace, 184 Conn. App. 43, 51 (2018), Tierinni v. Town of Vernon, No. TTDCV145005870S, 2015 WL 3798181, at *5 (Conn. Super. Ct. May 21, 2015), and Birch v. Town of New Milford, No. 20-cv-1790, 2021 WL 4932405, at *21 (D. Conn. Sept. 24, 2021).

In Taylor, the Connecticut Appellate Court upheld the dismissal of an inmate's legal malpractice claim against his habeas counsel.  The plaintiff remained incarcerated as a result of the conviction at issue. The Court ruled that the case was properly dismissed for lack of ripeness because the conviction still stood.  The Court stated: "We agree with the policy enunciated in Heck: if success in a tort action would necessarily imply the invalidity of a conviction, the

action is to be dismissed unless the underlying conviction has been invalidated." 184 Conn. App. at 51.

In Birch, the plaintiff sought damages under state law for a wrongful conviction caused by investigative misconduct, including suppression of exculpatory evidence. The defendants moved to dismiss the plaintiffs' negligence claims on the ground that they were time-barred under § 52-584. Judge Bolden denied the motion. Following Taylor, he ruled that the running of the limitation period was tolled until the conviction was vacated.

In Esposito v. Aldarondo, No. 22-cv-621, 2023 WL 2228412 (D. Conn. Feb. 24, 2023), the plaintiff sued the City of Norwalk and members of its police department alleging false arrest, malicious prosecution, excessive force and denial of medical care. The City moved to dismiss the negligence claim asserted against it as barred by the limitation period in Conn. Gen. Stat. § 52-577. Chief Judge Shea denied

the motion to the extent the pendency of the underlying
criminal case made a tort remedy unavailable for the
allegedly negligent acts.

I agree that Taylor provides controlling authority
on the issue of the timeliness of the plaintiffs'
claims.  The claims seek damages for harm resulting
from the plaintiffs' allegedly wrongful convictions and
imprisonment.  These damages could not be recovered
until the convictions were vacated.  Once that
occurred, the plaintiffs had at least two years to
bring suit.  The claims in count 11 were added to the
case more than two years after the convictions were
vacated.  However, the plaintiffs argue that the claims
relate back to the filing of the original complaint,
and the Detectives have not shown that the plaintiffs'
argument is incorrect.  Accordingly, none of the claims
is time-barred.

                            B.

Turning to the immunity defense on which the
defendants seek summary judgment, the issues raised by

the parties' arguments are: (1) whether the Detectives owed a duty of reasonable care to the plaintiffs in the investigation of the Dixwell Deli case; (2) if so, whether the duties were ministerial or discretionary in nature; and (3) if discretionary, whether an exception to discretionary act immunity applies.

As detailed above, the plaintiffs allege that the defendants had a duty to exercise reasonable care in the investigation, analysis, reporting and disclosure of evidence, including exculpatory evidence.  The defendants contend that no such duty was owed to the plaintiffs.  Whether such a duty exists under Connecticut law appears to be an issue of first impression.

In the following cases from other jurisdictions, no such duty was found to exist.

In Lauer v. City of New York, 95 N.Y.2d 95 (2000), the Chief Medical Examiner for New York City failed to correct an error in an autopsy report leading

to a prolonged criminal investigation of the deceased child's father that had devastating consequences for him.  The Court of Appeals rejected the father's negligence claim against the City because the father was unable to show that the Chief Medical Examiner owed him a duty of care.  The Chief Medical Examiner owed no special duty to potential homicide suspects but instead performed his duties for the benefit of the public at large.

In Echavarria v. Roach, 565 F. Supp. 3d 51, 97 (D. Mass. 2021), the court rejected a negligent investigation claim reasoning that an investigator's duty runs to the person or entity on whose behalf the investigation is conducted, not to the person being investigated.

In Davis v. Clark County, 966 F. Supp. 2d 1106, 1139 (W.D. Wash. 2013), the court ruled that a claim for negligent investigation does not exist in Washington because no duty is owed by an investigator to any particular class of persons.

If the Connecticut Supreme Court were to adopt the reasoning of these cases, the plaintiffs' negligent investigation claim would fail as matter of law because of the lack of a legally cognizable duty of care owed by the Detectives to the plaintiffs under Connecticut's negligence law.

Though I think the Court likely would agree with the defendants that they owed no common law duty of care to the plaintiffs to conduct a proper investigation, I conclude that there is no need to decide the issue to resolve the present motion. Unlike the plaintiff in the case against the Chief Medical Examiner, the plaintiffs are seeking damages for harm caused by an investigation that led to criminal charges against them rather than for harm caused by the investigation alone. In essence, they are making a claim for malicious prosecution in the guise of a negligent investigation claim. It appears to me that this is not permitted by Connecticut law.

14

Conn. Gen. Stat. § 52-557n(b), which the defendants invoke for their immunity defense, provides that a municipality and its employees "shall not be liable for damages to person or property resulting from . . . (5) the initiation of a judicial . . . proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent . . . ." As I read this statute, the plaintiffs' sole remedy under state law for wrongful acts causing their prosecution is a cause of action for malicious prosecution.

The immunity from liability provided by this statute with regard to the plaintiffs' negligent investigation claim is consistent with the common law of torts. Section 21 of the Restatement (Third) of Torts lists the elements of a malicious prosecution claim.[3] The Section provides that one who wrongfully

---

[3] In considering questions relating to tort doctrine, the Connecticut Supreme Court customarily looks to the Restatement for guidance.

causes another to be subject to criminal charges ("an accuser") is liable when:

> (a) the accuser initiates, procures, or continues a criminal proceeding against the other;
> (b) the accuser acts without probable cause;
> (c) the accuser acts for an improper purpose; and
> (d) the proceeding terminates in favor of the party against whom it was brought.

Restatement (Third) of Torts § 21 (Am. L. Inst. 2020).

Significantly, the Section goes on to state: "The rules and restrictions associated with malicious prosecution and stated in this Section govern all common-law claims arising from a defendant's wrongful efforts to cause a plaintiff to be prosecuted.  There is no residual liability for negligence."  Id. § 21 cmt. a (emphasis added).

In view of the immunity conferred by 52-557n(b)(5), and consistent with the Restatement, I conclude that the Connecticut Supreme Court would decline to recognize a cause of action in negligence for any acts and omissions by the Detectives that caused the plaintiffs to be prosecuted.  Accordingly, to the

extent the negligence claims in counts 7 and 11 are
based on such acts or omissions, the claims fail as a
matter of law.

Counts 7 and 11 go further and allege post-
conviction negligent acts and omissions of the
Detectives that caused the plaintiffs to remain
incarcerated despite their actual innocence.  These
include the Detectives' negligent failure to prepare
and file an inventory of telephone records seized
pursuant to a search warrant as required by Conn. Gen.
Stat. § 54-36a(b)(1); and their negligent failure to
disclose exculpatory evidence to the prosecutor as
required by Conn. Gen. Stat. § 54-86c(c), in
particular, the failure of Detectives Dease and Adger
to disclose the telephone evidence, as alleged in count
11.  The plaintiffs' theory, as I understand it, is
that the Detectives' negligent failure to comply with
the requirements of these statutes foreseeably caused

harm to the plaintiffs in that it deprived them of a basis on which to obtain release from imprisonment.[4]

At this stage, the defendants do not dispute that the statutes were violated; nor do they dispute that the violations caused harm to the plaintiffs.  Rather, the defendants contend that they are immune from liability for harm stemming from any alleged violation of the statutes because filing inventories and disclosing exculpatory materials are discretionary functions within the meaning of Conn. Gen. Stat. § 52-557n(a)(2)(B).

This statute, which codifies the liability and immunity of municipalities and their employees, provides immunity from liability for negligent acts and omissions of public employees performing acts that are discretionary rather than ministerial in nature.  See Daley v. Kashmanian, 344 Conn. 464, 501-02 (2022);

---

[4] To be clear, as I understand the plaintiffs' theory, they do not contend that the statutes create implied rights of action. Instead, they contend that a reasonable officer would conform his or her conduct to the requirements of the statutes.

<u>Ventura v. Town of East Haven</u>, 330 Conn. 613, 630 (2019).  "[W]hen an official has a general duty to perform a certain act, but there is no city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner, the duty is deemed discretionary [rather than ministerial]."  <u>Daley</u>, 344 Conn. at 480; <u>see</u> <u>Violano v. Fernandez</u>, 280 Conn. 310, 323 (2006).

    Applying this test, the duty imposed by Conn. Gen. Stat. § 54-36a(b)(1) – to prepare and file an inventory of property seized pursuant to a search warrant - is ministerial.[5]  The statute is unambiguous.  It applies to all items of property seized pursuant to a search warrant; requires preparation of an inventory in all cases; dictates the use of a certain form; and directs

---

[5] The statute provides: "Whenever" property is seized pursuant to a search warrant without an arrest, "the law enforcement agency seizing the property shall file, on forms provided for this purpose by the Office of the Chief Court Administrator, an inventory of the property seized," which "shall be attached to the warrant."  Though the statute's mandate is directed to "law enforcement agenc[ies]," the defendants do not dispute that it governed their activities.

19

that the inventory be filed in a particular location.

The unusual specificity of the statute's directives

underscores their ministerial nature.  Because they are

so specific, complying with them requires no exercise

of judgment or discretion.  An officer never has to

wonder whether an item should or should not be listed

on the prescribed form.  Listing is required for all

items in all instances.  In short, the statute, "by its

clear language, compels a municipal employee to act in

a prescribed manner, without the exercise of judgment

or discretion."[6]

The nature of the duty imposed by § 54-86c(c)

presents a closer question.  The statute requires an

officer to disclose to a prosecutor any exculpatory

material or information the officer may have relating

_____

[6] In their opposition, the plaintiffs argue that Detective Adger also violated a ministerial duty imposed by NHPD policy to place evidence in the property room with a completed inventory form. Negligent performance of a duty prescribed by municipal policy is not actionable unless the duty is "clearly" ministerial.  See Northrup v. Witkowski, 332 Conn. 158, 188 (2019).  Exactly what was required by NHPD policy in the circumstances is not shown by the record.  As a result, whether the duty imposed by the policy was "clearly" ministerial cannot be determined at this time.

to an investigation.  There is no Connecticut case that discusses whether the duty imposed by the statute is discretionary or ministerial.

In Kenley v. District of Columbia, 83 F. Supp. 3d 20, 44-45 (D.D.C. 2015), the court considered whether absolute immunity under local law was available to police officers who failed to disclose exculpatory evidence to a prosecutor.  The court expressed doubt that immunity from liability is necessary or appropriate when it comes to an officer's disclosure of exculpatory information to a prosecutor.  I share that doubt.  But the issue here is whether the Connecticut Supreme Court would regard the duty imposed by the statute as discretionary or ministerial.  Based on the parties' submissions and independent research, I believe the Court would say the duty is discretionary.

The text of the statute imposes a general duty requiring that any exculpatory information be disclosed.  But it does not (and realistically cannot) prescribe what an officer must do to perform this duty

in all circumstances.  It does not list the types of
material that must be considered exculpatory or provide
criteria for determining whether a given item is
exculpatory.  It makes no mention of impeachment
material, which can come in many different forms.

     In Connecticut, when a statute similarly imposes a
general duty without prescribing the manner in which it
must be performed, the duty created by the statute is
deemed discretionary rather than ministerial.  See
Northrup v. Witkowski, 332 Conn. 158, 187
(2019)("Mandatory statutory language is not sufficient
to create a ministerial duty unless the statute itself
limits discretion in the performance of the mandatory
act.").

     That the duty imposed by this statute should be
deemed discretionary is consistent with a general rule
in Connecticut that the ordinary functions of a police
officer are discretionary.  See Borelli v. Renaldi, 336
Conn. 1 (2020)(deciding whether to pursue a fleeing
motorist is discretionary); Shore v. Stonington, 187

Conn. 147, 153-55 (1982)(deciding whether to detain
suspected drunk driver is discretionary); Hoyos v. City
of Stamford, 19-cv-1249, 2021 WL 4263180, at *15 (D.
Conn. Sept. 20, 2021)(decision to arrest is
discretionary); Klein v. Glick, 19-cv-1056, 2020 WL
5097444 (D. Conn. Aug. 28, 2020)(same); Chipperini v.
Crandall, 253 F.Supp.2d 301, 311 (D. Conn.
2003)(applying for arrest warrant is discretionary).

From a policy standpoint, if the duty imposed by
the statute were deemed to be ministerial, an officer
would have no immunity against damages liability for
failure to disclose exculpatory material.  As shown by
the discussion in Kenley, there are reasons to think
this would be a good idea.  But it may not be fair to
hold an officer responsible for failing to disclose an
item whose exculpatory value may have been difficult to
discern at the time she acted and became apparent only
with the benefit of hindsight.[7]

_____

[7] Indeed, the events leading to the plaintiffs' release highlight
a potentially significant policy concern: if the duty to
disclose exculpatory material is deemed to be ministerial in

At any rate, based on the record before me, I conclude that the duty imposed by the statute is discretionary.  If this conclusion is correct, the plaintiffs cannot recover under state law for the defendants' post-conviction failure to disclose exculpatory material unless an exception to discretionary act immunity applies.

The Connecticut Supreme Court has recognized three exceptions to discretionary act immunity:

> First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure.  Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws.  Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.

---

this case, what can we expect to happen in the future when a habeas investigator asks an officer whether she has any records relating to a potentially wrongful conviction?  Will the officer turn over records on request or will she hesitate because of the risk of damages liability?

Doe v. Petersen, 279 Conn. 607, 615-16 (2006)(internal quotations omitted); see Brooks v. Powers, 328 Conn. 256, 266 (2018).

The plaintiffs rely on the identifiable person-imminent harm exception.  They contend that from the time they became prime suspects in the Dixwell Deli case, it would have been apparent to the Detectives that failure to disclose the exculpatory material at issue likely would subject the plaintiffs to imminent harm in the form of arrest, prosecution, conviction and imprisonment.  The defendants contend that the exception does not apply because, although the plaintiffs may have qualified as identifiable persons at the pertinent times, it would not have been apparent to the Detectives at any point that failure to disclose the exculpatory material likely would subject the plaintiffs to imminent harm.

The Connecticut Supreme Court has cautioned that the identifiable person-imminent harm exception is a narrow exception to discretionary act immunity.  And it

has deemed the "apparentness" and "imminency" requirements satisfied only in unusual circumstances. See Doe, 279 Conn. at 618 n.10, 619.

No Connecticut appellate decision discusses the applicability of the exception in the context presented here.  A handful of decisions by other courts consider whether the exception applies to the imminent harm of a false arrest, and they reach divergent results.[8]

Based on existing case law, it appears to me that the Connecticut Supreme Court would be disinclined to endorse using the identifiable person-imminent harm exception to subject a police officer to liability for ordinary negligence.  Any step in that direction could have potentially significant consequences for law enforcement, and the Court has indicated that, because the liability and immunity of police officers have been

---

[8] Some claims brought by arrestees have failed because the harm alleged was not physical.  Others have been allowed to proceed in light of Doe, where "[t]he Court seemed untroubled by the fact that the harm was nonphysical."  Pines v. Bailey, No. 3:10-cv-866 (MRK), 2012 WL 2958213, at *6 (D. Conn. July 19, 2012)(Kravitz, J.), rev'd on other grounds, 563 Fed. Appx. 814 (2d Cir. 2014).

codified, problems in this area may need to be entrusted to the legislature in the first instance. See Daley, 344 Conn. at 502-03 ("[T]he complex balancing of public safety against the exigencies of law enforcement is a public policy question for the legislature.").

However, I cannot exclude the possibility that the Court would be willing to permit use of the exception if the facts of a given case demanded it. Viewing the evidence most favorably to the plaintiffs, is this such a case?

Though the parties have not addressed this question, I am sure the defendants would say the answer is no.  In opposing the claims under § 1983, they have argued that a fair jury would have to credit Detective Adger's testimony that she did not fail to disclose exculpatory material to the prosecutor.  Jury findings along this line would be inevitable, the defendants contend, because Detective Adger made no effort to hide the records when she was contacted in 2018.  I agree

that a jury could readily find the facts favorably to Detective Adger.[9]

At this stage, however, I must assume that a jury would resolve all disputed issues of material fact favorably to the plaintiffs.  Depending on the evidence presented at trial, it is conceivable that a jury could find the following: (1) Detective Adger analyzed the telephone records and prepared a flow chart of the calls but she did not disclose the original records or her working copy to the prosecutor; (2) she knew the success of the prosecution depended on whether Horn made a call the day after the robbery-murder using a cell phone that had been stolen from the Deli ("the fourth call"); (3) it would have been apparent to a

---

[9] I note, moreover, that in cases involving wrongful or unreliable convictions, the legislature has provided an alternative remedy to an action in tort.  Conn. Gen. Stat. § 54-102uu provides that a person is eligible for compensation from the Claims Commission if he has been imprisoned for a violation of state law and his conviction has been vacated on grounds of actual innocence or serious misconduct by an officer that contributed to the person's arrest, prosecution, conviction or incarceration.  A person who accepts compensation relinquishes any right to pursue any other action arising out of the conviction and imprisonment.

reasonable officer in like circumstances that Horn almost certainly did not make the fourth call; (4) after Horn was convicted in the Dixwell Deli case, it was common knowledge that he continued to maintain his innocence and was seeking relief from his conviction on the ground that he did not make the fourth call; and (5) Detective Adger still failed to disclose the records even after the Connecticut Supreme Court reversed a grant of habeas relief to Horn partly on the ground that the record evidence regarding the fourth call was inconclusive.[10]

If a jury were to find these facts, and return a verdict for the plaintiffs, a defense motion for judgment as a matter of law based on the insufficiency of the evidence to satisfy the "apparentness" and "imminency" requirements of the identifiable person-imminent harm exception might or might not be granted.

---

[10] A jury may find that Detective Adger was unaware of Horn's post-conviction proceedings. At this point, though, the plaintiffs must be given the benefit of all reasonable inferences that could be drawn from evidence likely to be available at trial viewed fully and most favorably to them.

With all this in mind, I conclude that a ruling on the legal sufficiency of the negligence claims based on the defendants' post-conviction acts and omissions should be deferred at least until the presentation of the plaintiffs' case at trial.  This is preferable to my attempting to rule now for the following reasons: the parties have not specifically focused on this issue; the issue is one of first impression that can be better decided in light of the evidence presented at trial; the immunity under state law that the defendants rely on does not protect them against the burdens of further proceedings but only against liability; and a ruling in favor of the defendants at this stage would not spare them the burdens of further proceedings because corresponding claims under § 1983 have survived the defendants' motion for summary judgment.[11]

III.

---

[11] As noted at the outset, the state law claims will have practical significance only if the § 1983 claims fail on the basis of qualified immunity.  This is another reason to defer ruling on the legal sufficiency of the negligence claims until trial.

Accordingly, the Detectives' motion for summary judgment on the state law claims is hereby granted in part and denied in part.

So ordered this 29th day of March 2024.

_____

Robert N. Chatigny
United States District Judge