UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERNON HORN,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>CITY OF NEW HAVEN; and LEROY DEASE, PETISIA ADGER, DARYLE BRELAND, and JAMES STEPHENSON, in their individual capacities,<br><br>　　　　　Defendants. | No. 3:18 Civ. 1502 (RNC) |

**PLAINTIFF VERNON HORN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY THE DETECTIVES' APPEAL AS FRIVOLOUS**

**Emery Celli Brinckerhoff Abady Ward & Maazel LLP**
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**Kaufman Lieb Lebowitz & Frick LLP**
18 East 48th Street, Suite 802
New York, New York 10017

I.      INTRODUCTION

Plaintiff Vernon Horn has now waited over 25 years to hold Defendants, including New Haven Police Department Detectives Leroy Dease, Petisia Adger, and Daryle Breland (the "Detectives") responsible for their violations of his civil rights.  Now, over six years after his and Marquis Jackson's convictions were vacated and over five years after his civil rights suit was filed, the Detectives seek to further delay their day of reckoning by filing a baseless interlocutory appeal of the Court's summary judgment decision denying them qualified immunity as to Plaintiff's Section 1983 *Brady* claims and failure to intervene claim. *See* Notice of Appeal, Dkt. 350 at 2.

Because the Detectives failed to advance qualified immunity arguments on summary judgment, the constitutional rights at issue in Plaintiff's *Brady* claims were clearly established, and the facts material to these claims are disputed, the Court correctly denied the Detectives' motion for summary judgment on qualified immunity grounds.  This Court should follow the widely accepted procedure to certify the Detectives' appeal as frivolous and thereby retain dual jurisdiction with the Court of Appeals.  Then, the Court should conduct the trial of this matter expeditiously, in parallel with any proceeding that may occur in the Second Circuit.

II.     ARGUMENT

    A.      **This Court Has Inherent Authority to Exercise Continued Jurisdiction Over Claims Subject to a Frivolous Interlocutory Appeal**

At least ten federal Courts of Appeal have concluded that when a party files a frivolous interlocutory appeal, the district court has authority to certify the appeal as frivolous and retain dual jurisdiction over that party's claims. *See United States v. Montgomery*, 262 F.3d 233, 239-41 (4th Cir. 2001); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *United States v. Cannon*, 715 F.2d 1228, 1231 (7th Cir. 1983); *United States v. Hines*, 689 F.2d 934, 936-37

(10th Cir. 1982); *United States v. Blizzard*, 674 F.2d 1382, 1385 (11th Cir. 1982); *United States v. Grabinski*, 674 F.2d 677, 679-90 (8th Cir. 1982); *United States v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1982); *United States v. Leppo*, 634 F.2d 101, 104-05 (3d Cir. 1980); *United States v. Dunbar*, 611 F.2d 985, 987-89 (5th Cir. 1980); *see also Rivera-Torres v. Velez*, 341 F.3d 86, 95-96 (1st Cir. 2003) (not adopting frivolous certification rule, but acknowledging dual jurisdiction when an appeal is frivolous).  The Supreme Court also has approvingly discussed the doctrine, noting that the practice of a "[d]istrict [c]ourt appropriately certify[ing] [a defendant's] immunity appeal as 'frivolous' . . . enables the district court to retain jurisdiction pending summary disposition of the appeal and thereby minimizes disruption of the ongoing proceedings." *Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996).

      While the Second Circuit has yet to expressly adopt the doctrine, it has "tacitly approved [the] procedure," *Pearce v. LaBella*, 10 Civ. 1569, 2013 WL 12411801, at *4 (N.D.N.Y. Oct. 11, 2013) (citing *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170-71 (2d Cir. 2007)), and numerous lower courts within the circuit have adopted it, including in the context of qualified immunity appeals, specifically, *see, e.g.*, *Betances v. Fischer*, 140 F. Supp. 3d 294, 308 (S.D.N.Y. 2015), *aff'd*, 837 F.3d 162 (2d Cir. 2016) (certifying defendants' interlocutory qualified immunity appeal as frivolous and retaining district court jurisdiction pending the appeal); *Davis v. City of N.Y.*, No. 12 Civ. 3297, 2018 WL 10070503, at *3 (S.D.N.Y. Dec. 14, 2018) (same); *Pearce*, 2013 WL 12411801, at *4 (same); *Bean v. City of Buffalo*, 822 F. Supp. 1016, 1019 (W.D.N.Y. 1993) (same); *Palmer v. Goss*, No. 02 Civ. 5804, 2003 WL 22519454, at *1 (S.D.N.Y. Nov. 5, 2003) ("Where a district court determines that an appeal of a denial of qualified immunity is frivolous, the court may proceed to trial even in the face of an interlocutory appeal.").

This Court has the authority to certify the Detectives' appeal as frivolous and continue exercising jurisdiction over Plaintiff's *Brady* and failure to intervene claims even as the appeal is pending in the Second Circuit.

### B.  The Detectives' Appeal Is Frivolous

The Detectives appeal the Court's denial of their motion for summary judgment on qualified immunity grounds as to Plaintiff's *Brady* claims and failure to intervene claims. *See* Dkt. 350 at 2.  As the Court explained in its summary judgment decision, Plaintiff's *Brady* claims stem from: (i) Detectives Dease's and Breland's interrogations of and suppression of exculpatory statements by witnesses Kendall Thompson and Marcus Pearson; (ii) Dease's and Breland's failure to disclose the coercive methods "they used to get the witnesses to change their statements"; and (iii) Detective Adger's failure to disclose telephone records.  *Horn v. City of New Haven*, No. 18 Civ. 1502, 2024 WL 1261421, at *6-*8 (D. Conn. Mar. 19, 2024). Plaintiff's failure to intervene claim is based on Detectives Dease and Breland "each failing to intervene to prevent the other from withholding Thompson- and Pearson-related *Brady* material," and Detective Dease "failing to intervene to prevent [Detective] Adger from withholding the telephone records." *Id.* at *14.

The appeal is frivolous, first, because the Detectives failed to argue that qualified immunity shields them from (1) Plaintiff's *Brady* claims related to Detectives Dease's and Breland's failure to disclose their coercive interview methods; (2) Plaintiff's *Brady* claim related to Detective Adger's suppression of the phone records; and (3) Plaintiff's failure to intervene claim.  As for Plaintiff's *Brady* claims related to the Detectives' suppression of the Thompson and Pearson statements, the Detectives' appeal is frivolous because a genuine issue of fact exists as to whether the Detectives intentionally suppressed exculpatory evidence in bad faith, and it

3

was clearly established that Detectives Dease's and Breland's failure to disclose exculpatory off-the-record statements by Thompson and Pearson violated *Brady*.

### 1. The Detectives Waived the Qualified Immunity Arguments They Now Advance for the First Time on Appeal

In their extensive summary judgment briefing, the Detectives failed to argue that qualified immunity shielded them from Plaintiff's *Brady* claims related to the Detectives' failure to disclose their coercive interrogation methods, Detective Adger's suppression of the phone records, and the Detectives' failure to intervene to stop each other from violating Plaintiff's constitutional rights. The Detectives' Notice of Appeal raises these unpreserved issues for the first time and, accordingly, under longstanding Second Circuit law, they have been waived for the purposes of the Detectives' summary judgment motion.

"It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *United States v. Keshner*, 794 F.3d 232, 234 (2d Cir. 2015) (cleaned up).

Here, the Detectives had numerous opportunities to present their qualified immunity arguments to the Court. They filed "unusually extensive" briefing in support of their motion for summary judgment, *Horn*, 2024 WL 1261421, at *1—*161 pages* total, including a 95-page opening brief and 66-page reply brief. *See* Memorandum of Law in Support of Defs' Motion for Summary Judgment, Dkt. 221-3; Reply Memorandum of Law in Support of Defs' Motion for Summary Judgment, Dkt. 283. The Court then heard four-and-a-half hours of oral argument on the parties' summary judgment motions. *See* July 11, 2022 Oral Argument Tr., Dkt. 294. In their briefing and at oral argument, the Detectives did make cursory qualified immunity arguments in defense to some of Plaintiff's *other* claims. *See, e.g.*, Dkt. 221-3 at 72-74 (asserting qualified immunity regarding Plaintiff's evidence fabrication claim); *id.* at 75

(asserting qualified immunity regarding Plaintiff's unreasonably prolonged detention claim); Dkt. 283 at 11 (same).  Yet, as the Court noted in its summary judgment decision, the Detectives never argued that they are entitled to qualified immunity on Plaintiff's *Brady* claims related to the Detectives' "failure to disclose the methods they allegedly used to get the witnesses to change their statements," *Horn*, 2024 WL 1261421, at *8, or on Plaintiff's failure to intervene claim, *id.* at *14 n.10.[1]  They also did not make any qualified immunity argument in their briefing or at oral argument regarding Detective Adger's suppression of the phone records.  *See* Dkt. 221-3 at 33-46 (opening brief); Dkt. 283 at 12-23 (reply brief); Dkt. 294 at 18-24 (oral argument). Thus, this Court "d[id] not reach" and d[id] not address" these issues.  *Id.* at *8, *14 n.10.

The Detectives have no good cause for their failure to raise these arguments before this Court on summary judgment, and, accordingly, any such arguments were waived for the purposes of the Detectives' summary judgment motion and related appeal. Any attempt to raise these arguments for the first time on appeal is frivolous.

### 2. The Court Properly Denied Qualified Immunity to the Detectives as to Plaintiff's *Brady* Claims Regarding the Suppressed Thompson and Pearson Witness Statements

The Detectives have no colorable argument that they are entitled to qualified immunity on Plaintiff's *Brady* claims related to Detectives Dease's and Breland's suppression of Thompson's and Pearson's exculpatory statements.  The right at issue in these claims was clearly

---

[1] As to Plaintiff's *Brady* claim based on the Detectives' failure to disclose the methods they used to get Thompson and Pearson to change their statements, the Court correctly decided that the Detectives' "overall reliance on qualified immunity generally" in their papers was insufficient to assert the defense to this *Brady* theory on summary judgment.  *Horn*, 2024 WL 1261421, at *9; *see, e.g.*, *Fusco v. Cnty. of Putnam, N.Y.*, No 15 Civ. 8132, 2018 WL 1889070, at *12 (S.D.N.Y. Apr. 18, 2018) (defendants "failed to carry their burden" when they "list[ed] the general elements of qualified immunity" and "merely asserted qualified immunity in conclusory terms"); *Francis v. Fiacco*, No. 15 Civ. 901, 2016 WL 3448617, at *11 (N.D.N.Y. June 20, 2016) (denying qualified immunity to defendants who "briefly outlined qualified immunity in general terms").

5

established well before Plaintiff's arrest and prosecution, and genuine issues of material fact preclude summary judgment on the issue of the reasonableness of the Detectives' conduct and deprive the Second Circuit of jurisdiction over the Detectives' interlocutory appeal.

Unlike the claims addressed above, the Detectives did argue—just barely—that they are entitled to qualified immunity. In a passing statement at oral argument, their counsel stated—without citing any law—that the Detectives are immune to these claims because "it cannot be said that . . . every reasonable police officer would agree that the detectives violated the plaintiffs' constitutional rights." Dkt. 294 at 100. Then, in the scant couple pages of the brief they filed *in opposition to Plaintiff's cross-motion for summary judgment* (but not in their brief in support of their own motion, which is now the subject of their appeal), the Detectives argued that they are entitled to qualified immunity with respect to these claims, and did so without citing a single *Brady* case where a police officer was granted qualified immunity or otherwise identifying *when* the constitutional right at issue was clearly established. *See* Memorandum of Law in Opposition to Pl's Motion for Summary Judgment, Dkt. 282 at 27-29. This "cursory analysis of qualified immunity clearly fail[ed] to meet defendants' burden of proof on the affirmative defense." *Crawford v. Coughlin*, No. 94 Civ. 494, 1996 WL 227864, at *4 (W.D.N.Y. Apr. 26, 1996) (denying qualified immunity to defendants who "cite[d] general language on the qualified immunity defense" and "simply state[d]" that "there is no judicial precedent establishing that defendants would be liable under the circumstances in this case").

The Detectives have no non-frivolous qualified immunity argument regarding these *Brady* claims. As to the first prong of the qualified immunity analysis, which asks whether the right at issue was "clearly established at the time the action was taken," *Horn*, 2024 WL 1261421, at *8 (cleaned up), there is no dispute that the *Brady* right at issue was clearly

6

established well before Plaintiff's 2000 criminal trial. *See Walker v. City of N.Y.*, 974 F.2d 293, 299 (1992) ("[T]he police satisfy their obligations under *Brady* when they turn exculpatory evidence over to prosecutors."); *see Poventud v. City of N.Y.*, No. 07 Civ. 3998, 2015 WL 1062186, at *8 (S.D.N.Y. Mar. 9, 2015) (noting that "well before" 1997, the Second Circuit had "repeatedly held that impeachment evidence relating to the identification of a suspect by a witness is material and must be disclosed" under *Brady* (citing *Walker*, 974 F.2d at 300)).

As for the second prong, which "turns on the objective legal reasonableness" of the Detectives' actions, the Court correctly concluded that genuine issues of fact foreclose the Detectives' qualified immunity defense on summary judgment. *Horn*, 2024 WL 1261421, at *8. While Plaintiff argued that a lesser mental state sufficed to state a civil *Brady* claim, the Court ruled that Plaintiff's *Brady* claims against the Detectives requires a showing of intentional misconduct, *see id.* at *14, and that there are genuine issues of fact as to whether the Detectives knowingly or intentionally suppressed Thompson's and Pearson's exculpatory statements, *see id.* at *8. No interlocutory appellate jurisdiction exists to review that ruling. *See Locurto v. Safir*, 264 F.3d 154, 169-70 (2d Cir 2001) (holding that where "intent is a necessary element" of plaintiff's constitutional claim and a genuine issue of fact precludes summary judgment as to defendant's intent, plaintiff's "claim turns on an issue of fact rather than on a question of law" and an interlocutory qualified immunity appeal "must therefore be dismissed for lack of appellate jurisdiction"). Specifically, the Court held that, "accepting Thompson's and Pearson's deposition testimony as true," Detectives Dease and Breland "are not protected by qualified immunity" because Thompson's and Pearson's "off-the-record statements flatly contradicted the statements [Detectives Dease and Breland] forwarded to the prosecutor" and therefore "[a]ny reasonable officer would have known that failure to reveal the off-the-record statements to the

7

prosecutor would violate an officer's disclosure obligation under *Brady*." *Horn*, 2024 WL 1261421, at *8.[2]

The Detectives have no basis in law or fact to appeal the Court's decision denying qualified immunity on Plaintiff's *Brady* claims related to the suppressed witness statements.

## CONCLUSION

The Detectives' appeal is based on arguments they either waived or barely mentioned on summary judgment before this Court. Plainly, they are appealing now because they have no other way to delay Plaintiff's long-awaited trial, where a jury is likely to award Plaintiff significant damages. Their baseless arguments regarding Plaintiff's *Brady* claims and their failure to assert certain qualified immunity theories in the hundreds of pages of briefing and hours of argument made on summary judgment should not delay justice. A trial should be promptly scheduled so Plaintiff's claims can finally be heard by a jury.

---

[2] For the same reason, even if the Detectives had not waived their qualified immunity arguments regarding Plaintiff's *Brady* claim concerning Detective Adger's suppression of the phone records, *see supra* Section II.B.1, the Second Circuit still would not have jurisdiction over the Detectives' appeal as to that claim because the Court held that "whether the [phone] records were intentionally withheld also presents a genuine issue for trial." *Horn*, 2024 WL 1261421, at *9.

For the foregoing reasons, the Court should reject the Detectives' attempt to delay trial, certify their interlocutory appeal as frivolous, retain dual jurisdiction over Plaintiff's claims against the Detectives with the Court of Appeals, and proceed with trial.

Dated: May 31, 2024
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

/s/
Ilann M. Maazel
Nick Bourland

600 Fifth Avenue, 10th Floor
New York, New York 10020
imaazel@ecbawm.com
nbourland@ecbawm.com
(212) 763-5000

KAUFMAN LIEB LEBOWITZ
& FRICK LLP

Douglas E. Lieb
10 East 40th Street, Suite 3307
New York, New York 10016
dlieb@kllf-law.com
(212) 660-2332

*Attorneys for Plaintiff Vernon Horn*