**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| VERNON HORN,<br>*Plaintiff*,<br><br>v.<br><br>CITY OF NEW HAVEN, *et al.*,<br><br>*Defendants*. | No. 18 Civ. 1502 (KAD) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE**

### 1. MOTION IN LIMINE TO PRECLUDE PRIOR RULINGS

Plaintiff Vernon Horn moves *in limine* to exclude evidence and testimony regarding prior judicial opinions—issued before Mr. Horn's wrongful conviction was vacated—that affirmed Mr. Horn's conviction and denied him various forms of post-conviction relief. These prior opinions are inadmissible because they are irrelevant (Rule 401), unduly prejudicial (Rule 403), and hearsay (Rule 802).

In April 2000, Mr. Horn and Marquis Jackson were convicted of felony murder and related charges stemming from the 1999 Dixwell Deli robbery in New Haven. In 2002, their direct appeals were denied. *See State v. Jackson*, 73 Conn. App. 338 (2002). Mr. Horn and Mr. Jackson later filed habeas petitions in state court. *See Jackson v. Comm'r of Correction*, 149 Conn. App. 681 (2014); *Horn v. Warden*, No. CV010456995, 2014 WL 3397826, at *1 (Conn. Super. Ct. June 3, 2014), *rev'd sub nom. Horn v. Comm'r of Corr.*, 321 Conn. 767, 138 A.3d 908 (2016). In 2013, a habeas trial was held in Mr. Horn's case. *See Horn*, 2014 WL 3397826, at *1. His actual innocence claim was denied, *id.* at *10-*11, but his habeas petition based on

1

ineffective assistance of counsel was granted, *id.* at *2-10, and Mr. Horn was released from prison in 2014, *id.* at *11.  In 2016, the Connecticut Supreme Court reversed the decision of the Circuit Court and Mr. Horn returned to prison.  *See Horn*, 321 Conn. at 804.  The Supreme Court held that there was sufficient evidence to convict Mr. Horn, even after key witness Marcus Pearson had recanted, and therefore Mr. Horn's defense counsel was not ineffective.  *See id.* at 799-800.

All evidence of and argument regarding Mr. Horn's post-conviction judicial opinions must be excluded from trial under Rules 802, 401, and 403.

Under Rule 802, "a judicial opinion is not evidence and is hearsay."  *Phelps v. CBS Corp.*, No. 17-CV-8361, 2021 WL 4226037, at *4 (S.D.N.Y. Sept. 16, 2021); *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 632 (S.D.N.Y. 2015) (in wrongful conviction case, excluding a state-court opinion addressing whether probable cause existed for the underlying prosecution), *aff'd sub nom. Bertuglia v. Schaffler*, 672 F. App'x 96 (2d Cir. 2016); *LoCurto v. AT&T Mobility Servs. LLC*, No. 13-CV-4303 (AT) (KNF), 2018 WL 11604501, at *4 (S.D.N.Y. Sept. 26, 2018) ("It is well settled in the Second Circuit that a judgment or judicial opinion in another case . . . is inadmissible hearsay.").  The judicial opinions "would be inadmissible to show the truth of the matters asserted therein—*e.g.*, that there was no *Brady* violation or fabricated evidence."  Omnibus Ruling & Order on Motions *in Limine*, *Morant v. City of New Haven*, No. 22-CV-630 (SVN) (D. Conn. Apr. 11, 2025), ECF No. 394 at 8 ("*Morant* MIL Order").  There is no conceivable non-hearsay reason for Mr. Horn's post-conviction judicial opinions to be shown to the jury.[1]

---

[1] In contrast, Plaintiff will rely on a limited set of judicial opinions for an explicitly non-hearsay purpose: demonstrating that the City had notice of potentially unconstitutional police practices with respect to *Brady* material and evidence fabrication.  *See, e.g.*, *Poventud v. City of New York*,

Under Rule 401, there is no fact "of consequence in determining the action" that Mr. Horn's prior judicial opinions have "any tendency to make . . . more or less probable." Fed. R. Evid. 401. Defendants have not indicated what purpose would be served by showing judicial opinions to the jury. However, the Detectives' police practices expert repeatedly referenced the opinion from Mr. Horn's direct appeal in his expert report and based his opinions regarding this case on the facts stated in that opinion. That issue is addressed in Mr. Horn's separate motion in limine regarding the police practices' experts' inadmissible testimony regarding disputed facts. To the extent that Defendants intend to have any of their witnesses cite facts or rulings in the judicial opinions, just as the Detectives' police practices expert did in his expert report, the judicial opinions have no bearing on the issues to be tried and should be further excluded on relevance grounds.

Second, the evidence should also be excluded under Rule 403. As several courts have found, evidence of the opinions of judges creates an impermissible risk that the jury will abdicate its duty to find the facts in this case based on the evidence presented to it, and will instead inappropriately defer to those judges. *See, e.g.*, *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) ("[A]dmission of Judge Sinclair's opinion would have been unduly prejudicial to Beamer because" it was "likely that the jury would have placed undue weight on such evidence," so "the district court properly excluded [it] under Fed. R. Evid. 403."); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) ("[J]udicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a

No. 07 CIV. 3998 DAB, 2015 WL 1062186, at *13 (S.D.N.Y. Mar. 9, 2015) (in support of *Monell* claim related to the city's alleged policy of failing to disclose exculpatory evidence, plaintiff met his burden when he cited to eight state criminal court decisions preceding plaintiff's conviction "involv[ing] police officers destroying or failing to disclose potentially exculpatory material").

serious danger of unfair prejudice." (cleaned up)); *Haynes v. Acquino*, No. 10-cv-355-F, 2018 WL 3126725, at \*5 (W.D.N.Y. June 26, 2018) ("Significantly, courts have determined that the prejudice to [the opposing party] in admitting a prior judicial decision significantly outweighed the prior decision's probative force." (cleaned up)), *aff'd*, 771 F. App'x 75 (2d Cir. 2019).

Third, after Mr. Horn's conviction was vacated, all of those pre-vacatur opinions carry no weight. The now-vacated and erased criminal proceedings against Mr. Horn (and Mr. Jackson) have no preclusive effect as to any issue because they are a complete nullity. As the Connecticut Supreme Court has repeatedly noted, "a *reversed* judgment does not have preclusive effect." *Shirley P. v. Norman P.*, 329 Conn. 648, 661 (2018) (emphasis in original); *accord, e.g.*, *State v. Brundage*, 320 Conn. 740, 753-54 (2016) ("Because the defendant's judgments . . . have been vacated, those judgments have no preclusive effect."); *Birch v. Town of New Milford*, No. 3:20-CV-1790 (VAB), 2021 WL 4932405, at \*10 (D. Conn. Sept. 24, 2021) (applying state law in a civil wrongful conviction case and declining to give prior preclusive effect to the decisions in a prior reversed *habeas* denial). This Connecticut state law controls. *Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989) ("The federal court must . . . apply the collateral estoppel rules of the state which rendered the judgment.").

Under federal law, the result is the same. The conviction, and all the decisions and opinions that led to or were part of the conviction, are a nullity. *See Hewitt v. United States*, 606 U.S. 419, 431 (2024) ("A criminal defendant whose judgment of conviction has been vacated . . . is to be treated going forward as though he were never convicted. . . . [The] judgement [is] invalidated and therefore [becomes] legally inoperable."); *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992) ("A judgment vacated or set aside has no preclusive effect."); *Dukes v. City of Albany*, 289 F. Supp. 3d 387, 393-94 (N.D.N.Y. 2018) (explaining that in a § 1983 matter,

because plaintiff's conviction was vacated, "the judgment of any court tasked with a review of that now-vacated criminal conviction . . . has no preclusive effect"); *Kogut v. Cnty. of Nassau*, Nos. 06-CV-6695, 06-cv-6720 (JS) (WDW), 2009 WL 5033937, at \*10 (E.D.N.Y. Dec. 11, 2009) ("A vacated judgment, by definition, cannot have any preclusive effect in subsequent litigation." (alteration adopted) (quoting *Boston Firefighters Union v. Boston Police Patrolmen's Ass'n*, 468 U.S. 1206, 1211 (1984))).

Throughout this litigation, Defendants have insisted that Mr. Horn is guilty. Defendants will likely attempt to persuade the jury at the upcoming trial that Mr. Horn in fact committed the Dixwell Deli robbery-homicide. That makes it all the more important that the Court exclude these prior judicial opinions that affirmed Mr. Horn's conviction, denied his habeas petition on actual innocence grounds, and overturned the grant of habeas on ineffective assistance grounds. The judicial opinions have zero probative value here: they were based on a different body of evidence than what the jury will consider here, they are hearsay, they present an unacceptable risk of improper deference to judges when the Seventh Amendment guarantees Mr. Horn a trial by a jury of his peers, and they all existed before the entire conviction was overturned.

2. **MOTION TO EXCLUDE DEFENDANTS' EXPERTS' INADMISSIBLE TESTIMONY RESOLVING CONTESTED FACTS, OPINING ON THE CREDIBILITY AND STATE OF MIND OF WITNESSES, AND MAKING CONCLUSIONS OF LAW**

Plaintiff Vernon Horn moves *in limine* to exclude all testimony by Defendants' police practices experts, Elliot Spector and Joseph Stine, that present fact narratives or purport to resolve disputed facts, opine on the credibility and state of mind of witnesses, and/or state legal conclusions regarding the ultimate issues to be tried. Any expert testimony regarding these issues reflects no actual expertise, would invade the province of the jury and the Court, and must be excluded under Federal Rules of Evidence 702, 703, and 403.

5

**BACKGROUND: DEFENDANTS' POLICE PRACTICES EXPERTS**

Defendant the City of New Haven (the "City") disclosed Joseph Stine as a police practices expert in this case. *See* Ex. A (Stine Expert Rep.).[2] Detectives Dease, Breland, and Adger (the "Detectives") disclosed Elliot Spector as their police practices expert. *See* Maazel Decl. Ex. B (Spector Expert Rep.). According to Stine, he was retained by the City to offer his expert opinions regarding law enforcement policies, practices, training, and procedures in place during the 1999 Dixwell Deli homicide investigation—the New Haven Police Department ("NHPD") investigation that caused Mr. Horn's wrongful murder conviction—and whether the practices employed by the NHPD were consistent with generally accepted practices. *See* Ex. A at 2. Spector says he was retained by the Detectives to evaluate the Detectives' investigation based on "accepted investigative practices in Connecticut in 1999 and applicable legal standards" and regarding "Plaintiffs' allegations of misconduct." Ex. B at 1.

Both Stine and Spector claim they did not resolve issues of fact or make credibility determinations. Stine says he made "no assessment of the credibility of any witness" and did not "reach any conclusions as to what actually occurred." Ex. A at 2. Spector claims that he "did not look into the mind of any party or witness to draw conclusions as to why they did specific acts" and only discounted Plaintiff's allegations where they were "unsupported by the facts and refuted by undisputed facts." Ex. B at 1.

But the record says otherwise. As detailed below, in both their expert reports and deposition testimony, Stine and Spector repeatedly: (1) opined on and (somehow) resolved the most significant factual disputes in this case, no less in Defendants' favor; (2) opined on the

---

[2] All cites to "Ex." are to the exhibits annexed to the July 10, 2026 Declaration of Ilann Maazel in Support of Plaintiff's Motions in Limine. All "Dkt." cites are to past filings on the *Horn v. City of New Haven* ECF docket.

credibility and state of mind of key witnesses; and (3) stated legal conclusions regarding the ultimate issues of fact and law that the jury or the Court will be asked to decide.

## ARGUMENT

I.    **STINE AND SPECTOR SHOULD BE PRECLUDED FROM PRESENTING FACTUAL NARRATIVES AND RESOLVING DISPUTED FACTS IN DEFENDANTS' FAVOR**

The Court should preclude both defense experts from usurping the jury's role as the sole factfinder.

"One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting Fed. R. Evid. 702). "In deciding whether expert testimony will be helpful to the fact-finder, the Court must determine whether the testimony 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (quoting *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)).

"It is [] inappropriate for experts to become a vehicle for factual narrative" because "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such narration traceable to a reliable methodology." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013); *see Taylor v. Evans*, No. 94 Civ. 8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (rejecting portions of expert report on the ground that the testimony consisted of "a narrative of the case which a lay juror is equally capable of constructing"); *Highland*, 379 F. Supp. 2d at 469 ("While an expert must of course rely on facts or data in formulating an expert opinion, *see* Fed. R. Evid. 703, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record

7

evidence."). Instead, "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events," not through expert testimony. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013). In sum, the job of "drawing inferences from [witnesses'] testimony belong[s] to the factfinder." *Id.*

Here, Stine and Spector seek to present their own narratives of the facts, interwoven with opinions that are improperly rooted in their own interpretation of the record, which they repeatedly resolve in Defendants' favor. For example, Stine admitted at his deposition that his opinion regarding Det. Adger's alleged suppression of phone records evidence in her home basement—that it was "in accord with generally accepted police practices," Ex. A at 19—was based on "what [Adger] said"—*i.e.*, that she put the original phone records in the NHPD records room, itself a contested fact. Dkt. 236-5 at 164. Stine made "the assumption that what [Adger] said is correct" and "base[d] an opinion on it." *Id.* at 165. At trial, Stine should not be permitted to resolve contested facts by "assum[ing]"—or telling the jury—"that what [the Detectives] said is correct." *Id.* Similarly, Stine seeks to present his own factual narrative regarding other exonerations involving the City. According to Stine, these other exonerations—which are relevant to Plaintiff's *Monell* claim—were "not . . . based on proven . . . misconduct by the NHPD or its investigators." Ex. A at 24. It is the jury's job to interpret the record, including evidence regarding the City's history of unconstitutional police practices, not Stine's.

Meanwhile, Spector's entire expert report is written in a vacuum, based on the prosecution's (and the Detectives') case at Mr. Horn's 1999 criminal trial. In the section of his report titled "FACTS RELIED ON IN RENDERING OPINIONS," Spector offers a lengthy, Defendant-skewed factual narrative, and specifically states he relied on facts from just two sources: (1) the 2002 Connecticut Appellate Court decision affirming Mr. Horn's now-vacated

conviction, Ex. B at 3, and the Detectives' own police reports, *id.* at 4.  In other words, in crafting his version of the facts, Spector disregarded all of the evidence that was later revealed, including the exculpatory phone records that were secreted in Det. Adger's home basement and, once revealed, led in part to Mr. Horn's exoneration, as well as deposition testimony in this litigation from key witnesses Marcus Pearson and Kendell Thompson, who each testified that they were coerced by the Detectives into adopting fabricated witness statements.

For example, with respect to Marcus Pearson, Spector asserts his "opinion" that Pearson did not feel threatened or coerced by the Detectives, *see* Ex. B at 18, and contradicts Pearson's own deposition testimony detailing how the Detectives repeatedly threatened him, including by threatening to violate his probation and take his children away, *see* Dkt. 231 at 17-18 (summarizing Pearson's deposition testimony).  At trial, Spector should not be permitted to present his own factual narrative and tell the jury that his (and Defendants') version of the facts is true.

## II.    THE EXPERTS' OPINIONS REGARDING THE CREDIBILITY AND STATE OF MIND OF KEY WITNESSES ARE INADMISSIBLE

Stine and Spector should also be precluded from opining on witnesses' credibility and state of mind—topics the experts are unqualified to opine on and only the jury can decide.

An expert "may not offer opinions regarding [a party's] knowledge or beliefs, both because he is not qualified to give such opinions and because such testimony would impermissibly tread on the role of the jury." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2015 WL 9480448, at \*5 (S.D.N.Y. Dec. 29, 2015); *see Marvel Characters*, 726 F.3d at 136 (excluding experts who sought to "speculate as to the motivations and intentions of certain parties"); *Highland*, 379 F. Supp. 2d at 469 (holding that expert may not opine on a party's subjective intent, state of mind, and knowledge).  Likewise, an expert may not opine

regarding the credibility of witnesses or evidence. *See Marvel Characters*, 726 F.3d at 136

("[T]he jobs of judging [] witnesses' credibility . . . belongs to the factfinder.").

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and

'may be excluded if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York*, 414 F.3d

381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403). "Indeed, the Supreme Court . . . has noted

the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert

testimony, given the unique weight such evidence may have in a jury's deliberations." *Id.*

(cleaned up). Testimony that "comment[s] directly, under the guise of expert opinion, on the

credibility of trial testimony from crucial fact witnesses" must be "excluded by the trial court

under Rule 403." *Id.* at 398; *see id.* at 398-400 (vacating judgment and remanding for new trial

where the district court abused its discretion by admitting expert testimony regarding the

credibility of key witnesses).

For example, Stine opines that "it would be in accord with generally accepted [police]

practices and procedures" for a detective to "believe that a statement" like the one given by Steve

Brown—the witness who purportedly "confessed" and identified Mr. Horn and Mr. Jackson as

his "accomplices"—would "carry a *high degree of credibility*, including *credibility* regarding the

identification of Steven Brown's coconspirators." Ex. A at 14, 18 (emphasis added). Stine

should not be allowed to testify regarding the credibility of any testimony or evidence in the

case, and cannot skirt around this prohibition by couching it in objective-sounding language, like

"generally accepted practices and procedures."

As for Spector: in response to questioning about the Detectives' threats to violate witness

Kendell Thompson's probation if he did not cooperate, which was supported by Thompson's

10

own deposition testimony, Spector testified that he found Thompson's testimony implausible. Dkt. 236-6 at 190 ("[Y]ou know, and that goes to the, you know, *implausibility that this actually happened*." (emphasis added)).  He said the same with respect to Marcus Pearson.  According to Spector, Pearson's testimony that the Detectives threatened to violate his probation and take away his children "in the context of this case or any case would *simply not be plausible*."  *Id.* at 202 (emphasis added). Spector, however, does not apply this same skepticism to police witnesses: he finds police officers to be credible.  He "believe[s] police officers because . . . they are trained to tell the truth."  *Id.* at 206.  "These sorts of comments consist simply of inferences that," at most, an expert "draws from other evidence in the case," and therefore supplants "the role of the jury in interpreting the evidence."  *Highland*, 379 F. Supp. 2d at 470 (cleaned up). Spector's "opinion" also contradicts the standard jury instruction that police officer testimony is not to be believed or given extra (or less) weight simply because they are police officers.

Relatedly, Spector has also opined regarding Mr. Horn's state of mind and argues that it demonstrates that Mr. Horn is guilty.  For example, he asserts that when Mr. Horn called his alibi witness the morning after the Dixwell Deli homicide, this somehow constituted "evidence of consciousness of guilt."  Ex. B at 13.  "Such a leap is the essence of unverifiable subjectivity, amounting to the sort of *ipse dixit* connection between methodology and conclusion that the district court has the duty to exclude under Rule 702."  *Nimely*, 414 F.3d at 399.  It is also unduly prejudicial under Rule 403 because Spector's poorly-informed, unsupported, and baseless opinions regarding Mr. Horn's motives lack any probative value, while the risk that such testimony will unfairly prejudice Mr. Horn is high.

### III.    STINE AND SPECTOR SHOULD BE PRECLUDED FROM OFFERING THEIR OPINIONS ON THE ULTIMATE LEGAL ISSUES IN THIS CASE

Stine's and Spector's opinions regarding the ultimate legal issues in this case, which the jury will be asked to determine, must also be excluded.

It is well established that an expert witness may not testify regarding legal conclusions. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."). Experts cannot get around this prohibition by framing their testimony regarding ultimate legal issues as opinions regarding best practices or industry standards. *See United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) ("Testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice.").

Stine was retained by the City to defend it from Plaintiff's *Monell* claim, arising from the City's unconstitutional customs, policies, and practices regarding NHPD officers' handling of *Brady* material and fabrication of evidence. Plaintiff can prove his *Monell* claim by demonstrating that the City had "a practice so consistent and widespread that . . . constitutes a custom or usage of which a supervising policy-maker must have been aware" or "a failure by policymakers to provide adequate training or supervision." *Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (cleaned up). To prove the failure-to-train theory, Plaintiff intends to put forth evidence that "city policymakers [were] on actual or constructive notice that a particular omission in their training program causes [NHPD officers] to violate citizens' constitutional rights," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), by pointing to past cases

where NHPD officers suppressed exculpatory evidence.[3]  Stine offers legal conclusions regarding these very ultimate issues.  At trial, Stine intends to share his conclusion that these past cases involving the NHPD are "not [] indicative of a lack of proper policies and training," and thus insufficient to put the City on notice for purposes of Plaintiff's *Monell* claim.  Ex. A at 24. This testimony tracks a central element of Plaintiff's *Monell* claim and would "tell the jury what result to reach, . . . substitut[ing] the expert's judgment for the jury's."  *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).  The jury—not the City's expert—must decide this issue.

Spector also offers legal conclusions regarding several ultimate issues that the jury will be asked to decide with respect to Plaintiff's Section 1983 claims against the individual Detectives.  For example, Spector opines that the Detectives "*did not fabricate* Pearson's statement that he received the [stolen cell] phone from Horn and that Pearson called Sykes."  Ex. B at 18 (emphasis added); *see* Dkt. 236-6 at 280 (Spector: "They did not fabricate the story about how Pearson may have gotten the stolen cell phone or whether or not he actually had the stolen cell phone.").  How on earth does Spector know that?  This is a key factual issue for the *jury* to decide.  Similarly, Spector opines that "[t]here was *no evidence* that any material exculpatory evidence was withheld by Defendants."  Ex. B at 16 (emphasis added).  Again, Spector has no expertise and no basis to make such a factual claim.  This is the central issue for the jury to decide regarding Plaintiff's *Brady* claims.  Spector should not be allowed to tell the jury how he would answer questions that will be on the jury's verdict form.

---

[3] *See, e.g.*, *Buari v. City of New York*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021) ("Recurring civil rights complaints can put a municipality on notice of deficiencies in its training program."); *Poventud v. City of New York*, No. 07 CIV. 3998 DAB, 2015 WL 1062186, at *13 (S.D.N.Y. Mar. 9, 2015) (in support of *Monell* claim related to New York City's alleged policy of failing to disclose exculpatory evidence, plaintiff met his burden when he cited to eight state criminal court decisions preceding plaintiff's conviction "involv[ing] police officers destroying or failing to disclose potentially exculpatory material").

For the foregoing reasons, the Court should exclude all testimony by Defendants' police practices experts, Elliot Spector and Joseph Stine, that presents fact narratives or resolves disputed facts, opines on the credibility and state of mind of witnesses, and/or states legal conclusions regarding the ultimate issues to be tried.

3. **MOTION TO PERMIT THE PARTIES TO MAKE OPENING STATEMENTS AT TRIAL**

The story of Plaintiff Vernon Horn's wrongful conviction spans decades and is complex. Mr. Horn was arrested in 1999, faced trial and was wrongfully convicted in 2000, and then spent 17 years in prison for a murder he did not commit. This grave miscarriage of justice was the result of widespread police misconduct that infected the Defendant Detectives' investigation of the 1999 Dixwell Deli robbery-homicide, including witness coercion, fabrication of evidence, and suppression and destruction of exculpatory evidence—all consistent with the City of New Haven's longstanding policies and practices. To explain this story to the Court, the parties submitted hundreds of pages of summary judgment briefing, thousands of pages of exhibits, and testimony from over two dozen depositions. The prior district judge held oral argument on the summary judgment that lasted almost a full day, then took over two years to resolve the motions. In short, this is far from a garden-variety Section 1983 case.

Nevertheless, Plaintiff's goal is to present this case to the jury as efficiently as possible. Plaintiff is hopeful that the upcoming trial will take less than the four weeks the Court has allotted. To that end, and in light of the volume of testimony and evidence the jury will be asked to weigh, Plaintiff respectfully requests that the Court allow the parties to make opening statements of up to one hour per side, which will advance efficiency by providing the jury a much-needed roadmap for this multiweek trial. In short, up to one hour for plaintiffs and up to one hour for defendants.

14

The Court has broad discretion over trial management matters, including the allotment of time for opening statements and the presentation of evidence. *See United States v. Quattrone*, 411 F.3d 153, 183 (2d Cir. 2006) ("The trial-management authority entrusted to district courts includes the discretion to place reasonable limits on the presentation of evidence." (cleaned up)). However,

> [t]here is no doubt about the importance of opening statements in providing the jury with a roadmap to the often confusing presentation of evidence that is characteristic of the Anglo-American trial—some witnesses testify only to links in an elaborate chain the end of which is not visible from their testimony, witnesses are often called out of order to accommodate their schedules, and the smooth development of each side's case is interrupted by cross-examination.

*Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 892 (7th Cir. 1995).

This is precisely the type of case where opening statements will help orient the jury by introducing the various themes they will hear about and categories of witnesses who will testify. For example, the jury will be asked to decide both Section 1983 claims against the individual Detectives (for fabricating evidence and suppressing *Brady* material) and *Monell* claims against the City regarding its unconstitutional policies and practices. Some witnesses, such as Defendant Det. Breland, will be examined about all of the above, including: (1) his coercion of key witnesses and fabrication of their inculpatory witness statements; (2) his suppression of exculpatory information and evidence regarding the same; (3) the other Detectives' actions and misconduct during the investigation; and (4) broader practices of the New Haven Police Department ("NHPD") that go to Plaintiff's *Monell* claims. Other witnesses will only be called to testify about other cases from the 1980s and 1990s involving similar NHPD misconduct— testimony that relevant to the issue of whether the City was on notice of its unconstitutional police practices, but which, without sufficient context, will seem out of place in this case that is, at its core, about constitutional violations that occurred in a single homicide investigation in

1999. Finally, a subset of witnesses will only be called to testify about the underlying crime itself and what actually happened the night of the murder. Opening statements will help the jury better understand how these pieces fit together when they are later revealed at trial.

Relatedly, opening statements will help the jury make sense of testimony that will not come in through live witnesses or necessarily be presented in chronological order. This case is about misconduct during a 1999 murder investigation and longstanding NHPD policies and practices that were, as of 1999, already in place for decades. Unsurprisingly, many witnesses are now deceased, no longer competent to testify, or are beyond the Court's jurisdiction, and will therefore testify only by designation. Such testimony can be confusing for jurors and is typically less fluid than live testimony. The parties' opening statements will help the jury transition from one form of testimony to another.

Finally, Plaintiff respectfully requests that each *side* in this consolidated case—Plaintiffs Vernon Horn and Marquis Jackson on one side and all Defendants on the other—should receive an equal amount of time for opening statements. Plaintiff has the burden here and expects to put in the majority of the evidence in this case. Defendants should not be collectively afforded more time for their opening statements simply because there are more Defendants in this case than Plaintiffs.

For these reasons, Plaintiff respectfully requests that the Court permit the parties to make opening statements at trial of up to one hour per side, which, in total, will take approximately two hours of the four weeks allotted for trial.

4.  **MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE CONNECTICUT CLAIMS COMMISSIONER'S MONETARY AWARDS OR REFERENCE TO THE CLAIMS COMMISSION PROCEEDING**

In 2024, the Connecticut Claims Commissioner awarded Plaintiffs compensation for their wrongful incarceration pursuant to General Statute § 54-102uu.  All evidence or reference to the Claims Commissioner's awards or the Claims Commission proceeding should be excluded at trial in this case.

First, any evidence or reference to the Claims Commissioner's awards is irrelevant to Plaintiffs' claims in the instant federal case and will instead unduly prejudice both parties and cause juror confusion.  *See* Fed. R. Evid. 401, 402, 403, 408; *see also Birch v. Town of New Milford*, No. 3:20-CV-01790 (VAB), 2025 WL 289205, at \*14 (D. Conn. Jan. 24, 2025) (granting motion to exclude evidence of prior settlement on the basis of confusion and prejudice); *Densberger v. United Techs. Corp.*, 125 F. Supp. 2d 585, 600 n.11 (D. Conn. 2000) (granting unopposed motion in limine to exclude evidence of prior settlement with alleged joint tortfeasor). For example, evidence or reference to the Claims Commissioner's award may prejudice the Plaintiffs by resulting in the jury's unjustified "discount" of Plaintiffs' damages in light of the prior monetary awards.  Similarly, evidence of the Claims Commissioner's award may prejudice Defendants by creating an assumption that the State of Connecticut has conceded that Defendants engaged in misconduct.  Evidence regarding the Claims Commissioner's prior awards will also cause unnecessary juror confusion and speculation about the evidence presented in the Claims proceeding, the differences between the Claims Commissioner's proceeding and the federal case, and the amount of money awarded by the Claims Commissioner's and its impact on the damages available in this case.

Finally, with respect to Plaintiffs' state law claims, the Claims Commissioner's award—which required a release of any claims against the State and its employees, *see* Conn. Gen. Stat. § 54-102uu(g)—must be kept from the jury by statute. *See* Conn. Gen. Stat. § 52-216a ("[A] release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury."); *Civiello v. Owens-Corning Fiberglass Corp.*, *Reinforced Cement Prods. Div.*, 208 Conn. 82, 544 A.2d 158 (1988) ("The enactment of § 52–216a, which bars evidence of such payments in a jury trial, was intended to ensure that jury verdicts would not be influenced by the knowledge of a partial settlement.").

Nor is the fact that there was a Claims Commission proceeding relevant. Reference to the proceeding would only invite the jury to speculate as to the result of the proceeding, which is not relevant here. To the extent it is necessary to impeach a witness with or cite testimony from that proceeding, Plaintiffs request that the proceeding be referred to as a "prior proceeding."

In sum, the Court should preclude any evidence or reference to the Claims Commissioner's prior monetary awards or the Claims Commission proceeding.

18

**5. MOTION FOR COLLATERAL ESTOPPEL AS TO THE CITY OF NEW HAVEN'S PRACTICE AND CUSTOM OF SUPPRESSING EVIDENCE FAVORABLE TO CRIMINAL DEFENDANTS**

As this Court is aware, the City of New Haven is currently embroiled in numerous cases stemming from the rampant civil rights violations and wrongful convictions of several young men in the 1990s. In addition to the unlawful conduct by various individual detectives in the New Haven Police Department, at issue in all of these cases is the City's maintenance of a policy, practice, or custom of unconstitutional police practices. Specifically, Plaintiffs Horn and Jackson allege that the City had decades-long practices of (i) suppressing exculpatory evidence, and (ii) fabricating evidence by coercing witnesses, *inter alia*, during unrecorded "pre-interviews."

Only two months ago, in *Morant v. City of New Haven*, 3:22-CV-630 (SVN), a similar federal civil rights case against the City of New Haven stemming from the wrongful conviction of Stefon Morant, the jury returned a verdict finding, *inter alia,* that the City of New Haven had a widespread practice or custom of suppressing evidence favorable to criminal defendants. *See* Ex. C (Verdict Sheet). In light of this jury verdict, the City is estopped from relitigating in this case its *Monell* liability as to this unconstitutional practice or custom of suppressing *Brady* material.

ARGUMENT

**I. Applicable Legal Standard**

The doctrine of offensive collateral estoppel allows a plaintiff to "preclude a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff." *Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 37 (2d Cir. 2005). Collateral estoppel "saves parties and the courts from the waste and burden of relitigating stale issues, and, by discouraging inconsistent results, forwards public policy favoring the establishment of certainty

19

in legal relations." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) (citation omitted); *see also Envtl. Def. v. EPA*, 369 F.3d 193, 202 (2d Cir. 2004) ("The doctrine serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980))).

To invoke the doctrine of offensive collateral estoppel, a plaintiff must establish: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79 (2d Cir. 2019).

In addition to these four factors, "a court must also satisfy itself that application of offensive collateral estoppel is fair." *Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2019 WL 2137459, at *1 (D. Conn. May 15, 2019) (quoting *Flood v. Just Energy Mktg. Corp.,* 904 F.3d 219, 236 (2d Cir. 2018)). In determining fairness, courts may consider several factors, including:

> (1) whether the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant; (2) whether there are different procedural opportunities available in the second action; (3) whether the defendant had a reduced incentive to raise the issue in the earlier action; (4) whether the earlier action was tried before a jury or a judge; (5) the relative scope or complexity of the two actions and whether they involve different causes of action; and (6) whether applying collateral estoppel will increase the efficiency of the proceedings.

*Preston v. City of Rochester*, No. 6:22-CV-06525 (CDH), 2026 WL 890399, at *1 (W.D.N.Y. Apr. 1, 2026) (citing *Bifolck*, 936 F.3d at 84). The court is generally afforded wide discretion in determining whether or not collateral estoppel should apply. *Bifolck*, 936 F.3d at 80 (citing *Parklane Hosiery Inc. v. Shore*, 439 U.S. 322, 331 (1979)).

II.    **The City is Collaterally Estopped with Respect to its Practice or Custom of Suppressing Evidence Favorable to Criminal Defendants**

Following a heavily-litigated, three-week trial in *Morant*, the jury returned a verdict finding, *inter alia*, that the City of New Haven had a "widespread practice or custom of suppressing evidence that was favorable to criminal defendants," *i.e.*, *Brady* material. *See* Ex. C. The jury concluded that Mr. Morant had proven by a preponderance of the evidence that the City of New Haven's suppression of Brady material was the "moving force" behind the constitutional violations committed against him. *Id.* In light of this jury verdict, the City of New Haven is collaterally estopped from arguing in this case that it did not have a practice or custom of suppressing evidence favorable to criminal defendants, including as to Mr. Horn and Mr. Jackson.

A.  **The Issue Decided in *Morant* is Identical to the Issue in This Case**

The first requirement for the application of offensive collateral estoppel is that the issues in both proceedings be substantially the same. *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013). This condition "is concerned not with claims or causes of action as a whole but with issues—single, certain and material points arising out of the allegations and contentions of the parties." *Bifolck*, 936 F.3d at 81 (quotation, alterations, and internal citation omitted). "To meet the identity-of-issues prong of collateral estoppel, it is not necessary that the issues be exactly identical; it is sufficient that 'the issues presented in the earlier litigation are substantially the same as those presented by the later action.'" *Zherka v. City of New York*, 459 F. App'x 10, 13 (2d Cir. 2012) (alterations omitted) (quoting *ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir. 1992)).

The issue presented to the jury in *Morant*—whether the City of New Haven had a widespread practice or custom of suppressing evidence favorable to criminal defendants from

21

1991 to 1994—is identical to one of Plaintiffs' *Monell* claims presented in this case.  In *Morant,* the plaintiff alleged, *inter alia,* that detectives failed to disclose the coercive tactics used to elicit false statements from key witnesses as well as those witnesses' exculpatory statements denying any information about the murders or Mr. Morant's involvement.  *See* 3:22-cv-640, Am. Compl., ECF No. 33 ¶¶ 48-76; 167-173.

Here too, just as in *Morant,* Plaintiffs Horn and Jackson have alleged that, as of the time of their arrests in 1999, the City of New Haven had a practice or custom of failing to disclose the coercive tactics used to elicit false statements from witnesses as well as those witnesses' exculpatory statements.  Consistent with this practice, the City of New Haven, including Detectives Brease and Adger, suppressed exculpatory statements by key witnesses such as Mr. Pearson and Mr. Thompson, evidence of the Detectives' coercion of those key witnesses, and exculpatory phone records that Detective Adger stored in her basement.  Given the jury's verdict on the identical (and at minimum, substantially the same) issue in *Morant*, the City is estopped from arguing that it did not maintain this practice or custom of suppressing evidence favorable to defendants.  *See e.g.*, *Preston v. City of Rochester*, No. 6:22-CV-06525 CDH, 2026 WL 890399, at *1 (W.D.N.Y. Apr. 1, 2026) (holding that City of Rochester was estopped from relitigating its *Monell* liability regarding its custom, policy, and practice of unlawful seizures of pet dogs based on a jury's verdict on the same issue in a prior case); *Benjamin v. Coughlin*, 905 F.2d 571, 575-76 (2d Cir. 1990) (holding that a state department of corrections was precluded from relitigating the validity of a directive that was found invalid in a prior § 1983 action, despite the state's argument that the prior decision only addressed directive's applicability to a different group of individuals, where the state asserted the same interests in defense of the directive); *DeCastro v. City of New York*, 278 F. Supp. 3d 753, 765 (S.D.N.Y. 2017) (holding that, based on summary

22

judgment decision in a prior case, the City of New York was estopped from relitigating that its policy or practice of seizing certain vehicles suspected of being operated for hire without proper licensing violates the Fourth Amendment).

Nor does the slight difference in timeframe between the City's unconstitutional practice of suppressing favorable evidence litigated in *Morant* and the timeframe in this case preclude the application of collateral estoppel. *Preston*, 2026 WL 890399, at *3. In *Preston,* the plaintiff alleged that, in 2020, the City of Rochester had an unconstitutional practice of unlawfully seizing and killing pet dogs. In an earlier similar case, *Dempsey, et ano. v. City of Rochester, et al.*, No. 6:19-cv-06780-MJP, plaintiffs prevailed on their identical *Monell* claim against the City, stemming from the unlawful seizure and killing of their own dog two years earlier in 2018. In light of the prior ruling in *Dempsey*, the court in *Preston* held that the City was estopped from relitigating its *Monell* liability regarding the unconstitutional seizure of plaintiff's dog, notwithstanding that the two dog killings occurred almost two years apart. *Preston*, 2026 WL 890399 at *2-3, 7. The *Preston* court reasoned that there was no evidence in the record "from which a jury could conclude that the City's custom, policy, or practice regarding dog seizures had changed in the months between the *Dempsey* shooting and the shooting [in *Preston*]." *Id.* at *3. Here too, there is no evidence that the City of New Haven's practice and custom of suppressing evidence favorable to criminal defendants changed in any way from 1994, when this practice was committed against Mr. Morant, to 1999, when it was wielded against Mr. Horn and Mr. Jackson. For example, Defendants Dease and Adger were both detectives in the New Haven Police Department throughout this entire time period and testified that department practices remained unchanged. *See*, *e.g.*, Ex. D (Breland Deposition) at 45-46 (same practice for 16 years of *un*recorded "pre-interviews" for him and "every other detective you knew there"); *id.* at 60-65

23

(for 16 years, put exculpatory information in notebooks but never turned any notes over to any prosecutor in his career and unaware of any NHPD training to do so); *id.* at 72 (NHPD left it to the "discretion" of individual detectives whether to destroy their notes).

Accordingly, the City is estopped from relitigating its *Monell* liability on this issue. *Preston*, 2026 WL 890399, at *3; *see also Kluppelberg v. Burge*, 276 F. Supp. 3d 773, 778 n.6 (N.D. Ill. 2017) (rejecting argument that collateral estoppel should not apply due to timeframe differences because there was no suggestion that "the City's policies or practices were different from 1999 to 2006 than they were from 1983 to 1989 . . . Nor has the City argued that the policy or practice changed between when [the plaintiff in the earlier action] was convicted and when [the plaintiff in the second action] went to trial.").

## B.  The Issue Was Litigated and Decided in the *Morant* Case

The second condition for the application of offensive collateral estoppel is that the issue must have been litigated and decided in the prior proceeding.  *Bifolck*, 936 F.3d at 79.  In determining whether this condition has been satisfied, the court may conduct "a detailed examination of the record in the prior . . . case, including the pleadings, the evidence submitted and the jury instructions."  *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Here, there is no dispute that the issue of whether the City of New Haven had a "widespread practice and custom of suppressing evidence that was favorable to criminal defendants" was litigated and decided in *Morant.*  As evidenced by the verdict form, the issue was clearly presented and decided by the jury.  *See* Ex. C.  Accordingly, this element is satisfied. *See Preston,* 2026 WL 890399, at *3.

24

### C. The City Had a Full and Fair Opportunity to Litigate the Issue

Finally, collateral estoppel is warranted because the City had a full and fair opportunity to litigate this issue in the *Morant* trial and the issue was necessary to support a valid and final judgment on the merits. The City's *Monell* liability was litigated in extensive briefing over the course of the *Morant* case, culminating in a three-week jury trial that included over a dozen witnesses. The very same defense counsel who defended the City of New Haven in *Morant* defend the City of New Haven here. Following this full and fair presentation of evidence, the jury indisputably returned a verdict against the City, finding that it maintained a policy or custom of unlawfully suppressing evidence favorable to criminal defendants.

### D. Application of Collateral Estoppel is Fair

Application of offensive collateral estoppel is plainly fair. As in *Preston*, (i) the City of New Haven had an "equally compelling incentive to litigate the custom, policy, or practice issue" in *Morant* as it has in this case; (ii) the *Morant* case was tried to a jury, not a judge; (iii) there are no procedural opportunities available in this case that were unavailable in *Morant*; and (iv) this action is not "sufficiently different in scope or complexity to make application of offensive collateral estoppel unfair." *Preston,* 2026 WL 890399, at *7. Finally, applying collateral estoppel will promote judicial efficiency, as it will streamline the trial in this matter by reducing the number of witnesses Plaintiffs will need to present in support of their *Monell* claims or, at a minimum, shortening their testimony. *See id.*

For the foregoing reasons, the City of New Haven should be estopped from relitigating its *Monell* liability as to the practice and custom of suppressing evidence favorable to criminal defendants.

6.  **MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT RELATED TO TRIAL COUNSEL'S ALLEGED INEFECTIVE ASSISTANCE OR FAILURE TO INVESTIGATE**

Defendants should be precluded from presenting any evidence to support an argument that Mr. Horn's damages flow not from Defendants coercing confessions, fabricating evidence, and suppressing *Brady* material—but rather from Mr. Horn's April 2000 trial counsel's ("Trial Counsel") alleged ineffectiveness or failure to fully investigate his case. *See* Fed. R. Evid. 401, 403.

"Courts in this circuit have routinely rejected similar arguments." *Galloway v. Cnty. of Nassau*, 19-cv-5026 (AMD) (JMW), 2024 WL 1345634, at *16 (E.D.N.Y. Mar. 29, 2024) (rejecting an argument that criminal trial counsel's strategic decision could be "an intervening cause that absolve[d] defendants of liability" for an unduly suggestive identification procedure). Evidence and argument regarding Trial Counsel's actions (or inaction) is irrelevant to the factual question the jury will be tasked with answering in this case. This is because "[w]here a police officer deceives subsequent decision makers with false information, the chain of causation need not be considered broken because the officer can reasonably foresee that his misconduct will contribute to the subsequent decisions that result in a deprivation of liberty." *Shabazz v. Kailer*, 201 F. Supp. 386, 397 (S.D.N.Y. 2016); *see also Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty."). Judge Amon in the Eastern District of New York has noted that she "is not aware of any decision in this Circuit . . . in which an independent decision by a defendant or defense counsel . . . was held to be a superseding cause of a defendant's conviction, shielding an officer from an otherwise viable fabrication of

evidence claim." *Hamilton v. City of New York*, 15-CV-4574 (CBA) (SJB), 2019 WL 1452013, at *17 (E.D.N.Y. Mar. 19, 2019). This makes sense, as a police officer cannot be absolved of liability for his bad acts because criminal defense counsel failed to subsequently uncover those bad acts.

The factual determination the jury will be asked to make at this trial is whether Defendants' actions in fabricating and suppressing evidence led to Mr. Horn's conviction. Trial Counsel's strategic decisions in defending Mr. Horn are irrelevant to this determination, as they do not have "any tendency" to make it "more or less probable" that Defendants fabricated and suppressed evidence to obtain his convictions. Fed. R. Evid. 401.

The evidence that Defendants should be precluded from introducing includes, but is not limited to, Trial Counsel's alleged failure to further investigate and obtain the same 137 pages of phone records found in Defendant Adger's basement in 2018. Defendants argued in their summary judgment papers, *inter alia*, that Trial Counsel "could have issued subpoenas, requests, or used other investigative techniques to obtain the same records Adger obtained, but they did not." Def. MOL I-S-O Summary Judgment, Dkt. No. 221-3 at 37. This assertion regarding Trial Counsel's conduct has no relevance to the issue of whether Defendants' actions were a proximate cause of Plaintiffs' convictions, as "[Defendants] could reasonably foresee that their [suppression of the phone records] would contribute to" Trial Counsel's failure to obtain the very same records. *Hamilton*, 2019 WL 1452013, at *17.

To the extent that evidence of Trial Counsel's alleged ineffectiveness or failure to investigate is relevant (it is not), "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [and] undue delay." Fed. R. Evid. 403. Introduction of such argument and evidence "would invite a 'trial within a trial'" as to Trial

Counsel's conduct, and "risk confusing the jury as to its finite mission" of determining

Defendants' liability to Mr. Horn for the fabrication and suppression of evidence that led to his

unlawful conviction and imprisonment. *Doe v. Lima*, 14-cv-2953 (PAE), 2020 WL 728813, at *6

(S.D.N.Y. Feb. 13, 2020).

For the foregoing reasons, all evidence or arguments related to Trial Counsel's alleged

ineffectiveness or failure to investigate must be excluded under Rules 401 and 403.

7. **MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO PAST LITIGATION ADVANCES OR LOANS RECEIVED AND REPAID BY PLAINTFF**

As is the case with many people released from prison after long periods of unlawful

incarceration, Mr. Horn received cash advances against future litigation proceeds from third

parties in order to meet the needs of reestablishing his life. Though these advances were not

technically loans, they were essentially structured as non-recourse loans against the proceeds of

his civil claims. Mr. Horn has already repaid these loans in full with the proceeds from the award

from the Connecticut Claims Commissioner. The Court should preclude any reference to any

past advances to Plaintiff under Federal Rules of Evidence 401 and 403.

That Mr. Horn received litigation advances from third parties is "irrelevant and

potentially prejudicial since those advances have already been repaid." *Birch v. Town of New

Milford*, No. 3:20-cv-01790 (VAB), 2025 WL 289205, at *14 (D. Conn. Jan. 24, 2025) (granting

plaintiff's motion to exclude any reference to past litigation advances). Mr. Horn's litigation

advances have no bearing on any material question the jury will be asked to decide in this case.

All any reference to them would serve to accomplish would be to unfairly prejudice the jury into

artificially reducing his damages. *See, e.g.*, 4/21/2026 Minute Entry for Proceedings held before

Judge Janet C. Hall, *Carmon v. City of New Haven*, 23-cv-944 (JCH), ECF Dkt. No. 331

(granting "Motion in Limine to Preclude Reference to Litigation Advances"); *MGI Digital Tech.*

*S.A. v. Duplo U.S.A. Corp.*, No. 22-cv-979 (DOC) (KES), 2024 WL 655481, at *8 (C.D. Cal. Jan. 26, 2024) (granting motion to "exclude any evidence of litigation funding or fee agreements as being irrelevant and unfairly prejudicial"); *Bancor Grp. Inc. v. Rodriguez*, No. 22-cv-20201 (EGT), 2023 WL 6310233, at *13 (S.D. Fla. June 13, 2023) (excluding as mostly irrelevant any reference to the source of the litigation's funding); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-cv-201 (JRG), 2017 WL 2773944, at *1 (E.D. Tex. May 26, 2017) (excluding "references, argument, or evidence regarding litigation funding documents"); *cf. Gordon v. Great West Cas. Co.*, No. 2:18-cv-967 (JDC), 2020 WL 4561223, at *2-3 (W.D. La. July 8, 2020) (excluding evidence of third-party payment of plaintiff's medical bills as their "relevance is greatly outweighed by the evidence's tendency to confuse, mislead, or unfairly prejudice the jury").

The only relevance that litigation advances could possibly have would be "to challenge the credibility of a potentially biased witness." *Bancor*, 2023 WL 6310233, at *13. However, these litigation advances have no bearing on Mr. Horn's credibility as they do not affect his desire to win the case. Mr. Horn has fully repaid the advances *and* the advances were non-recourse, meaning that if even if he had not repaid them, if he did not receive any monies from this lawsuit, he would not owe the third-party lender anything. Thus, the prior, paid-off litigation advances to Mr. Horn never provided any financial incentive for him to prevail at trial and certainly provide none now.

Any reference to third-party funding has no probative value and will only serve to confuse or prejudice the jury. The Court should preclude it.

### 8. MOTION IN LIMINE TO EXCLUDE REFERENCE TO LEROY DEASE'S 2018 STROKE AND HIS SUBSEQUENT COGNITIVE DECLINE

This Court should preclude Defendants from making any reference to Defendant Detective Leroy Dease's 2018 stroke and his subsequent memory loss, impaired cognitive functioning, difficulty expressing thoughts, and impaired executive and emotional functioning as irrelevant and prejudicial under Federal Rules of Evidence 401 and 403.

In November of 2018, Leroy Dease suffered a stroke in the left frontal parietal lobe and right corpus striatum. *See* Stipulation Regarding Testimony of Defendant Leroy Dease, Dkt. No. 149. After this stroke, and prior to his death on December 2, 2022, Mr. Dease experienced memory loss, impaired cognitive functioning, difficulty expressing his thoughts, and impaired executive and emotional functioning. *Id.* As a result, Detective Dease was never deposed or questioned in this civil case.

"Evidence is relevant when 'it has any tendency to make a [material] fact more or less probable than it would been without the evidence.'" United States v. White, 692 F.3d 235, 246 (2d Cir. 2012), as amended (Sept. 28, 2012) (quoting Fed. R. Evid. 401) (footnote omitted). In this case, the jury will be asked to consider whether New Haven police officers, including Mr. Dease, coerced witnesses, fabricated evidence, and suppressed *Brady* material to secure the unlawful conviction of Mr. Horn. The officers committed these unlawful acts almost two decades before Mr. Dease suffered his stroke, and his stroke and subsequent condition have no bearing on the factual questions the jury will be asked to decide.

The only reason to introduce evidence of Mr. Dease's stroke and his subsequent cognitive and emotional impairment would be to evince sympathy from the jury. This would be improper, as "[e]vidence that has a high likelihood of inappropriately eliciting sympathy from the jury on a matter having no bearing on the merits is properly excludable." *United States v. Levin*, No. 15-cr-

101 (KBF), 2016 WL 299031, at *6 (S.D.N.Y. Jan. 25, 2016). Introducing evidence of Mr. Dease's stroke and its after-effects would thus violate Federal Rule of Evidence 403, as the evidence's probative value (none) would be "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *See United States v. Smith*, 806 F. Supp. 3d 382, 411 (S.D.N.Y. 2025) (excluding irrelevant evidence of defendant's autism under 401 and 403 as it had "obvious potential to stoke sympathy," and thus "its capacity to confuse and unfairly prejudice the Government substantially outweigh[ed] its (nonexistent) probative value, requiring exclusion under Rule 403"); *cf. United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (holding that the district court did not abuse its discretion in excluding evidence that "could well cause the jury to be influenced by sympathies having no bearing on the merits of the case"); *United States v. King*, 21-cr-255 (NSR), 2023 WL 3949122, at *6 (S.D.N.Y. June 12, 2023) (precluding "evidence and testimony regarding Defendant's . . . potential health . . . as [it was] not relevant to the merits of the case and may prejudice the jury").

For the foregoing reasons, this Court should preclude any reference to Defendant Dease's 2018 stroke and his subsequent health issues.

9. **MOTION IN LIMINE TO PRECLUDE INADMISSIBLE CHARACTER AND PRIOR BAD ACTS EVIDENCE**

In this case, the jury will be asked to resolve factual questions about Defendants' investigation into the 1999 Dixwell Deli robbery and homicide which led to the prosecution and conviction of Vernon Horn. The jury will be presented with evidence that Defendants pressured witnesses, fabricated evidence, and suppressed *Brady* material in order to obtain Mr. Horn's conviction. Defendants are of course free to challenge the reliability of the evidence charging them with this misconduct. They are also free to present evidence of their own contesting the allegations against them.

31

Defendants are not free, however, to use evidence of prior arrests, convictions, bad acts, or character evidence to paint Mr. Horn as a bad man whose constitutional rights can be violated without remedy. This is not an abstract fear, as courts have recognized that "[p]resenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013); *see also Davis v. Velez*, 15 F. Supp. 3d 234, 254–53 (E.D.N.Y. 2014) (excluding evidence of plaintiff's prior convictions in a § 1983 case as they would be "highly prejudicial").

As Mr. Horn is unaware of the exact character evidence that Defendants may wish to introduce, some acts they may seek to introduce are addressed below. However, the following list is not exhaustive, and Defendants should be precluded from making any reference to prior bad acts of or character evidence pertaining to Mr. Horn.

### LEGAL STANDARD

"Generally, evidence of 'other crimes, wrongs, or acts' is not admissible under Rule 404(b) to prove criminal propensity." *Daniels v. Loizzo*, 986 F. Supp. 245, 248 (S.D.N.Y. 1997) (quoting *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993)). Such evidence "may be used 'for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,'" *Sims v. Blot*, 354 Fed. App'x 504, 506–07 (2d Cir. 2009) (summary order) (quoting Fed. R. Evid. 404(b)); however, the evidence is still subject to Rule 403 and only admissible when "the 'probative value of the evidence is not substantially outweighed by the risk of unfair prejudice,'" *United States v. Sterritt*, 678 F. Supp. 3d 317, 337 (E.D.N.Y. 2023) (alterations adopted) (quoting *United States v. Williams*, 205 F.3d

23, 33 (2d Cir. 2000)). A court must also ensure that prior bad act evidence is precluded when its purported permissible purpose "amount[s] to no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show [a party's] propensity to commit such acts." *Berkovich v. Hicks*, 922 F.3d 1018, 1022 (2d Cir. 1991).

Prior felony convictions can also be used to "attack[] a witness's character for truthfulness." Fed. R. Evid. 609(a). However, when "more than 10 years have passed since the witness's conviction or release from confinement," the conviction's "probative value, *supported by specific facts and circumstances*, [must] substantially outweigh[] its prejudicial effect." Fed. R. Evid. 609(b) (emphasis added). The proponent of the evidence must also give "reasonable written notice of the intent to use" the conviction. *Id.* The Second Circuit has "recognized that Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances." *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) (internal quotation marks omitted).

## ARGUMENT

### I.    Criminal Convictions

Aside from the wrongful conviction of Mr. Horn that is at the heart of this case, he has two 1999 convictions—for the possession and sale of narcotics—for which he was sentenced to a concurrent term of 30 months. Any reference to these convictions must be precluded under Rules 404(b) and 609(b).

#### a.    *Rule 404(b)*

Horn's 1999 narcotics convictions bear no relevance to the question of fact to be presented to the jury: whether Defendants fabricated evidence, coerced confessions, and suppressed *Brady* material to secure his conviction. Their only possible use would be to

generally paint Horn as an individual with a propensity for criminal activity, a patently impermissible purpose. *See Davis*, 15 F. Supp. 3d at 252–53 (excluding evidence of "ten-year-old" firearms convictions of plaintiff where there was a danger that the jury would infer that plaintiff possessed a firearm in the incident in dispute). Even if there were some proper purpose to admit evidence of Horn's criminal convictions (there is not), its probative value is substantially outweighed by the risk of unfair prejudice. *See United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009) ("[P]rior convictions should not be admitted unless the court has carefully conducted the Rule 403 balancing test[.]"). The prejudice in admitting these convictions cannot be overstated: it would only serve to paint Mr. Horn as a person who generally engaged in criminal activity around the time of the Dixwell Deli robbery and murder. Any reference to them must be precluded under Rule 404(b).

       b.   *Rule 609(b)*

      Horn's criminal convictions are more than two decades old and have no probative value in determining his character for truthfulness. To admit evidence of a criminal conviction more than ten years old, the Second Circuit "require[s] the district judge to make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice." *Jones v. New York City Health & Hospitals Corp.*, 102 Fed. App'x 223, 226 (2d Cir. 2004) (summary order) (internal quotation marks omitted).

      While "crimes that reflect adversely on a person's integrity . . . such as those involving deceit, fraud, and theft" may have some probative value as to a witness's truthfulness, *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005), the Second Circuit and courts within it have routinely held that "a narcotics conviction has little necessary bearing on the veracity of . . . a

34

witness," *United States v. Puco*, 435 F.2d 539, 543 (2d Cir. 1971); *see, e.g., Miller-Harris v. Cnty. of Onondaga*, 808 F. Supp. 3d 386, 408 (N.D.N.Y. 2025) ("[D]rug convictions—old or new—are ordinarily only minimally probative of veracity."); *Picciano v. McLoughlin*, No. 5:07-cv-781 (GTS) (GJD), 2010 WL 4366999, at *3 (N.D.N.Y. Oct. 28, 2010) ("Drug crimes are generally not crimes involving dishonesty or false statement."). Mr. Horn's prior convictions are narcotics related. Their probative value in determining his character for truthfulness (of which there is none) certainly does not substantially outweigh the danger of unfair prejudice, and they must be precluded under Rule 609(b).

## II.    Prior Arrests

This Court should exclude any evidence of or reference to any prior arrests of Mr. Horn (except of course the arrest that led to the wrongful conviction at the heart of this case). As an initial matter, "[p]rior arrests not resulting in conviction and lacking conduct that bears on a witness's character for truthfulness are inadmissible pursuant to Rule 608(b)." *United States v. Clanton*, 769 F. Supp. 3d 147, 156 (E.D.N.Y. 2004). The prior arrests of Mr. Horn are inadmissible for any purpose, as they bear no relevance to the case at hand. Courts routinely hold that prior arrests are irrelevant and inadmissible under Rule 402, unduly prejudicial under Rule 403, and impermissible other acts evidence under Rule 404(b). *See McLeod v. Llano*, 17-cv-6062 (ARR) (RLM), 2021 WL 1669732, at *6 (E.D.N.Y. Apr. 28, 2021) (excluding prior arrests under Rule 404(b) as "defendant has failed to identify a proper purpose of the evidence of plaintiff's previous arrests"); *Triolo v. Nassau Cnty.*, 16-cv-2085 (AKT), 2018 WL 6268845, at *1 (E.D.N.Y. Nov. 30, 2018) (same); *Stephen v. Hanley*, No. 03-cv-6226 (KAM) (LB), 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) (fining narcotics arrests and charges "irrelevant" under Rule 402 and unduly prejudicial under Rule 403).

35

The arrests of Mr. Horn that the Court should preclude reference to include, but are not limited to, his arrest as a juvenile for possession of a firearm, his arrest which led to the narcotics convictions discussed *supra*, and a narcotics and false ID arrest sometime between 2014 and 2016. None of these arrests is relevant to any issue the jury will be deciding in this case—and they could only be used to imply that Mr. Horn is a person generally who commits crimes—the exact use Rule 404(b) guards against. *See United States v. Pena*, 978 F. Supp. 2d 254, 261 (S.D.N.Y. 2013) (excluding evidence of prior arrests as it could risk "unfair conclusions regarding propensity" from the jury).

### III.   Narcotics Sales and Use

The Court should exclude as irrelevant and prejudicial evidence of or reference to narcotics use by Mr. Horn at any time in his life. At his deposition, Mr. Horn admitted that he sometimes has used narcotics—specifically that he smoked marijuana regularly, bought marijuana, and tried powder cocaine once or twice in the three months prior to the Dixwell Deli robbery and murder. Mr. Horn's prior narcotics use is irrelevant to any issue in this case and could only be introduced in the improper pursuit of smearing him as a drug user not deserving of compensation for his unlawful incarceration. *See Nibbs v. Goulart*, 822 F. Supp. 2d 339, 346 (S.D.N.Y. 2011) (finding that "a significant risk of prejudice accompanies the introduction of evidence related to or the discussion of [plaintiff's] marijuana use"). Nor is Mr. Horn's drug use relevant to his credibility, as "[t]he law is well established that the use of drugs may not be used to attack a witness's general credibility, but only his or her ability to perceive the underlying events and testify lucidly at trial." *Goss v. Sealift Inc.*, 19-cv-5123 (CLP), 2024 WL 670405, at *2 (E.D.N.Y. Jan. 17, 2024) (internal quotation marks omitted). There is no claim that Mr. Horn is unable to testify lucidly at trial due to past drug use.

The Court should also exclude as irrelevant and prejudicial any evidence of or reference to Mr. Horn's alleged history of selling narcotics. Aside from the facts underlying his convictions and arrests discussed *supra*, Defendants may seek to introduce evidence that Mr. Horn sold crack cocaine as a juvenile, that Mr. Horn and Marquis Jackson sometimes sold crack cocaine together in late 1998 or early 1999, that Mr. Horn sold narcotics in a neighborhood affiliated with "the Island Brothers," and that he sold crack cocaine when he was released from prison in or around 2014. This trial will not ask the jury to make any determinations about whether Mr. Horn sold small amounts of narcotics over his lifetime, and thus any reference to such acts has no relevance to a material issue in the case. On the other hand, "there are few subjects more potentially inflammatory than narcotics and . . . such evidence should usually be excluded in a non-narcotics trial." *United States v. Ong*, 541 F.2d 331, 339–40 (2d Cir. 1976). Introducing evidence that Mr. Horn allegedly sold crack cocaine is "particularly prejudicial . . . as 'the proffered evidence connects a party with a highly charged public issue.'" *United States v. Blackstone*, 56 F.3d 1143, 1146 (9th Cir. 1995) (quoting 1 *Weinstein's Evidence* § 403[3], pp 43–44; *see also Amica Mutual Ins. Co. v. Coan, Tr. for Williams*, No. 17-cv-1043 (VAB), 2020 WL 3396733, at *4 (D. Conn. June 19, 2020) ("[A]ny possible probative value of drug-related evidence is substantially outweighed by the risk of prejudice[.]"). Any reference to Mr. Horn's alleged drug sales would be nothing more than an attempt to paint him as a person who commits crimes, in violation of Rule 404(b), and would be completely irrelevant and highly prejudicial, such that it must be excluded.

## IV.    Horn's Previous Firearm Possession

In Mr. Horn's deposition, he was questioned about an approximately one-month period starting in November of 1998 where he possessed a non-functional TEC-9 firearm. He testified

to returning that non-functional firearm to the person who loaned it to him prior to the Dixwell Deli robbery and homicide, which occurred in late January of 1999. Nor has there ever been any evidence in this case that a TEC-9 was used in the murder (to the contrary, the prosecution suggested it was a Berretta). Any reference to this evidence must be excluded as it is irrelevant to the issue the jury must decide, is extremely prejudicial, and does not fall into any of the categories of permitted use under Rule 404(b).

"If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant." *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (quoting 2 *Weinstein's Evidence* § 401.04[2][a], pp 401–19). It is impossible that the TEC-9 was used in the murder-robbery, because: (1) there is no evidence a TEC-9 was used and the prosecution never suggested a TEC-9 was used in the crime; (2) the TEC-9 Mr. Horn briefly possessed was, according to his undisputed deposition testimony, non-functional; and (3) again according to Mr. Horn's undisputed testimony, he returned the gun to its owner long before the Dixwell Deli robbery. Mr. Horn's brief possession of a different gun in a different time period is of no consequence to the jury's determination as to whether Defendants coerced confessions, fabricated evidence, and suppressed *Brady* material.

Additionally, there is no permitted use of Mr. Horn's possession of a firearm under Rule 404(b)(2). *See* Fed. R. Evid. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). And to the extent that Mr. Horn's prior possession of a firearm may be probative of a permissible purpose under Rule 404(b)(2) (it is not), its probative value does not outweigh the potential prejudicial effect under Rule 403. *See United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) (noting that evidence admitted under Rule 404(b) must still be

38

"substantially more probative than prejudicial"). The danger of prejudice here is high. Firearms are a particularly inflammatory issue and there is a significant risk that a jury may infer that Mr. Horn's prior possession of a firearm deems him unworthy of a plaintiff's verdict—no matter what other evidence is presented. Additionally, any reference to Mr. Horn's prior possession of a non-functional firearm would only be used by a jury to make an "improper propensity determination—that [Mr. Horn] was the type of person who carried a firearm." *Maddox v. Francemone*, No. 5:19-cv-678 (BKS) (MJK), 2025 WL 1282575, at *3 (N.D.N.Y. May 2, 2025). The court in *Maddox* held that any probative value prior possession of a firearm had on a party's "ability to access firearms [was] substantially outweighed by the danger of unfair prejudice." *Id.* The same is true here, and the Court should preclude any reference to Mr. Horn's possession of a firearm in 1998.

## V.    Driving Without a License

In his deposition, Mr. Horn admitted that he has driven a vehicle without a valid driver's license. The Court should preclude Defendants from inquiring about this action on cross-examination as it is not "probative of the character for truthfulness or untruthfulness" of Mr. Horn. Fed. R. Evid. 608(b). *See United States v. Canton*, 769 F. Supp. 3d 147, 156 (E.D.N.Y. 2024) ("[D]riving without a license does not bear on [the witness's] character for truthfulness[.]"); *United States v. Bowen*, 511 F. Supp. 3d 441, 453 (S.D.N.Y. 2021) (finding that a conviction for driving on a suspended license does "not involve dishonest acts or false statements" and is therefore inadmissible under Rule 609(b)). Nor does Mr. Horn's driving without a license have any relevance to the case. The evidence should be precluded.

## VI.    Prior Litigation

Mr. Horn has brought other lawsuits aside from this one, including ones involving traffic accidents and prison conditions. These lawsuits have no relation to any issue before the jury in this case, and "courts have generally precluded evidence of prior lawsuits to show the plaintiff's litigiousness unless there was evidence that the prior lawsuits were fraudulently filed." *Scoma v. City of New York*, 16-cv-6693 (KAM) (SJB), 2021 WL 1784385, at *7 (E.D.N.Y. May 4, 2021). There is no evidence that Mr. Horn's prior suits were fraudulently filed,[4] and thus the only possible purpose of introducing evidence of these lawsuits would be to support an argument that he is particularly litigious. This is impermissible.

"Litigiousness is the sort of character trait with which Rule 404(b) is concerned." *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988). Because any reference to Mr. Horn's previous lawsuits "would potentially unfairly prejudice the jury against [Mr. Horn] by painting him as a litigious character who lacks validity," *Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993), any reference to them should be precluded under Rule 404(b). *See also Edwards v. City of New York*, 08-cv-2199 (TLM), 2011 WL 2748665, at *6 (E.D.N.Y. July 13, 2011) (holding that "any probative value of plaintiff's litigation history is outweighed by the prejudicial effect").

For the foregoing reasons, this Court should preclude Defendants from introducing or referencing any of Mr. Horn's prior bad acts, arrests, convictions, or lawsuits (including, but not limited to, those discussed *supra*) under Rules 404(b), 608(b), or 609(b).

---

[4] It is important to note that a plaintiff not prevailing in a prior lawsuit is not evidence that the suit was fraudulently filed. *See Scoma*, 2021 WL 1784385, at *7 (noting in excluding a prior lawsuit that even though a "court granted summary judgment" against the plaintiff in the prior suit, it "did not conclude that plaintiff's lawsuit was fraudulent").

## 10. MOTION TO PRECLUDE LEGAL CONCLUSIONS AND IMPERMISSIBLE CREDIBILITY TESTIMONY

Vernon Horn moves *in limine* for an order precluding any non-party lay witness—especially any current or former prosecutor or law enforcement officer—from testifying as to their opinions of the guilt or innocence of plaintiffs or the credibility of the Defendants or any other witnesses or evidence in this case. This includes but is not limited to any witness's testimony as to their opinion on Mr. Horn's guilt, the probable cause undergirding his arrest, and the credibility of other witnesses. Such testimony would constitute improper opinion evidence and thus would be impermissible under Federal Rule of Evidence 701, irrelevant, and far more prejudicial than probative and should be excluded under Rule 403.

Lay witness "opinions as to probable cause and complaining officers' credibility are irrelevant in virtually all cases involving malicious prosecution." *Cameron v. City of New York*, 598 F.3d 50, 65 (2d Cir. 2010). In *Cameron*, the Second Circuit reviewed a malicious prosecution and false arrest case. In it, there was testimony by prosecutors and law enforcement as to whether there was probable cause to arrest, the value of certain evidence in the underlying criminal case, and the credibility of the defendant police officers in the case. *Id.* at 57. The Circuit held that "[t]he admission of these statements violated bedrock principles of evidence law that prohibit witnesses (a) from vouching for other witnesses, (b) from testifying in the form of legal conclusions, and (c) from interpreting evidence that jurors can equally well analyze on their own." *Id.* at 54. This holding was in line with decades of Second Circuit precedent. *See, e.g.*, *id.* at 61–62 ("[I]t is typically improper for an investigating agent to 'communicate that he had skeptically and scrupulously checked out all the information furnished by the witnesses before accepting it.'" (quoting *United States v. Johnson*, 529 F.3d 493, 498 (2d Cir. 2008)

41

(modifications adopted)); *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (finding error when an expert witness "stated that he 'rejected' the possibility [witnesses] had lied").

In this case, it would be improper for Defendants to elicit testimony from the prosecutor in Mr. Horn's criminal trial—Gary Nicholson—or non-party law enforcement officers, as to whether there was probable cause to charge Mr. Horn, whether there was sufficient evidence to convict Horn, whether defense counsel was effective in their representation of Horn, and what constitutes impermissible suggestion. This testimony would all constitute impermissible legal conclusions and should be precluded as it invades the province of the Court and the jury by telling the jury what the law is—and then telling them how to apply the facts of this case to that law. *See Cameron*, 598 F.3d at 62 ("Such testimony undertakes to tell the jury what result to reach, and thus attempts to substitute the witness's judgment for the jury's." (internal quotation marks omitted) (alterations adopted)).

Witnesses must also be prohibited from offering any opinion to bolster the credibility of other witnesses, as this would invade the province of the jury. *See Nimely*, 414 F.3d at 398 (holding testimony "as to the tendencies of police officers to lie or to tell the truth in investigations" should be excluded as it "essentially instruct[s] the jury as to an ultimate determination that [is] exclusively within its province").

It is particularly important that any opinion as to Mr. Horn's guilt or innocence by witnesses without firsthand knowledge of the facts be excluded. The issue of Mr. Horn's guilt will of course be discussed at trial, and both sides will present evidence relevant to the question of his guilt. It is the jury's determination whether the presented evidence is credible—not a lay witness's who does not have firsthand knowledge of the facts of the case. This testimony would simply serve to usurp the jury's fact-finding role. It would both be impermissible opinion

42

testimony not "rationally based on the witness's perception," Fed. R. Evid. 701(a), as well as improper vouching and "opin[ing] on the credibility of witnesses." *Johnson*, 529 F.3d at 499).[5]

To the extent that any non-party witnesses' testimony regarding legal conclusions or witness credibility is otherwise admissible, it must be excluded as its "minimal probative value [would be] substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Allowing a former prosecutor or law enforcement officer—a person who the jury will assume is well versed in the law and criminal investigations—to offer legal conclusions or opine on the credibility of witnesses would be uniquely prejudicial. This testimony from police or prosecutors would carry the weight and authority of the state and risk the jury ceding their responsibility to make determinations that are solely theirs to make. *Cf. United States v. Jobin*, 327 F. Supp. 310, 315 (D. Vt. 2004) (holding that opinion testimony "coming from a law enforcement officer" as to the general behaviors of drug smugglers "strongly suggests to the jury that" the officer believed the defendant was guilty and was thus "very prejudicial" and excluded). As such, any such testimony must be independently excluded under Rule 403.

---

[5] To be clear, Mr. Horn does not seek to prevent witnesses from testifying as to their personal observations that may in turn bear on credibility. *See Cameron*, 598 F.3d at 62 (approving of a witness providing "personal observations of [a person's] behavior" but not of providing an "opinion of [that person's] credibility").

**CONCLUSION**

For the foregoing reasons, the Court should grant the motions set forth above.

Dated: July 10, 2026
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

/s/ Hannah Brudney
Ilann M. Maazel
Nick Bourland
Hannah Brudney

One Rockefeller Plaza, 8th Floor
New York, New York 10020
imaazel@ecbawm.com
nbourland@ecbawm.com
hbrudney@ecbawm.com
(212) 763-5000

*Attorneys for Plaintiff Vernon Horn*

44