**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| VERNON HORN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEW HAVEN; and ESTATE OF LEROY DEASE, PETISIA ADGER, DARYLE BRELAND, and JAMES STEPHENSON, in their individual capacities,<br><br>Defendants. | Case No.: 3:18-CV-1502 (KAD) |
| MARQUIS JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEW HAVEN; and ESTATE OF LEROY DEASE, PETISIA ADGER, DARYLE BRELAND, and JAMES STEPHENSON, in their individual capacities,<br><br>Defendants. | Case No.: 3:19-CV-388 (KAD) |

**DETECTIVE DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NUMBER 5 FOR COLLATERAL ESTOPPEL**

NOW COME Defendants, THE ESTATE OF LEROY DEASE, PETISIA ADGER, and DARYLE BRELAND (Detective Defendants) and for their Response to Plaintiffs' Motion *in Limine* No. 5, Doc. No. 420, ¶5 (Motion for Collateral Estoppel as to the City of New Haven's Practice and Custom of Suppressing Evidence Favorable to Criminal Defendants) state as follows:

## RELEVANT FACTS

This matter arises from the investigation into the January 24, 1999 robbery and homicide at the Dixwell Deli in New Haven, during which Caprice Hardy was murdered after three gunmen

entered the store and robbed it. (Doc. No. 232, Pl. Horn's L. Civ. R. 56(a)(2) Statement in Opp'n to Defs. at 1-8). During the robbery, one of the gunmen took a phone from a witness, Vernon Butler. *Id*. at 4 and 8. The Detective Defendants were assigned to investigate the offense.

Over the course of the investigation, Detective Defendants collected eyewitness accounts, conducted photo identifications, interviewed individuals connected to the incident, obtained phone records pursuant to voluntary disclosure as well as by search warrants, and recovered physical evidence linking a third participant to the crime scene. The investigation ultimately resulted in the arrest and prosecution of Vernon Horn and Marquis Jackson. The third participant, Steven Brown, was also arrested and convicted of the Caprice Hardy murder. The validity of Brown's conviction remains uncontested.

Plaintiffs allege that Detective Defendants' investigation was tainted by a succession of *Brady* violations, as well as the suppression and fabrication of evidence which rise to the level of constitutional violations. They claim entitlement to damages pursuant to 42 U.S.C. §1983 and under related common law causes of action.

Throughout the course of discovery, Plaintiffs have referenced various cases, investigations and criminal proceedings involving other officers working for the New Haven Police Department. Plaintiffs have identified these matters involving third parties in Plaintiff Horn's Statement of Facts in Opposition to Detectives' Motion for Summary Judgment found on the *Horn* case, Case No. 18-cv-1502, Doc. No. 232, at 45-53. Plaintiffs presumably will use these matters to prove their *Monell* case against the City of New Haven. These matters, other judicial determinations, and news media, will prejudice Detective Defendants.

Relevant to this motion, Plaintiffs seek to have collateral estoppel apply to a recent verdict, *Morant v. City of New Haven*, 22-CV-630 against the City of New Haven. While collateral estoppel

is not sought against Detective Defendants, a response is warranted given the potential spill over prejudice they may face.

Significantly, Detective Defendants were not parties to the *Morant* case. The only knowledge they possess of the *Morant* case is that which can be ascertained from pleadings on the *Morant* docket – pleadings that Detective Defendants can neither deny nor confirm.

Detective Defendants are further compelled to argue that such a finding of collateral estoppel and the introduction of *Morant* findings – determination made in a matter in which they were not parties - potentially implicates Federal Rules of Evidence 401, 402, and 403 as to them. A finding of collateral estoppel against the City could potentially impact Detective Defendants, who might then be framed as being in compliance with any alleged unconstitutional practice – which they adamantly deny. As such Plaintiffs' motion should be denied.

## ARGUMENT

### I. COLLATERAL ESTOPPEL IS AN EQUITABLE DOCTRINE CONSIDERATIONS OF FAIRNESS SHOULD COME INTO PLAY.

"Collateral estoppel is an equitable doctrine - not a matter of absolute right. Its invocation is influenced by considerations of fairness in the individual case." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004). The requirement of full and fair litigation ensures fairness, which Connecticut courts are clear is the "crowning consideration" in collateral estoppel cases. *Willard v. Travelers Ins. Co.*, 247 Conn. 331, 337 (1998).

For the reasons set forth below, Detective Defendants could potentially be prejudiced should collateral estoppel apply. Plaintiffs may be permitted to argue that Detective Defendants engaged in constitutional violations committed by other detectives in another very specific investigation, that took place years before their investigation.

## II. EVIDENCE OF THE *MORANT* CASE IS IRRELEVANT TO INDIVIDUAL LIABILITY (FRE 401 & 402).

The only questions for the jury to resolve as to Detective Defendants are whether, during the Dixwell Deli murder/robbery investigation in 1999, they committed *Brady* violations and/or fabricated evidence in the various respective areas that Judge Chatigny permitted to move forward in his multiple rulings on the motions for summary judgment and reconsideration. (See *Horn* Case, Case No. 18-cv-1502, Doc. Nos. 308, 320, 329, 333, and 364) and whether such conduct caused Plaintiffs' prosecutions and, more importantly, their resulting convictions.

Detective Defendants deny any *Brady* violations and/or fabrication of evidence. They maintain that they always engaged in proper investigative conduct following the policies and procedures promulgated by the NHPD.

In any event, municipal liability under *Monell* requires proof of a policy, custom, or practice that caused a constitutional violation. As this Court is aware, Plaintiffs have asserted both individual-capacity constitutional claims and a municipal liability claim under *Monell*. Plaintiffs, as set forth above, intend to introduce documentary and testimonial evidence relating to multiple different individuals prosecuted by the City of New Haven between approximately 1989 and 2004 – nearly all of which did not involve Detective Defendants. The overwhelming majority of the *Monell* evidence to be presented, thus, does not concern these Defendants, and prejudices them significantly in defending against the claims against them at trial.

This is especially true as to the *Morant* case, which, as recognized by this court on the status call on June 18, 2026, is a different case. *Morant* represents a different investigation, different victims, different witnesses, different prosecutors, different analyses of (for example) technical evidence such as cell phone tracing (which evolved over the decades), different factual records, different claimed constitutional infringements, and different time periods from those at

issue in this case. None of this information is likely to make a fact at issue before the jury more or less likely to be true. It is, instead, entirely irrelevant to the already complicated factual predicate and legal framework to be presented to the jury in connection with the Dixwell Deli homicide specific evidence and constitutional questions arising therefrom. Such evidence is, thus, inadmissible as to the Detective Defendants, and must be precluded under Rule 402.

## III. THE RISK OF SPILLOVER PREJUDICE OUTWEIGHS ANY RELEVANCE (FRE 403).

Even if the Court determines that such evidence is relevant to the *Monell* claim, which it is not, its introduction poses significant risks of prejudice to the Detective Defendants such that, at the very least, a limiting instruction is required.

In *Amato v. City of Saratoga Springs*, the Second Circuit acknowledged that extensive policy evidence risks blurring the distinction between municipal and individual liability in cases where such claims are tried simultaneously. 170 F.3d 311 (2d Cir. 1999); *Dempsey v. City of Rochester*, No. 6:16-CV-06780 (CDH), 2025 WL 3291822, at 5; 2025 U.S. Dist. LEXIS 232724 at *13-14 (W.D.N.Y. Nov. 26, 2025); *McKoy v. County of Suffolk*, No. 14-CV-00249 (JMW), 2025 WL 552610, at *4 (E.D.N.Y. Feb. 18, 2025) (emphasizing "the curative power of jury instructions and limiting instructions" in context of concerns about prejudice from presentation of "other case" evidence related to *Monell* claim); see also *LaRock v. Albany County Nursing Home*, No. 1:19-CV-0604 (AMN/DJS), 2024 WL 4566362, at *15, 2024 U.S. Dist. LEXIS 4566362 at *45 (N.D.N.Y. Oct. 24, 2024) ("The Court finds that evidence of prior lawsuits is admissible for the sole purposes of proving the existence of a municipal custom, policy, or practice . . . [and] may not be introduced for the purpose of showing propensity or assessing the merits of the claims therein").

Here, Plaintiffs seek to present a finding related to the other prosecution evidence in which Detective Defendants had no involvement - potentially requiring contextual explanation, rebuttal, and credibility determinations - in order to prove their *Monell* claims. Because the vast majority of this evidence and/or findings are irrelevant and inadmissible as to the Detective Defendants, it logically follows that the introduction of this evidence will also cause the Detective Defendants significant prejudice, as it will cloud the issues and evidence relevant only to the Dixwell Deli homicide investigation in the mind of the jury.

Accordingly, because both the substantive content and sheer volume of *Monell* evidence to be introduced by Plaintiffs at trial will overwhelm the Detective Defendants' fact-intensive defenses related to the Dixwell Deli investigation and cause them significant prejudice. Accordingly, all such evidence should be precluded.

## III. SHOULD THE COURT FIND IN FAVOR OF THE APPLICATION OF COLLATERAL ESTOPPEL, DETECTIVE DEFENDANTS SHOULD NOT BE PENALIZED.

Detective Defendants maintain that neither they nor the NHPD engaged in any constitutional or common law violations in relation to their investigation of the Dixwell Deli murder. Nevertheless, should the court grant Plaintiffs' motion in limine, Detective Defendants request that the ruling not be applied to them. Again, Detective Defendants maintain that they followed all NHPD policies and procedures as well as their training regarding interviewing witnesses, maintaining records and filing said records.

The Second Circuit does not require a finding of individual liability to hold a municipal entity liable under *Monell*. See, *Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). Should the Court enter an order for collateral estoppel, it should not preclude Detective Defendants from defending themselves against the very nuanced factual scenario and

allegations at issue here. Detective Defendants encourage this Court, as they did in their Motion *in Limine* No. 19 (Doc. No. 440) to issue a strong and clear limiting instruction prior to each *Monell* witness who testifies, and in the jury charge so as to mitigate the significant prejudice imposed on the Detective Defendants. By way of proposed charge, Detective Defendants request the jury be charged and reminded as follows: Evidence concerning other prosecutions or alleged City policies may be considered only in connection with Plaintiffs' *Monell* claim against the City of New Haven and may not be considered in deciding issues related to the fact-specific allegations of the officers involved in investigating the Dixwell Deli homicide. Such evidence must not be considered in determining whether any Detective Defendants violated Plaintiffs' constitutional rights – it is to be treated as separate evidence to be considered only after there has been a finding of liability as to at least one of the Detective Defendants on one of Plaintiffs' civil rights claims. Each Detective Defendant's liability must be determined solely on the evidence concerning that Defendant's conduct in the Dixwell Deli murder/burglary investigation.

## CONCLUSION

WHEREFORE, Detective Defendants respectfully request that this Honorable Court deny Plaintiffs Motion *in Limine* No. 5 and for any other such relief that this court deems just and proper.

Respectfully submitted,

NIELSEN, ZEHE & ANTAS, P.C.

/s/ *Bradford S. Krause*
Bradford S. Krause (IL 6243285)
John J. Murphy (IL 6288439)
55 West Monroe Street, Suite 1800
Chicago, Illinois 60603
(312) 322-9900
*bkrause@nzalaw.com*
*jmurphy@nzalaw.com*
*Admitted Pro Hac Vice*

*-and-*

Thomas E. Katon (CT01565)
P.O. Box 106
North Branford, CT 06471
attek@comcast.net
*Attorneys for Defendants*
*ESTATE OF LEROY DEASE, PETISIA ADGER, and DARYLE BRELAND*