**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VERNON HORN<br>*Plaintiff.* | : | Docket No. 3:18-cv-01502 (KAD) |
| v. | : | |
| CITY OF NEW HAVEN, ET AL.<br>*Defendants*. | : | JULY 24, 2026 |

**DEFENDANT CITY OF NEW HAVEN'S**
**OPPOSITION TO PLAINTIFFS' FIFTH MOTION *IN LIMINE***

Defendant City of New Haven (the "City") respectfully submits this opposition to the Fifth Motion in Limine (the "Motion") filed by Plaintiff Vernon Horn and adopted by Marquis Jackson (together, "Plaintiffs"), seeking collateral estoppel, thus precluding the City from defending Count Six of the Plaintiffs' Complaints, brought pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (the "*Monell* Claim"), as to the alleged practice and custom of suppressing evidence favorable to criminal defendants, based on the jury's verdict in *Morant v. City of New Haven et al.*, 3:22-cv-00630 (SVN) (D. Conn. May 5, 2022) (hereinafter "*Morant*"). *Horn v. City of New Haven et al.*, 3:18-CV-01502 (KAD) (D. Conn. Sept. 7, 2018) (hereinafter "*Horn*"), ECF No. 420; *Jackson v. City of New Haven et al.*, 3:19-CV-00388 (KAD) (D. Conn. Mar. 13, 2019) (hereinafter "*Jackson*"), ECF No. 376.

## ARGUMENT

### I. Plaintiffs' Motion Is an Impermissible Attempt to Avoid Establishing Their *Monell* Claim By Seeking a Dispositive Ruling Through a Motion *in Limine*.

By way of the Motion, Plaintiffs seek to prevent the City "from relitigating in this case its *Monell* liability as to" the alleged "unconstitutional practice or custom of suppressing *Brady*

material." *Horn*, ECF No. 420-1 at 19; *see also id.* at 25 ("[T]he City of New Haven should be estopped from relitigating its *Monell* liability…"). A motion *in limine*, however, is to be used "to enable the Court to rule on disputes over the admissibility of discrete items of evidence." *TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003) (citation omitted). It is not a mechanism by which the movant can obtain dispositive relief. *Morant v. City of New Haven*, No. 3:22-CV-630 (SVN), 2026 WL 1108118, at *15 (D. Conn. Apr. 23, 2026) ("'It is well settled that [m]otions *in limine* address evidentiary questions and are inappropriate devices for resolving substantive issues, such as the sufficiency of the evidence to support a claim or defense.'" (quoting *Williams v. Rushmore Loan Mgmt. Servs. LLC*, No. 3:15-CV-673 (DFM) (RNC), 2017 WL 822793, at *1 (D. Conn. Mar. 2, 2017)); *see also*, *e.g.*, *Raleigh v. Baribault*, No. 3:22-CV-1069 (VDO), 2026 WL 948944, at *1 (D. Conn. Apr. 8, 2026) ("Here, in the guise of a motion *in limine*, Defendants seek a dispositive ruling … This is procedurally improper, and thus the motion is denied."). This Motion seeks to do exactly that.

The Motion does not address the admissibility of discrete items of evidence—in fact, it does not address the admissibility of evidence at all. *See generally Horn*, ECF No. 420-1 at 19-25. It is, in reality, a "request[] for judgment as a matter of law" on Plaintiffs' *Monell* Claim. *Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 (JMF), 2014 WL 7392905, at *8 (S.D.N.Y. Dec. 29, 2014) (collecting cases). When confronted with this very issue in *Morant*, the court (Nagala, *J.*) held that attempting to invoke collateral estoppel by way of a motion *in limine* was "procedurally improper" because it amounted to a "motion[] on the merits[.]" *Morant*, 2026 WL 1108118, at *15. As the court explained in *Morant*, this Motion attempts to "circumvent jury consideration of claims … through a legal argument made in a motion *in limine* that would, if

accepted, foreclose such consideration." *Id.* Accordingly, the Motion should be denied on procedural grounds alone.

**II. Collateral Estoppel Does Not Apply Here.**

Even if it were procedurally proper for Plaintiffs to seek application of collateral estoppel by way of a motion *in limine*, their Motion would still fail. Plaintiffs seek to invoke the doctrine of nonmutual offensive collateral estoppel, a doctrine that the Second Circuit has cautioned against the "mechanical[] appli[cation]" of, "for it is capable of producing extraordinarily harsh and unfair results." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995) (vacating judgment due, in part, to improper application of offensive collateral estoppel).

To invoke the doctrine of offensive collateral estoppel, Plaintiffs bear the burden of satisfying four elements, all of which must be satisfied:

> (1) the issues in both proceedings must be identical,
> (2) the issue in the prior proceeding must have been actually litigated and actually decided,
> (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and
> (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79–80 (2d Cir. 2019) (citation omitted). In consideration of the potential for nonmutual offensive collateral estoppel's harsh results, the District Court must also "satisfy itself that application of offense collateral estoppel is fair." *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018) (collecting cases).

**A. Plaintiffs Have Not Established That the Issue Decided in *Morant* is Identical to the Issue in this Case.**

Plaintiffs' Motion fails at the outset because they have not established that the issues presented here are identical to those decided by the jury in *Morant*.

"Use of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in ***all respects*** with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'" *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 599–600 (1948)) (emphasis added). "[T]he issue to which the plaintiff seeks to give preclusive effect" must "'deal with the same past events as the previously-decided issue[.]'" *Bifolck*, 936 F.3d at 81 (quoting *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014)). "Collateral estoppel does not apply however when the essential facts of the earlier case differ from the instant one, even if they involve the same legal issues." *Env't Def. v. U.S. E.P.A.*, 369 F.3d 193, 202 (2d Cir. 2004). "The burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Plaintiffs argue that collateral estoppel precluding the City from defending the *Monell* Claim against it is warranted because the issues presented in *Morant* and in *Horn* and *Jackson* are identical, namely, the alleged "practice or custom of failing to disclose the coercive tactics used to elicit false statements from witnesses as well as those witnesses' exculpatory statements." ECF No. 420-1 at 22. Based on certain allegations made by Morant in his complaint, Plaintiffs make the unsupported assertion that the issues presented in *Morant* are identical to the issues presented here. *Id.* (citing *Morant*, ECF No. 33 ¶¶ 48-76; 167-173). Plaintiffs cite the *Morant* allegations of a scheme wherein Detective Vincent Raucci coerced witnesses into making false statements during the "pre-interviews," and that "detective-sergeant with supervisory responsibilities" and Detectives Joseph Pettola and Robert Lawlor knew about this coercion but "suppressed it." *Morant*, ECF No. 33 ¶¶ 18, 48-76. In contrast, Plaintiffs here allege that

Detectives Dease, Adger, and Breland coached witness Crystal Sykes and coerced witness Marcus Pearson into stating that Pearson made the fourth of five phone calls made from a cell phone stolen during the commission of the crime, and later coached Steve Brown into identifying Plaintiffs as the other two perpetrators. *See Horn*, ECF No. 153 at ¶¶ 101-19, 139-44; *Jackson*, ECF No. 110 at ¶¶ 70-87. Plaintiffs do not allege that the parties overlap with those of *Morant*, and importantly, they do not allege that a supervisor was directly involved in the alleged conduct of Detectives Dease, Adger, and Breland, as was alleged in *Morant*.[1]

Instead, the primary catalyst of Plaintiffs' suppression claim here is the alleged suppression of exculpatory phone records that were later retrieved from Detective Adger's basement. *See Jackson*, ECF No. 110 at ¶¶ 204-06; *Horn*, ECF No. 153 at ¶¶ 262-64; *see also Jackson*, ECF No. 171 at 57-64. There are no such parallel allegations in *Morant*. It is disingenuous and entirely improper for Plaintiffs to now argue that the City is generally estopped from defending against significantly different, and never before tried, allegations pertaining to "a practice or custom" different than what was alleged in *Morant*.

Moreover, the distinction between timeframes of the alleged conduct in *Morant* and the alleged conduct here is significant—not "slight," as Plaintiffs describe it. *Horn*, ECF No. 420-1 at 23. The allegations from the *Morant* complaint cited by Plaintiffs are based on interrogations that took place "in early January 1991." *Horn*, ECF No. 420-1 at ¶22; *Morant*, ECF No. 33 ¶¶ 31; 48-76; 167-173. In contrast, the interrogations at issue here took place eight years later in early 1999. *Horn*, ECF No. 153 at ¶¶ 114, 117, 135, 151; *Jackson*, ECF No. 110 at ¶¶ 82, 85,

[1] Sergeant Sweeney's status as a supervisor is relevant here because, by having a supervisor who was involved enough to be named as a defendant, the jury may have found Morant's *Monell* claim to be supported on that ground. "In order to establish *Monell* liability based upon a 'persistent and widespread' practice by a subordinate municipal employee (or employees) other than a policymaker…and awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297–98 (2d Cir. 2020) (citation and quotation marks omitted). That a supervisor was a named defendant in *Morant* is thus not insignificant to the analysis of whether the issues are identical.

104, 120. By this time, the New Haven Police Department was under the supervision of a new chief, Chief Melvin Wearing, as opposed to Chief Nicholas Pastore, who was the chief in 1991. *Jackson*, ECF No. 174 at ¶ 26; *Morant*, ECF No. 33 at ¶ 119. Moreover, by 1999, Detective Raucci, one of the detectives found liable in the *Morant* case, had been investigated by Internal Affairs and the FBI, and ultimately forced into retirement, yet the New Haven Police Department's failure to discipline Raucci was a fact alleged in *Morant* to support the *Monell* claim. *Jackson*, ECF No. 174 at ¶ 196(c); *Morant*, ECF No. 33 ¶¶ 102, 193. Put simply, intervening circumstances between 1991 and 1999 demonstrate that the underlying facts are not identical such that application of collateral estoppel would be appropriate. Plaintiffs argue that "there is no evidence that the City of New Haven's practice and custom of suppressing evidence favorable to criminal defendants changed" between these cases. ECF No. 420-1 at 23. This is not the standard. Plaintiffs must affirmatively prove that the issues are identical, not merely claim that the City has not established that the issues are different. *Sullivan*, 225 F.3d at 166; *see also Preston v. City of Rochester*, 827 F. Supp. 3d 464, 471 (W.D.N.Y. 2026) (declining to apply collateral estoppel where *plaintiff* "ha[d] not presented evidence showing that the" intervening training "was substantively indistinguishable from the training of which the [prior] jury was aware[]").

Plaintiffs' citation to deposition testimony from Detective Breland falls woefully short of establishing that the issues are identical. *See Horn*, ECF No. 420-1 at 23-24. Plaintiffs point to statements wherein Detective Breland testified about a practice of conducting "pre-interviews" that were not recorded and of utilizing individual notebooks that did not get turned over to prosecutors. *Id.* It requires a massive inferential leap to say that this testimony *proves* that the detectives were coercing witnesses during those pre-interviews and "suppressing" any

exculpatory statements made by the witnesses that were exculpatory for 16 years. But even accepting, *arguento*, the small snippets of Detective Breland's deposition testimony at face value, Plaintiffs have provided nothing demonstrating that the jury's verdict in *Morant* was based on the specific "practice…of *un*recorded 'pre-interviews'" or use of individual notebooks. Moreover the Plaintiffs also claim that the City had a practice or custom of suppressing evidence by coaching and coercing witnesses as well as withholding exculpatory documentary evidence. *See supra* Section II.A. Plaintiffs point to no testimony supporting such allegations. Finally, Detective Breland is one of *many* witnesses, and was not a witness in the *Morant* trial. *See generally Morant*, ECF No. 293 (Joint Trial Memorandum that does not identify Detective Breland as a witness). To say that his testimony can prove that the jury in *Morant* necessarily decided the issue presented in these cases simply lacks foundation.

Plaintiffs' reliance on *Preston v. City of Rochester*, 827 F. Supp. 3d 464 (W.D.N.Y. 2026) does not overcome these deficiencies.[2] In *Preston*, the Court (Holland, U.S.M.J.)—ruling on a motion for judgment, not a motion in limine—held that the City of Rochester was "collaterally estopped from arguing that it did not have a custom, policy, or practice of authorizing its officers

[2] Plaintiffs' reliance on *Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir. 1990), *disapproved of by Frazier v. Dubois*, 922 F.2d 560 (10th Cir. 1990) and *DeCastro v. City of New York*, 278 F. Supp. 3d 753 (S.D.N.Y. 2017) is similarly misplaced. In *Benjamin*, the court applied preclusive effect to the enforcement of a specific directive that required "that upon entry into a correctional institution all male inmates receive a haircut for purposes of an identification photograph." 905 F.2d at 575 (footnote omitted). This presented a narrow, specific issue related to an identifiable policy of the New York State Department of Correctional Services that had not changed. *Id.* No such identifiable policy is at issue here. Similarly, in *DeCastro*, the court was presented with a narrow question: can the New York Taxi and Limousine Commission "seize vehicles without a warrant based on probable cause that the vehicles were 'instrumentalities' used in the 'crime' of operating or allowing another to operate a vehicle for hire without proper licensing[]" in violation of New York City Administrative Code § 19-506(b)(1)? 278 F. Supp. 3d at 765. After a detailed analysis, United States District Judge Valerie Caproni held that such seizures violated the Fourth Amendment. *Harrell v. City of New York*, 138 F. Supp. 3d 479, 492 (S.D.N.Y. 2015), *on reconsideration in part sub nom. Harrell v. Joshi*, No. 14-CV-7246 (VEC), 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015). When presented with that same narrow question again, the court found that Judge Caproni's analysis applied, giving it preclusive effect. *DeCastro*, 278 F. Supp. 3d at 758. Again, the question presented here is not so narrow such that giving a jury's general verdict preclusive effect is warranted.

to use lethal force against dogs encountered during police operations without first assessing the actual threat posed by the dog[.]" This ruling was made based on a jury's verdict in *Dempsey, et ano. v. City of Rochester, et al.*, No. 6:19-CV-06780 (MJP) (W.D.N.Y. Oct. 21, 2019) ("*Dempsey*"), an earlier case where plaintiffs, "like Preston, alleged an unlawful seizure in violation of the Fourth Amendment based on a[] [Rochester Police Department] officer having shot and killed their pet dog[]" and the jury found that doing so, without considering the threat presented by the dog, if any, was "a policy, custom, or practice" of the Rochester Police Department.[3] *Preston v. City of Rochester*, 827 F. Supp. 3d at 469, 476. Plaintiffs rely on this holding to support their argument that collateral estoppel is appropriate here, but the *Preston* ruling is necessarily limited by the unique circumstances presented there. At the outset, the issue presented in *Preston* is much narrower than the issue presented here, and therefore more amenable to application of collateral estoppel. The only issue before the *Preston* court on *Monell* customs and practices was whether the Rochester Police Department had a custom or practice of shooting dogs before conducting a threat assessment; it did not have to unravel a wide web of allegations regarding coaching, coercion, recordings, notes and transcriptions of interviews, destruction of notes, supervisory involvement, and withholding of documentary evidence to determine whether the issues were identical. And perhaps most critically, *Dempsey* and *Preston* had a "'unified evidentiary record.'" *Id.* at 471. In fact, discovery in *Dempsey* and *Preston* as to the *Monell* claim had been *consolidated* with three other cases pending against the City of

[3] In *Dempsey*, the jury also answered special interrogatories to assist the Court in its determination of the identity of issues. *See* Declaration of Chelsea C. McCallum, attached hereto as Exhibit A (hereinafter "McCallum Decl."), ¶ 2, Exh. 1, ECF No. 228 ("Jurors recess to consider and answer special interrogatories. Special interrogatories answered, answers read into the record."); *see also* McCallum Decl. at ¶ 3, Exh. 2, ECF No. 65-1 at 18 ("Critically, the Dempsey jury also answered special interrogatories with respect to the underlying constitutional violation (Question 6), finding that Tesla presented as offensive or aggressive to Officer Algarin (Interrogatory 6a—YES), but that Algarin had sufficient time to use a nonlethal method of control (Interrogatory 6b—YES), had sufficient ability to use a nonlethal method of control (Interrogatory 6c—YES), and could have observed objective indications that a dog resided at the property (Interrogatory 6d—YES).").

Rochester based on the exact same conduct. *See* McCallum Decl. at ¶ 4, Exh. 3, ECF No. 12 at 3. The issues there were so identical that the parties in five cases were able to—and the court determined it was appropriate to—consolidate discovery. No such unification is present here.

In sum, Plaintiffs have fallen woefully short of establishing that the issues presented here and in *Morant* relating to the alleged suppression of evidence are identical, thereby failing to satisfy the first prong of the analysis. Accordingly, Plaintiffs' Motion should be denied.

### B. Plaintiffs Have Failed to Establish that the Issue Was Actually Litigated and Decided in *Morant*.

Plaintiffs' Motion again fails because they have failed to establish the second element, that the issue was "actually litigated and actually decided[.]" *Bifolck*, 936 F.3d at 79. "The burden of proof with respect to whether an issue" was "necessarily decided in the prior action rests squarely on the party moving for preclusion." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). Plaintiffs have failed to meet that burden here.

Plaintiffs assert that the Court should satisfy itself that the issue they seek to preclude was actually litigated based *solely* on the verdict form from *Morant*, wherein the jury answered the following question in the affirmative: "Has Plaintiff Stefon Morant proven by a preponderance of the evidence that the City of New Haven had a widespread practice or custom of suppressing evidence that was favorable to criminal defendants?" *Horn*, ECF No. 420-1 at 24; *Morant*, ECF No. 569 at 4. But this question provides no insight into the facts that the jury relied on in reaching its answer, and there were no jury interrogatories providing additional insight. *See* *Morant*, ECF No. 565 ("In sum, the Court holds that no special interrogatories need to be sent to the jury…"). As the Second Circuit has instructed—in the very case cited by Plaintiffs—invocation of "collateral estoppel ***requires a detailed examination*** of the record in the prior … case, including the pleadings, the evidence submitted and the jury instructions, in order to

determine what issues were actually litigated and necessary to support a final judgment on the merits." *Sullivan*, 225 F.3d at 166 (emphasis added). Here, as in *Sullivan*, "[t]he record placed before" the Court on this Motion "does not clarify what facts were necessarily determined in" *Morant*, thus prohibiting the application of collateral estoppel. *Id.*

Accordingly, because Plaintiffs have failed to establish that the Issue was "actually litigated and actually decided," the Motion should be denied.

### C. The City Has Not Had a Full and Fair Opportunity to Litigate the Issue.

Plaintiffs' Motion again fails for failure to establish the third element, that "the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Bifolck*, 936 F.3d at 79. Because it has not been established that the issues are identical, it is impossible for the City to have had a full and fair opportunity to litigate the issue. As described above, there are several allegations present in these cases that were not present in the *Morant* case that the City could not have had the opportunity to address during the *Morant* trial. Accordingly, the third element is likewise not met, precluding the application of collateral estoppel.

### D. Plaintiffs Have Failed to Establish that the Issue Was Necessary to Support the Jury's Verdict.

The fourth and final factor that the Plaintiffs must establish is that "the issue previously litigated [was] necessary to support a valid and final judgment on the merits." *Bifolck*, 936 F.3d at 79. Plaintiffs acknowledge this element, stating that "the issue was necessary to support a valid and final judgment on the merits[,]" but wholly fail to address it. *Horn*, ECF No. 420-1 at 25.

"An issue is 'necessary or essential only when the *final outcome* hinges on it.'" *Bifolck*, 936 F.3d at 80 (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)). Because of the generality of the jury's verdict in *Morant*, the Court has no mechanism of determining which facts supported

the jury's verdict, thus precluding the ability to determine whether the facts that underlie the issue here were decided and necessary to support the jury's verdict. As noted above, this is unlike the case in *Preston*, where the court had the benefit of jury interrogatories to satisfy itself as to which facts the jury decided and whether those facts were necessary to support the judgment. Accordingly, the fourth and final element is likewise not met, again precluding the application of collateral estoppel.

**E. Application of Nonmutual Offensive Collateral Estoppel Would Be Unfair.**

As courts in this Circuit have routinely recognized, the application of nonmutual offensive collateral estoppel "is capable of producing extraordinarily harsh and unfair results." *Remington Rand Corp.*, 68 F.3d at 1486; *see also Bifolck*, 936 F.3d at 84 ("offensive collateral estoppel doctrine is 'detailed, difficult, and potentially dangerous'" (quoting *Jack Faucett Assocs. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984)); *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999) ("[C]ollateral estoppel may have a devastating impact on a civil litigant's constitutional right to a jury trial."). As a result, even if the District Court finds that all four required elements are satisfied, it "must still assure itself that it is fair to apply the doctrine. This final inquiry reflects judicial wariness of nonmutual offensive collateral estoppel." *Bifolck*, 936 F.3d at 84. In a truncated argument that lacks appreciation for the harshness of the doctrine, Plaintiffs argue that the application of collateral estoppel here would be fair based on substantially the same arguments they advanced when applying the initial four-factor test. *See* ECF No. 420-1 at 25. While true that the City defended the *Morant* case before a jury with the usual procedural opportunities available to it throughout the course of litigation, this cannot be enough to overcome the harsh result of preclusion. Imposition of preclusion here would effectively enter judgment in favor of the Plaintiffs without affording the City the opportunity to

defend itself in ***this*** action, which, as established above, ***does*** differ in factual allegations and temporal scope such that the application of offensive collateral estoppel would be unfair.

Plaintiffs further assert that the application of "collateral estoppel will promote judicial efficiency, as it will streamline the trial in this matter by reducing the number of witnesses Plaintiffs will need to present in support of their *Monell* claim or, at a minimum, shortening their testimony." ECF No. 420-1 at 25. Lacking from this argument, however, are *any* specifics regarding what testimony or other evidence can be eliminated. Necessarily, the Plaintiffs' *Monell* claim overlaps substantially with the underlying claims against the individual Detectives, so any reduction in witnesses or other evidence is likely limited. Because of this overlap, and the fact that portions of the Plaintiffs' *Monell* claims would still need to be litigated, invoking collateral estoppel here is more likely to have the effect of confusing the jury than encouraging efficiency. *See Bifolck*, 936 F.3d at 84 ("Nonmutual offensive collateral estoppel could have failed to increase efficiency…by confusing the jury on the differences between what was decided in *DOJ* and what Bifolck ultimately needed to prove…"). Ultimately, Plaintiffs have provided no basis to suggest that preclusion would increase judicial efficiency.

The Second Circuit has also recognized that the lack of "adequate opportunity for appellate review of the adverse…decision[]…once an appeal is taken[]" renders application of collateral estoppel unfair. *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 237 (2d Cir. 2018); *see also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) ("Appellate review plays a central role in assuring the accuracy of decisions. Thus, although failure to appeal does not prevent preclusion, …the lack of such review once an appeal is taken, does prevent preclusion."). Because the post-trial motions in *Morant* have not been adjudicated and the City has not yet had

the opportunity to pursue its appeal, application of collateral estoppel here would be patently unfair.[4]

In sum, even if the Court found that the four elements necessary to invoke collateral estoppel were satisfied here (they are not), the utter lack of fairness is such that the Court should decline to exercise its discretion to preclude the City from defending its *Monell* claim as it relates to the alleged practice and custom of suppressing evidence favorable to criminal defendants.

**CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court deny Plaintiffs' Fifth Motion in Limine and permit the City to defend the *Monell* claim asserted against it.

Respectfully submitted,

DEFENDANT,
CITY OF NEW HAVEN

By: */s/ Chelsea C. McCallum*
Chelsea C. McCallum (ct31586)
Morgan P. Rueckert (ct19838)
Elizabeth H. Buchanan (ct31230)
Megan C. Medlicott (ct32076)
cmccallum@goodwin.com
mrueckert@goodwin.com
ebuchanan@goodwin.com
mmedlicott@goodwin.com
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Tel.: (860) 251-5000
*Its Attorneys*

[4] To date, a notice of appeal has not been filed in *Morant* due to the pendency of the post-trial motions. *See* Fed. R. App. P. 4(a)(4) ("If a party files in the district court any of the following motions…the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion: (i) for judgment under Rule 50(b); … (iv) to alter or amend the judgment under Rule 59; (v) for a new trial under Rule 59…"); *see also Morant*, ECF Nos. 618 (City's motion for judgment pursuant to Rule 50(b)); 619 (City's motion for a new trial pursuant to Rule 59 and for Remittitur pursuant to Rule 60). The City has, however, indicated that it will be filing a notice of appeal following the disposition of those motions and has secured an appeal bond. *See Morant*, ECF No. 620 at 2 ("The City has filed post trial motions, which will be followed by a timely notice of appeal of this judgment, and has secured a supersedeas bond from a surety company…to pay all damages, costs and interests that may be awarded to Mr. Morant in the event the City's appeal is not successful…").